12BL, RULE16, ARBITRATION, CLOSED

CA 04 72 T

**U.S. District Court**
**District of New Jersey [LIVE] (Newark)**
**CIVIL DOCKET FOR CASE #: 2:03-cv-01707-WHW-SDW**
**Internal Use Only**

PHARMACY SERVICES, et al v. SWAROVSKI NORTH, et al
Assigned to: Judge William H. Walls
Referred to: Magistrate Judge Susan D. Wigenton
Demand: $0
Lead Docket: None
Related Cases: None
Case in other court: None
Cause: 28:1332 Diversity-Fraud

Date Filed: 04/17/03
Jury Demand: Both
Nature of Suit: 370 Fraud or Truth-In-Lending
Jurisdiction: Diversity

**Plaintiff**

**PHARMACY SERVICES, INC.**

represented by **GARY L. MASON**
KLAFTER, MASON, RECORD & SOCHER, LLC
CENTURY OFFICE PARK
300 CRAIG ROAD
MANALAPAN, NJ 07726
(732) 358-2028
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

***ta***
**ROSELLE CENTER PHARMACY**

***aka***
**ROSELLE CENTER CARD, GIFT & COLLECTIBLES**

V.

**Defendant**

**SWAROVSKI NORTH AMERICA, LTD.**

represented by **STEPHEN F. PAYERLE**
CARPENTER, BENNETT & MORRISSEY
THREE GATEWAY CENTER
100 MULBERRY STREET

NEWARK, NJ 07102-4082
973-622-7711
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JOHN DOES 1-50**

**ABC CORPS. 1-10**

| Filing Date | # | Docket Text |
|---|---|---|
| 04/17/2003 | 1 | COMPLAINT filed; jury demand FILING FEE $ 150.00 RECEIPT # 315037 (MD) (Entered: 04/24/2003) |
| 04/24/2003 | | CASE REFERRED to arbitration (MD) (Entered: 04/24/2003) |
| 04/24/2003 | 2 | NOTICE of Allocation and Assignment filed. ( NEWARK - Judge WALLS - Magistrate Judge WIGENTON) (NM) (MD) (Entered: 04/24/2003) |
| 04/24/2003 | | SUMMONS(ES) issued for SWAROVSKI NORTH ( 20 Days) (Mailed to Counsel) (MD) (Entered: 04/24/2003) |
| 05/23/2003 | 3 | APPLICATION by SWAROVSKI NORTH and Clerk's Order extending time to answer. Answer due 6/11/03 for SWAROVSKI NORTH (jd) (Entered: 05/29/2003) |
| 06/09/2003 | 4 | ORDER, extending time , resetting answer due for 7/2/03 for SWAROVSKI NORTH ( signed by Magistrate Judge Susan D. Wigenton ) (NM) (jd) (Entered: 06/10/2003) |
| 07/01/2003 | 5 | ORDER, extending time , setting answer due for 7/16/03 for SWAROVSKI NORTH ( signed by Magistrate Judge Susan D. Wigenton ) (NM) (jd) (Entered: 07/02/2003) |
| 07/16/2003 | 6 | ANSWER to Complaint by SWAROVSKI NORTH; jury demand (jd) (Entered: 07/17/2003) |
| 07/16/2003 | 7 | Notice of MOTION to dismiss complaint or in the aternative to transfer case to the USDC for District of Rhode Island by SWAROVSKI NORTH, Motion set for 9/8/03 on [7-1] motion, set for 9/8/03 on [7-2] motion w/cert of service (Brief/PO Subm) (jd) (Entered: 07/17/2003) |
| 07/16/2003 | 8 | DECLARATION of Michael Whitney on behalf of SWAROVSKI NORTH in support of [7-1] motion to dismiss complaint, [7-2] motion to transfer case to the USDC for District of Rhode Island |

| | | |
|---|---|---|
| | | w/exhibits attached (jd) (Entered: 07/17/2003) |
| 09/08/2003 | 9 | CERTIFICATION of Stuart Schulman on behalf of PHARMACY SERVICES, I in opposition to [7-1] motion to dismiss complaint, [7-2] motion to transfer case to the USDC for District of Rhode Island (jd) (Entered: 09/08/2003) |
| 09/08/2003 | 10 | CERTIFICATE OF SERVICE by PHARMACY SERVICES, I of copy of [9-1] certification and opposition brief (jd) (Entered: 09/08/2003) |
| 09/12/2003 | 11 | ORDER, setting scheduling conference for 12:00 11/5/03 ( signed by Magistrate Judge Susan D. Wigenton ) (NM) (jd) (Entered: 09/12/2003) |
| 09/15/2003 | 12 | CERTIFICATE OF SERVICE of dft's Reply Brief in Support of Motion to Dismiss or, in the Alternative, to Transfer Venue (cs) (Entered: 09/22/2003) |
| 10/20/2003 | 13 | Minute entry: Proceedings recorded by Ct-Reporter: none; Minutes of: 10/20/03; The following actions were taken, [7-1] motion to dismiss complaint. Rule 78. [7-2] motion to transfer case to the USDC for District of Rhode Island. Rule 78. By Judge William H. Walls (jd) (Entered: 10/22/2003) |
| 11/18/2003 | 14 | ORDER, setting scheduling conference for 11:00 3/4/04 ( signed by Magistrate Judge Susan D. Wigenton ) (NM) (jd) (Entered: 11/18/2003) |
| 03/01/2004 | 15 | ORDER granting [7] Motion to transfer action. Action is hereby Transferred to the USDC for the District of Rhode Island. Signed by Judge William H. Walls on 3/1/04. (jd, ) (Entered: 03/02/2004) |
| 03/02/2004 | | ***Civil Case Terminated. (jd, ) (Entered: 03/02/2004) |

as a true copy on
3-2-04
( ) Clerk
( X ) Deputy

**KLAFTER, MASON & SOCHER, L.L.C.**
**Century Office Park**
**300 Craig Road**
**Manalapan, New Jersey 07726**
**(732) 358-2028**
**Attorneys for Plaintiff**
**GLM/4835**

RECEIVED-CLERK
U.S. DISTRICT COURT
2003 APR 17 A 11:20

(1)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**FILED**
4-17-03
AT 8:30 ____ M
WILLIAM T. WALSH
CLERK

| | | |
|---|---|---|
| **PHARMACY SERVICES, INC., t/a ROSELLE CENTER PHARMACY, a/k/a Roselle Center Card, Gift & Collectibles,** | : | **Case No.** |
| **Plaintiff,** | : | **Civil Action** 03-1707 (WHW) |
| **vs.** | : | |
| **SWAROVSKI NORTH AMERICA, LTD., JOHN DOES 1-50 and ABC CORPS. 1-10,** | : | ***COMPLAINT AND JURY DEMAND*** |
| **Defendants.** | : | |

Plaintiff, Pharmacy Services, Inc. ("Plaintiff"), a New Jersey corporation, t/a Roselle Center Pharmacy, a/k/a Roselle Center Card, Gift & Collectibles, with a business address at 570 Raritan Road, Roselle, New Jersey, by and through its attorneys, Klafter, Mason & Socher, L.L.C., and by way of complaint against the above-captioned defendants, alleges and says as follows:

**JURISDICTIONAL ALLEGATIONS**

1. Plaintiff is a corporation formed, existing and operating under the laws of the State of New Jersey, with its principal place of business located in Roselle,

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

 G:\gary\WPDOCS\M-Z\Schulman\Swarovski Litigation\complaint.wpd

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

New Jersey.

2. Defendant, Swarovski North America, Ltd. ("Defendant") is a corporation formed, existing and operating under the laws of Rhode Island with its principal place of business located in Cranston, Rhode Island.

3. Plaintiff brings this action pursuant to 28 *U.S.C.* 1332(a)(1).

4. The matter is controversy exceeds, exclusive of interest and costs, the sum specified by 28 *U.S.C.* 1332.

5. Venue of this matter is properly laid pursuant to 28 *U.S.C.* 1391(a) and (c).

**THE PLAYERS**

6. Plaintiff is a family owned business serving the public for more than thirteen (13) years.

7. Plaintiff's pharmacy has operated since 1989 and, in 1999, Plaintiff expanded and launched its card, gift and collectibles business.

8. Plaintiff carries more than forty (40) fine gift and collectible lines.

9. Having operated primarily as a pharmacy for more than ten (10) years, with a small gift department, Plaintiff recognized the importance of competing with the large pharmacy chains.

10. Plaintiff could not compete as a pharmacy dollar-for-dollar with the large chains and, therefore, decided to expand its gift department and spent nearly $500,000.00 in connection with this expansion.

11. In the absence of any real competition in the area, Plaintiff recognized the larger profit margins and increased customer traffic that an expanded gift department could generate.

12. In an effort to gain market share in what is an increasingly competitive industry, in or about 1999, Plaintiff expanded its gift department to include top of the line product.

13. Over the last four (4) years, Plaintiff has managed to assemble an impressive line of product, including high-end gifts and collectibles, the quality of which surpasses that of any gift items found in the pharmacy chain stores or, for that matter, any local gift stores.

14. Defendant operates out of Rhode Island and is the North American "arm" for Swarovski International Trading Corp., A.G., D. Swarovski & Co. and Swarovski Aktiengelsellschaft, corporations of Switzerland, Austria and Liechtenstein, respectively.

15. Upon information and belief, Defendant has the exclusive right to sell Swarovski product wholesale throughout North America.

16. Under the umbrella of the "Swarovski" name, Defendant is part of a corporate conglomerate leading the global market in the manufacturing and sale of crystal jewelry, objects and accessories.

17. John Does 1-50 represent fictitious names of individuals, in accordance with New Jersey Court Rule 4:26-4, who have not yet been identified, and who participated in, contributed to, acquiesced in, condoned and/or ratified the actions of Defendant, as the same are described and complained of herein.

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

18. ABC Corps. 1-10 represent fictitious names of business entities, foreign or domestic, in accordance with New Jersey Court Rule 4:26-4, which have not yet been identified, and which participated in, contributed to, acquiesced in, condoned and/or ratified the actions of Defendant, as the same are described and complained of herein.

**ALLEGATIONS COMMON TO ALL COUNTS**

19. In or about 1999, Plaintiff became an authorized Swarovski retailer.

20. Only authorized Swarovski retailers are permitted to market, purchase wholesale and sell Swarovski product.

21. In or about July 1999, Plaintiff and Defendant entered into a certain authorized retailer agreement pursuant to which Plaintiff was authorized to market and sell Swarovski product.

22. At the same time, Plaintiff entered into a Display Lease Agreement with Swarovski Consumer Goods, Ltd. ("SCG"), pursuant to which SCG supplied Plaintiff with display cases for the purpose of showcasing Defendant's product.

23. The authorized retailer agreement also authorized Plaintiff to use the Swarovski name in the marketing of its business and for the purpose of, *inter alia*, attracting customers and enhancing its market presence.

24. Plaintiff's ability to sell Swarovski product resulted in an increased customer base.

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

25. Specifically, Plaintiff observed that many Swarovski afficionados regularly collect Swarovski product and, as a result, when Plaintiff became an authorized retailer, these customers became Swarovski purchasers and, consequently, potential regular customers of Plaintiff's gift and collectible business.

26. During the course of the parties' business relationship, Defendant routinely encouraged Plaintiff to convince as many customers as possible to join the Swarovski Collectors Society ("SCS"), a group created for those with a particular interest in crystal.

27. Members of the SCS were required to complete an application and provide their contact information directly to Defendant.

28. The parties conducted business throughout 1999 and 2000 without any noteworthy incidences.

29. Upon information and belief, throughout 1999 and throughout 2000, Defendant utilized its authorized retailers throughout the country to sell Swarovski product into the market, and did not sell directly to consumers.

30. However, in July 2001, Defendant publicly announced that it would begin selling direct to consumers.

31. Defendant never directly notified Plaintiff of its intent to sell directly to consumers; rather, Plaintiff discovered the announcement only after having its authorized retailer license terminated in January 2003 and Plaintiff began searching the internet for facts that might be pertinent to its claims against Defendant.

32. In July 2001, to the best of Plaintiff's knowledge, when Defendant announced that it would begin selling direct to consumers, its website was under construction, not fully functional and, specifically, did not have the ability to process orders over the internet.

33. Defendant's announcement that it intended to begin selling direct to consumers, in and of itself, would not have concerned Plaintiff because Plaintiff was ready, willing and able to openly compete with Defendant.

34. In or about late 2001/early 2002, Plaintiff learned about Defendant's on-line sales which still did not concern Plaintiff because Plaintiff was ready, willing and able to compete in the marketplace.

35. In or about late December 2001/early January 2002, Defendant reformulated its entire line of packaging.

36. Prior to the change, Defendant packaged its product in either a grey cylinder or a white box, with only the name Swarovski, and its logo, displayed on the package.

37. Defendant's reformulated packaging consisted of a new "Tiffany" blue packaging, the name Swarovski displayed on the package, and a new feature - the Swarovski website, www.swarovski.com.

38. The new Swarovski website also appeared on all Swarovski marketing material available for customers in Plaintiff's store.

39. Interestingly, all correspondence and other materials that Defendant mailed directly to consumers displayed the Swarovski website; yet, the Swarovski website appeared nowhere on the correspondence, invoices and other

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

writings from Defendant to its authorized retailers.

40. Defendant used one style of stationery for consumers, and another style for its authorized retailers.

41. Upon information and belief, when Defendant changed its packaging, it also redesigned the small Swarovski brochure that accompanies each Swarovski product.

42. Specifically, the redesigned brochure suggestively marketed Defendant's ability to sell direct to consumers by displaying the Swarovski website, and inviting consumers to visit the website where they could purchase direct from Defendant.

43. At no time prior to or after the change in Defendant's packaging, did Defendant advise Plaintiff that Defendant intended to begin selling direct to consumers.

44. During 2000, Plaintiff launched its own website, www.giftandcollectibles.com, which advertised much of Plaintiff's full line of product, including Swarovski.

45. Plaintiff's website was routinely updated with newly released product as Defendant, through its sales force, would announce to Plaintiff and other authorized retailers.

46. Plaintiff's website triggered a dramatic increase in sales from $60,000.00 in 2001, to over $250,000.00 in 2002 **in just Swarovski product**.

47. Plaintiff attributes the dramatic increase in Swarovski sales, in

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

part, to its diverse product offering, and to its competitive pricing, specifically, Plaintiff's ability to discount twenty percent (20%).

48. During 2002, Plaintiff bought approximately $163,000.00 in merchandise, wholesale, from Defendant, and signed up approximately ninety-five (95) consumers for the SCS.

49. In October 2002, Plaintiff's representatives attended a Swarovski training session designed to assist Swarovski authorized retailers in the marketing and sale of Swarovski product.

50. Upon information and belief, Defendant's sales personnel, who were responsible for bringing authorized retailers to the training session and running the training session, did not participate in the decision to terminate Plaintiff as an authorized retailer.

51. Upon information and belief, Defendant's sales personnel, who were responsible for bringing authorized retailers to the training session and running the training session, had no knowledge of Plaintiff's termination as an authorized retailer until the Termination Letter, as defined below, was prepared.

52. At no time prior to or after the October 2002 training session, did Defendant advise Plaintiff that Defendant intended to begin selling direct to consumers.

53. Subsequent to the October 2002 training session, Plaintiff noticed a complete breakdown in communications with Defendant's sales division, specifically with the Swarovski representative with whom Plaintiff dealt.

54. Plaintiff typically spoke with its representative at least once a

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

month; yet, November 2002 came and went without hearing from the representative.

55. The representative did not respond to Plaintiff's telephone calls and made no effort to communicate with Plaintiff.

56. Plaintiff did, however, have an opportunity to speak with Jan Wallace ("Wallace"), Defendant's credit representative for Plaintiff, concerning various issues that arose in the latter part of 2002 and related to Defendant's alleged re-evaluation of Plaintiff's credit line and Defendant's refusal to ship product before receiving payment in full for Plaintiff's then-outstanding balance.

57. Interestingly, and contrary to past practices, the then-outstanding balance was based on invoices not yet due; yet, Defendant demanded that they be paid as a condition to shipping Plaintiff's newly placed orders.

58. Prior to Plaintiff's receipt of the Termination Letter, as defined below, Wallace revealed to Plaintiff that Wallace's supervisor had suggested to her that Plaintiff's authorized retailer agreement was going to be terminated because Plaintiff was doing too much business and was competing with Defendant.

59. By letter dated January 15, 2003 (the "Termination Letter"), Defendant, without any prior notice, terminated Plaintiff's status as an authorized retailer.

60. The Termination Letter made several factual representations, including:

a. the termination resulted from a review of Defendant's business relationship with Plaintiff;

b. Defendant made the decision to terminate Plaintiff's authorized retailer status only after an extensive review of the business relationship by all levels of sales management;

c. if Plaintiff had any concerns regarding the termination of the business relationship not addressed in the Termination Letter, Plaintiff could contact Defendant's offices and would receive a written response within ten (10) business days.

61. Subsequent to receiving the Termination Letter, Plaintiff asked Defendant to provide him with any and all information or material that comprised the "extensive review" of the parties' relationship and which ultimately led to the termination of Plaintiff authorized retailer status.

62. To date, Defendant has failed to respond to Plaintiff's requests.

63. To date, Plaintiff has never received any written response to its concerns and questions.

64. In fact, during one (1) conversation with a representative of Defendant, Plaintiff was told that the "you will receive a written response within 10 business days" language contained in the Termination Letter was simply boilerplate nonsense, and that, to the best of the representative's knowledge, Defendant never responded to any inquiries, either orally or in writing.

65. Defendants engaged in a common plan and design to exploit their business relationship with Plaintiff for the purpose of damaging Plaintiff and for

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
*Century Office Park • 300 Craig Road • Manalapan, N.J. 07726*
*(732) 358-2028 • Fax: (732) 358-2029*

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

the purpose of benefitting defendants.

66. Specifically, defendants, through their reformulated packaging, used Plaintiff, and Plaintiff's customer base and list, over the course of a year's time, to market, advertise and promote Defendant's ability to sell directly to consumers.

67. During that period of time, all Swarovski product displayed the Swarovski website which contained information advising the consumer that Swarovski now sold direct.

68. During this period of time, defendants' goal was always to flood the marketplace with its direct sales information, and then terminate Plaintiff's authorized retailer agreement.

69. Defendant targeted Plaintiff because of Plaintiff's increased sales and Plaintiff's competitive pricing schedule.

70. By terminating Plaintiff as an authorized Swarovski retailer, Defendant eliminated Plaintiff as a competitor.

71. Every time Plaintiff shipped Swarovski merchandise to one of its customers, Plaintiff was actually marketing and promoting Defendant's ability to sell directly to consumers.

72. Plaintiff's customers who, during the course of the prior year, had received some form or another of Swarovski marketing material on which the Swarovski website was displayed, would naturally be inclined to visit the Swarovski website to make future purchases.

73. Although Plaintiff had concerns regarding Defendant selling

direct to consumers, Plaintiff was confident in its ability to compete, especially for the internet based business.

74. Defendant eliminated any potential for competition by terminating Plaintiff's status as an authorized retailer.

75. Prior to Plaintiff's receipt of the Termination Letter, Defendant never advised Plaintiff that it intended to terminate Plaintiff's authorized retailer status.

76. Prior to Plaintiff's receipt of the Termination Letter, Defendant never advised Plaintiff that it was reviewing the parties' business relationship for the purpose of determining whether or not to continue Plaintiff's authorized retailer status.

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
*Century Office Park • 300 Craig Road • Manalapan, N.J. 07726*
*(732) 358-2028 • Fax: (732) 358-2029*

**COUNT 1**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

77. Plaintiff incorporates each and every allegation contained in paragraphs 1 - 76 hereof as though fully set forth at length herein.

78. There was inherent in the authorized retailer agreement, by and between Plaintiff and Defendant, a duty of good faith and fair dealing pursuant to the common law of the State of New Jersey.

79. Defendant breached said duty of good faith and fair dealing.

80. By reason of said breach, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant, for:

a. consequential damages;

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

b. compensatory damages;

c. punitive damages; and,

d. such other and further relief as the Court may deem just and proper.

**COUNT 2**
**(Misrepresentation)**

81. Plaintiff incorporates each and every allegation contained in paragraphs 1 - 80 hereof as though fully set forth at length herein.

82. Upon information and belief, Defendant planned to terminate Plaintiff's authorized retailer agreement as early as December 2001/January 2002 when it reformulated its packaging to include the reference to its website and the information regarding its ability to sell direct to consumers.

83. Upon information and belief, Defendant may have been planning to sell direct to consumers as far back as 1999 when Plaintiff first entered into its authorized retailer agreement.

84. Throughout 2002, Defendant failed to advise Plaintiff that Defendant intended to terminate Plaintiff's authorized retailer agreement.

85. Upon information and belief, and based upon the sudden end in communications, Plaintiff's Swarovski representative knew that Plaintiff's authorized retailer agreement was going to be terminated and did not disclose the same to Plaintiff.

86. Defendant knew or should have known that terminating Plaintiff's authorized retailer agreement would substantially and negatively impact

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

Plaintiff's business.

87. Defendant's failure to disclose its intentions, when those intentions were known for an appreciable amount of time before Plaintiff received the Termination Letter, constitutes a misrepresentation by omission.

88. Defendant's representation that it made the decision to terminate Plaintiff's authorized retailer status only after an extensive review of the business relationship by all levels of sales management, was false when made and known by Defendant to be false.

89. At the time the foregoing representations were made, or material factual issues were withheld from Plaintiff, Defendant knew the same to be false and made the representations, or withheld the information, for the purpose of inducing Plaintiff to continue ordering merchandise from Defendant so that Defendant could market and promote its direct sales capabilities to Plaintiff's customer base.

90. Coincidentally, Defendant terminated Plaintiff as an authorized retailer immediately after the 2002 holiday season.

91. It is not uncommon for a retailer to do as much as fifty percent (50%) of its annual business during the holiday season.

92. Defendant waited until after the 2002 holiday season to terminate Plaintiff's authorized retailer agreement so that Defendant could capitalize on the ability to suggestively market its website and direct sales capabilities to all of Plaintiff's holiday customers.

93. At the time the representations were made, or the information

withheld, Plaintiff did not know the true facts, relied upon its continued business relationship with Defendant and trusted Defendant to reveal any intentions to terminate the authorized retailer agreement at or about the time those intentions were formed.

94. As a result thereof, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant, John Does 1-50, and ABC Corps. 1-10, jointly, severally and in the alternative, for:

a. consequential damages;

b. compensatory damages;

c. punitive damages;

d. such other and further relief as the Court may deem just and proper.

**COUNT 3**
**(Tortious Interference With Economic Advantage)**

95. Plaintiff incorporates each and every allegation contained in paragraphs 1 - 94 hereof as though fully set forth at length herein.

96. Plaintiff pursued and maintained a reasonable expectation of economic advantage with respect to its sale of Swarovski merchandise to its customer base.

97. Defendants intentionally and maliciously interfered with Plaintiff's business relationships.

98. There existed a reasonable likelihood that, but for defendants' interference, Plaintiff would have continued to receive a financial benefit from its

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
*Century Office Park • 300 Craig Road • Manalapan, N.J. 07726*
*(732) 358-2028 • Fax: (732) 358-2029*

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

sale of Swarovski merchandise to its customer base.

99. As a result of defendants' conduct, as described and complained of herein, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant, John Does 1-50, and ABC Corps. 1-10, jointly, severally and in the alternative, for:

a. consequential damages;

b. compensatory damages;

c. punitive damages;

d. such other and further relief as the Court may deem just and proper.

**COUNT 4**
**(Civil Conspiracy)**

100. Plaintiff incorporates each and every allegation contained in paragraphs 1 - 99 hereof as though fully set forth at length herein.

101. Defendant, John Does 1-50 and ABC Corps. 1-10 have engaged in a conspiracy of a common design, the object of which has been to exploit and profit from Plaintiff's customer relationships for the purpose of promoting the Swarovski website and their ability to sell directly to consumers, as well as eliminate competition in the marketplace.

102. In furtherance of said conspiracy, Defendant, John Does 1-50 and ABC Corps. 1-10 have, for the last year, used Plaintiff as the "strawman" for the purpose of promoting Defendant's ability to sell directly to consumers, and have terminated Plaintiff's authorized retailer agreement, thereby eliminating the

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

competition Plaintiff was creating through its website business and forcing Plaintiff's customers to buy directly from Defendant or from other retailers who did not offer a twenty percent (20%) discount.

103. Although there may still exist authorized Swarovski retailers who discount twenty percent (20%), even on-line, from whom Plaintiff's customers could choose as an alternate Swarovski retailer, upon information and belief, those stores either do not generate anywhere near the revenue that Plaintiff generated, or they have a substantial non-internet business into which Defendant cannot tap.

104. As a result of the wrongful conduct, described and complained of herein, Plaintiff has suffered a dramatic decline in revenue, has lost the business relationships of customers who regularly purchased Swarovski product, and has lost the opportunity to develop additional business relationships, all resulting in loss of profits for Plaintiff.

105. By reason of the foregoing, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant, John Does 1-50 and ABC Corps. 1-10, jointly, severally and in the alternative, for:

a. consequential damages;

b. compensatory damages;

c. punitive damages; and,

d. attorneys fees, interest, costs of suit, and such other and further relief as the Court may deem just and proper.

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

## COUNT 5
## (Unfair Competition)

106. Plaintiff incorporates each and every allegation contained in paragraphs 1 - 105 hereof as though fully set forth at length herein.

107. The conduct of Defendant, John Does 1-50 and ABC Corps. 1-10, as described and complained of herein, constitutes unfair competition in that defendants employed wrongful means in promoting and marketing its ability to sell directly to consumers.

108. The conduct of Defendant, John Does 1-50 and ABC Corps. 1-10, as described and complained of herein, constitutes unfair competition in that said conduct created and continues to create an unlawful restraint of trade.

109. The conduct of Defendant, John Does 1-50 and ABC Corps. 1-10, as described and complained of herein, constitutes unfair competition in that defendants' purpose, by engaging in such conduct was, at least in part, to advance their own interests in competing with Plaintiff.

110. By reason of the foregoing, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant, John Does 1-50 and ABC Corps. 1-10, jointly, severally and in the alternative, for:

a. consequential damages;

b. compensatory damages;

c. punitive damages; and,

d. such other and further relief as the Court may deem just and proper.

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
*Century Office Park • 300 Craig Road • Manalapan, N.J. 07726*
*(732) 358-2028 • Fax: (732) 358-2029*

**COUNT 6**
**(Antitrust Violations)**

111. Plaintiff incorporates each and every allegation contained in paragraphs 1 - 110 hereof as though fully set forth at length herein.

112. Defendant, John Does 1-50 and ABC Corps. 1-10 have engaged in an unlawful conspiracy to fix, maintain, and stabilize the price of Swarovski products in violation of Section 1 of the Sherman Act, 15 *U.S.C.A.* §1.

113. In furtherance of their conspiracy, defendants have, among other things, terminated Plaintiff's, and others, authorized retailer agreements, preventing the sale of Swarovski product by any retailer who maintains a strong internet presence and/or was discounting Swarovski product to their customers as an incentive to conduct business.

114. Defendants' conspiracy has injured Plaintiff and has injured competition in the market for Swarovski products in, at a bear minimum, the State of New Jersey.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant, John Does 1-50 and ABC Corps. 1-10, jointly, severally and in the alternative, for:

a. consequential damages;

b. compensatory damages;

c. punitive damages;

d. statutory treble damages;

e. statutory attorneys fees and costs; and,

f. such other and further relief as the Court may deem just

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

and proper.

**COUNT 7**
**(Punitive Damages Pursuant to *N.J.S.A.* 2A:15-5.9)**

115. Plaintiff incorporates each and every allegation contained in paragraphs 1 - 114 hereof as though fully set forth at length herein.

116. Defendants' conduct, as described and complained of herein, was actuated by actual malice and accompanied by a wanton and willful disregard of Plaintiff's rights.

117. It was foreseeable that defendants' conduct, as described and complained of herein, would result in harm to Plaintiff.

118. As a result of defendants' conduct, as described and complained of herein, Plaintiff incurred damages.

119. Defendants' conduct, as described and complained of herein, entitles Plaintiff to punitive damages in accordance with the Punitive Damages Act, *N.J.S.A.* 2A:15-5.9

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant, John Does 1-50 and ABC Corps. 1-10, jointly, severally and in the alternative, for:

a. punitive damages, in accordance with *N.J.S.A.* 2A:15-5.9;

b. attorneys fees, interest, costs of suit, and such other and further relief as the Court may deem just and proper.

KLAFTER, MASON, RECORD & SOCHER, L.L.C.
*Century Office Park • 300 Craig Road • Manalapan, N.J. 07726*
*(732) 358-2028 • Fax: (732) 358-2029*

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact raised herein.

**KLAFTER, MASON & SOCHER, L.L.C.**
Attorneys for Plaintiff

BY: ______________________
GARY L. MASON (GLM/4835)

Dated: April 15, 2003

(2)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK , NEW JERSEY 07101-0419

Local Civil Rule 10.1(b) requires docket number and name of district judge on all pleadings filed with this office.

| | |
|---|---|
| PHARMACY SERVICES<br>Plaintiff(s)<br>v.<br>SWAROVSKI NORTH<br>Defendant(s) | Civil Action No. 2:03cv01707<br><br>NOTICE OF ALLOCATION and ASSIGNMENT |

ALLOCATION: Pursuant to Local Civil Rule 40.1(a), I have allocated this action to NEWARK. Please file all pleadings and make all motions returnable there.

ASSIGNMENT: This action has been assigned to United States District Judge William H. Walls for trial. Discovery and other non-dispositive matters have been assigned to United States Magistrate Judge Susan D. Wigenton.

MEDIATION: You may consent to mediation of this action pursuant to Local Civil Rule 301.1. However, this matter may be referred to mediation by a judicial officer regardless of consent. See Attached.

MAGISTRATE JUDGE JURISDICTION: You may consent to conduct all proceeding, including trial and the entry of final judgment, before the United States Magistrate Judge in accordance with the provisions of 28 U.S.C. & 636(c).

NOTICE TO COUNSEL AND PRO SE LITIGANTS: The Court has directed that counsel and pro se litigants be advised that there will be STRICT ENFORCEMENT of Local Civil Rules 16.1 (pretrial conferences; scheduling; case management) and 26.1 (discovery). Sanctions may be imposed for failure to comply with the local rules and orders entered pursuant thereto. Sanctions may include dismissal of the action and suppression of the defense.

WILLIAM T. WALSH
CLERK

by: MICHAEL DECAPUA
Deputy Clerk

Date: 04/24/03

# AL_RNATIVE DISPUTE RESOLUTIOI
# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

Mediation is the Alternative Dispute Resolution ( "ADR") program in this Court. Mediation is governed by Local Civil Rule 301.1. The mediation program under this rule is supervised by a judicial officer (at present United States Magistrate Judge Ronald J. Hedges) who is available to answer any questions about the program.

Any district judge or magistrate judge may refer a civil action to mediation. This may be done without the consent of the parties. However, the Court encourages parties to confer among themselves and consent to mediation. Moreover, you are reminded that, when counsel confer pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Civil Rule 26.1, one of the topics that must be addressed is the eligibility of a civil action for participation in ADR.

A civil action may be referred to mediation at any time. However, one of the advantages of mediation is that, if successful, it enables parties to avoid the time and expense of discovery and trial. Accordingly, the Court encourages parties to consent to mediation prior to or at the time that automatic disclosures are made pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

If parties consent to mediation, they may choose a mediator either from the list of certified mediators maintained by the Court or by the selection of a private mediator. If a civil action is referred to mediation without consent of the parties, the judicial officer responsible for supervision of the program will select the mediator.

Mediation is non-judgmental. The role of the mediator is to assist the parties in reaching a resolution of their dispute. The parties may confer with the mediator on an ex parte basis. Anything said to the mediator will be deemed to be confidential and will not be revealed to another party or to others without the party's consent. The first six hours of a mediator's time is free. The mediator's hourly rate thereafter is $250.00, which is borne equally by the parties.

If you would like further information with regard to the mediation program please review the Guidelines for Mediation, which are available on the Court's Web Site PACER, (pacer.njd.uscourts.gov) and appear as Appendix Q to the Local Civil Rules. You may also make inquiries of the judicial officer responsible for supervision of the program.

Civil actions in which there are pro se parties (incarcerated or not) are not eligible for mediation.

3

Stephen F. Payerle (SP9780)
CARPENTER, BENNETT & MORRISSEY
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

Richard C. Levin
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue
Suite 4100
Dallas, Texas 75201
(214) 969-2800

Attorneys for Defendant
Swarovski North America, Ltd.

FILED
MAY 23 2003
AT 8:30 .......... M
WILLIAM T. WALSH
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHARMACY SERVICES, et al, | |
| Plaintiffs, | |
| vs. | **APPLICATION FOR AN EXTENSION OF TIME TO ANSWER, MOVE OR OTHERWISE REPLY (L. CIV. R. 6.1(b))** |
| SWAROVSKI NORTH AMERICA, LTD., | |
| Defendant. | CIVIL ACTION NO. 03-CV-1707 (WHW) |

Application is hereby made for a Clerk's Order extending time within which defendant, Swarovski North America, Ltd., may answer, move or otherwise reply to Complaint filed by plaintiffs herein and it is represented that:

1. No previous extension has been obtained;

2. Service of process was made on May 7, 2003.

3. Time to Answer, Move, or Otherwise Reply expires on May 27, 2003.

CARPENTER, BENNETT & MORRISSEY
Attorneys for Defendants
General Motors Corporation

By: [signature]
Stephen F. Payerle

ORDER

The above application is ORDERED GRANTED extended to June 11, 2003.

William T. Walsh, Clerk

By: Jane DelleMonache
Deputy Clerk

Order Dated: 5-29, 2003

4

Stephen F. Payerle (SP9780)
CARPENTER, BENNETT & MORRISSEY
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

Richard C. Levin
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue
Suite 4100
Dallas, Texas 75201
(214) 969-2800

Attorneys for Defendant
Swarovski North America, Ltd.

RECEIVED
WILLIAM T. WALSH, CLERK
2003 JUN -9 P 4: 28
UNITED STATES
DISTRICT COURT

ENTERED
ON
THE DOCKET
JUN 10 2003 AT 8:30
WILLIAM T. WALSH, CLERK
By_______________
(Deputy Clerk)

FILED
JUN 9 2003
AT 8:30 ..........
WILLIAM T. WALSH
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

PHARMACY SERVICES, et al,

Plaintiffs,

vs.

SWAROVSKI NORTH AMERICA, LTD.,

Defendant.

**APPLICATION FOR AN EXTENSION OF TIME TO ANSWER, MOVE OR OTHERWISE REPLY TO COMPLAINT**

CIVIL ACTION NO. 03-CV-1707 (WHW)

Application is hereby made for an Order extending for twenty-one days, to July 2, 2003, the time within which defendant, Swarovski North America, Ltd., may answer, move or otherwise respond to Complaint filed by plaintiffs and it is represented that:

1. Service of process was made on May 7, 2003.

2. On May 23, 2003, defendant submitted a timely application for a Clerk's extension under Local Civil Rule 6.1(b).

3. The Clerk's extension was granted, and the time to answer, move, or otherwise reply expires on June 11, 2003.

4. Defendant seeks an additional extension of time in order to further investigate matters raised by the Complaint and to prepare an answer or motion in response.

5. Plaintiffs' counsel, Gary L. Mason, Esq., has consented to this requested extension of time.

CARPENTER, BENNETT & MORRISSEY
Attorneys for Defendant
Swarovski North America, Ltd.

By:________________________
Stephen F. Payerle

Dated: June 6, 2003

ORDER

The above application is ORDERED GRANTED extended to July 2, 2003.

________________________
Hon. Susan D. Wigenton, U.S.M.J.

Order Dated: June 9, 2003

Stephen F. Payerle (SP9780)
Carpenter, Bennett & Morrissey
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

Richard C. Levin
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4675
(214) 969-2800

FILED
JUL 1 2003
AT 8:30 ..........
WILLIAM T. WALSH
CLERK

RECEIVED CLERK
U.S. DISTRICT COURT
2003 JUN -1 P 12: 31

ENTERED ON THE DOCKET
JUL 2 2003
WILLIAM T. WALSH, CLERK
By (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PHARMACY SERVICES, ET AL., | § | |
| Plaintiffs, | § | APPLICATION FOR AN EXTENSION OF TIME TO ANSWER, MAKE, OR <u>OTHERWISE REPLY TO COMPLAINT</u> |
| vs. | § | |
| SWAROVSKI NORTH AMERICA, LTD., | § | CIVIL ACTION NO. 03-1707(WHW) |
| Defendant. | § | |

Application is hereby made for an Order extending for fourteen days, to July 16, 2003, the time within which defendant, Swarovski North America, Ltd., may answer, move, or otherwise reply to the Complaint filed by Plaintiffs and it is represented that:

1. Service of process was made on May 7, 2003.

2. On May 23, 2003, defendant submitted a timely application for a Clerks' extension under Local Civil Rule 6.1(b), to June 11, 2003, which was granted.

3. On June 6, 2003, defendant submitted an application to extend the deadline to answer, move, or otherwise reply to July 2, 2003, which was granted.

4. During the interim, Defendant conferred with counsel for Plaintiffs in good faith regarding a potential motion to transfer venue and Plaintiffs' position. After Defendant voluntarily produced documents relevant to the venue inquiry to Plaintiffs, counsel for Plaintiffs indicated that Plaintiffs would oppose Defendant's motion to transfer.

5. In addition, Defendant has not yet completed its investigation of matters raised by the Complaint necessary to present a comprehensive answer to the allegations made by Plaintiffs. The investigation requires inquiries with individuals located in Austria, which has complicated Defendant's efforts to frame its answer.

6. For this reason, Defendant seeks an additional fourteen days in which to answer, move, or otherwise reply to the Complaint.

7. Plaintiffs' counsel, Gary L. Mason, Esq., has consented to this requested extension of time.

CARPENTER, BENNETT & MORRISSEY
Attorneys for Defendant
Swarovski North America, Ltd.

By:________________________
Stephen F. Payerle

Dated: June 30, 2003

ORDER

The above application is ORDERED GRANTED extended to July 16, 2003.

Hon. Susan D. Wigenton, U.S.M.J.

Order Dated: June 30, 2003

Stephen F. Payerle (SP9780)
Carpenter, Bennett & Morrissey
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

Richard C. Levin
Jeffrey Goldfarb
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4675
(214) 969-2800

RECEIVED
JUL 16 2003
AT 8:30 4:30 P M
WILLIAM T. WALSH
CLERK

FILED
JUL 16 2003
AT 8:30 ........ M
WILLIAM T. WALSH
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PHARMACY SERVICES, ET AL., | § | |
| Plaintiffs, | § | DEFENDANT'S ANSWER |
| vs. | § | |
| SWAROVSKI NORTH AMERICA, LTD., | § | CIVIL ACTION NO. 03-CV-1707(WHW) |
| Defendant. | § | |

Defendant Swarovski North America Limited ("Swarovski") hereby answers and responds to the Complaint and Jury Demand of Plaintiff Pharmacy Services, Inc., subject to and without waiving its motion to dismiss or alternatively to transfer venue, its affirmative defenses, and other responses:

## I. SWAROVSKI'S ANSWER

Swarovski responds to each paragraph of Plaintiff's Complaint as follows:

## JURISDICTIONAL ALLEGATIONS

1. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

2. Swarovski admits the averments in this paragraph.

3. Swarovski responds by stating that the averments constitute legal conclusions that do not require a response.

4. Swarovski responds by stating that the averments constitute legal conclusions that do not require a response. Swarovski denies that Plaintiff is entitled to recover.

5. Swarovski denies that venue is proper in this Court on the basis of a contractual forum selection clause to which the parties agreed, which establishes exclusive venue in state and federal courts of Rhode Island.

## THE PLAYERS

6. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

7. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

8. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

9. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

10. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

11. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

12. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

13. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

14. Swarovski admits that it operates out of Rhode Island and has corporate relationships with entities identified in this paragraph; it otherwise objects to the averments as vague and ambiguous and/or improper characterizations.

15. Swarovski admits the averments in this paragraph.

16. Swarovski admits that Swarovski's products include crystal jewelry, objects, and accessories and that its products are sold in several different countries; it otherwise objects to the averments as vague and ambiguous, improper characterizations, and as calling for a legal conclusion.

17. Swarovski denies the averments in this paragraph.

18. Swarovski denies the averments in this paragraph.

## ALLEGATIONS COMMON TO ALL COUNTS

19. Swarovski admits that Plaintiff started selling Swarovski products in or about 1999, and otherwise denies the averments in this paragraph.

20. Swarovski denies the averments in this paragraph.

21. Swarovski denies the averments in this paragraph and further objects to the averments in this paragraph because they constitute legal conclusions and characterizations.

22. Swarovski admits that Plaintiff entered into certain Display Lease Agreements for purposes of displaying Swarovski product, but otherwise denies the averments in this paragraph.

23. Swarovski objects to the averments as vague and as calling for a legal conclusion, and Swarovski therefore cannot fully respond to the averments in this paragraph, and they are therefore denied.

24. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

25. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

26. Swarovski denies the averments in this paragraph and objects to the characterization "routinely" as vague and ambiguous.

27. Swarovski denies the averments in this paragraph.

28. Swarovski admits the averments in this paragraph.

29. Swarovski denies the averments in this paragraph.

30. Swarovski denies the averments in this paragraph.

31. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

32. Swarovski denies the averments in this paragraph.

33. Swarovski denies the averments in this paragraph.

34. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

35. Swarovski denies the averments in this paragraph.

36. Swarovski admits the averments in this paragraph.

37. Swarovski objects to and denies the characterization "'Tiffany' blue," but otherwise admits the averments in this paragraph.

38. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

39. Swarovski objects to the averments as vague and ambiguous and improper characterizations, and Swarovski therefore cannot fully respond to the averments in this paragraph, and they are therefore denied.

40. Swarovski objects to the averments as vague and ambiguous and improper characterizations, and Swarovski therefore cannot fully respond to the averments in this paragraph, and they are therefore denied

41. Swarovski admits the averments in this paragraph.

42. Swarovski denies the averments in this paragraph.

43. Swarovski denies the averments in this paragraph.

44. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

45. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

46. Swarovski lacks information and knowledge sufficient to fully respond to the averment that "Plaintiff's website triggered a dramatic increase in sales" and other a verments and they are therefore denied.

47. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

48. Swarovski denies the averments in this paragraph.

49. Swarovski denies the averments in this paragraph.

50. Swarovski objects to the averments as vague and ambiguous and improper characterizations, and Swarovski therefore cannot fully respond to the averments in this paragraph, and they are therefore denied.

51. Swarovski objects to the averments as vague and ambiguous and improper characterizations, and Swarovski therefore cannot fully respond to the averments in this paragraph, and they are therefore denied.

52. Swarovski denies the averments in this paragraph.

53. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

54. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

55. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

56. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

57. Swarovski denies the averments in this paragraph.

58. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

59. Swarovski admits the averments in this paragraph.

60. Swarovski objects to the averments in this paragraph because the Termination Letter speaks for itself and thus no response is necessary.

61. Swarovski admits the averments in this paragraph.

62. Swarovski admits the averments in this paragraph.

63. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

64. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

65. Swarovski denies the averments in this paragraph.

66. Swarovski denies the averments in this paragraph.

67. Swarovski denies the averments in this paragraph.

68. Swarovski denies the averments in this paragraph.

69. Swarovski denies the averments in this paragraph.

70. Swarovski denies the averments in this paragraph.

71. Swarovski denies the averments in this paragraph.

72. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

73. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

74. Swarovski denies the averments in this paragraph.

75. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

76. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

**COUNT 1**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

77. Swarovski incorporates its prior responses in paragraphs 1-76, above, as if set forth in full.

78. Swarovski denies the averments in this paragraph.

79. Swarovski denies the averments in this paragraph.

80. Swarovski denies the averments in this paragraph. Swarovski denies that Plaintiff is entitled to judgment.

**COUNT 2**
**(Misrepresentation)**

81. Swarovski incorporates its prior responses in paragraphs 1-80, above, as if set forth in full.

82. Swarovski denies the averments in this paragraph.

83. Swarovski denies the averments in this paragraph.

84. Swarovski admits that it communicated to Plaintiff the decision to terminate the business relationship between Plaintiff and Swarovski in 2003, but otherwise denies the averments in this paragraph.

85. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

86. Swarovski denies the averments in this paragraph.

87. Swarovski denies the averments in this paragraph.

88. Swarovski denies the averments in this paragraph.

89. Swarovski denies the averments in this paragraph.

90. Swarovski objects to the characterization "coincidentally," but admits that it sent a letter terminating the business relationship between Plaintiff and Swarovski on January 15, 2003.

91. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied.

92. Swarovski denies the averments in this paragraph.

93. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied. Swarovski specifically denies that it withheld information or made such representations.

94. Swarovski denies the averments in this paragraph. Swarovski denies that Plaintiff is entitled to judgment.

## COUNT 3
## (Tortious Interference With Economic Advantage)

95. Swarovski incorporates its prior responses in paragraphs 1-94, above, as if set forth in full.

96. Swarovski denies the averments in this paragraph.

97. Swarovski denies the averments in this paragraph.

98. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied. Swarovski specifically denies any interference.

99. Swarovski denies the averments in this paragraph. Swarovski denies that Plaintiff is entitled to judgment.

**COUNT 4**
**(Civil Conspiracy)**

100. Swarovski incorporates its prior responses in paragraphs 1-99, above, as if set forth in full.

101. Swarovski denies the averments in this paragraph.

102. Swarovski denies the averments in this paragraph.

103. Swarovski denies the averments in this paragraph.

104. Swarovski lacks information and knowledge sufficient to fully respond to the averments in this paragraph, and they are therefore denied. Swarovski specifically denies engaging in any wrongful conduct.

105. Swarovski denies the averments in this paragraph. Swarovski denies that Plaintiff is entitled to judgment.

**COUNT 5**
**(Unfair Competition)**

106. Swarovski incorporates its prior responses in paragraphs 1-105, above, as if set forth in full.

107. Swarovski denies the averments in this paragraph.

108. Swarovski denies the averments in this paragraph.

109. Swarovski denies the averments in this paragraph.

110. Swarovski denies the averments in this paragraph. Swarovski denies that Plaintiff is entitled to judgment.

**COUNT 6**
**(Antitrust Violations)**

111. Swarovski incorporates its prior responses in paragraphs 1-110, above, as if set forth in full.

112. Swarovski denies the averments in this paragraph.

113. Swarovski denies the averments in this paragraph.

114. Swarovski denies the averments in this paragraph. Swarovski denies that Plaintiff is entitled to judgment.

**COUNT 7**
**(Punitive Damages Pursuant to N.J.S.A. 2A:15-5.9)**

115. Swarovski incorporates its prior responses in paragraphs 1-114, above, as if set forth in full.

116. Swarovski denies the averments in this paragraph.

117. Swarovski denies the averments in this paragraph.

118. Swarovski lacks information and knowledge sufficient to fully respond to the averment in this paragraph that Plaintiff incurred damages, and it is therefore denied. Swarovski specifically denies that its conduct caused Plaintiff to incur any damages.

119. Swarovski denies the averments in this paragraph. Swarovski denies that Plaintiff is entitled to judgment.

**JURY DEMAND**

Swarovski denies that this case should be tried before a jury. Plaintiff has waived any right to a trial by jury in accordance with its contractual agreement.

## II. SWAROVSKI'S AFFIRMATIVE DEFENSES AND OTHER RESPONSES

Swarovski hereby asserts the following affirmative defenses and other responses.

1. Venue is improper and therefore this case should be dismissed or alternatively transferred, as set forth in Swarovski's Motion to Dismiss or Alternatively Transfer Venue.

2. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

3. Plaintiff's claims are barred by the doctrine of privilege.

4. Plaintiff's claims are barred by the doctrine of justification.

5. Plaintiff's claims are barred by the doctrine of waiver.

6. Plaintiff's claims are barred by the doctrine of estoppel.

7. Plaintiff's claims are barred by the doctrine of prior breach.

8. Plaintiff's claims are barred by the doctrine of unclean hands and inequitable conduct.

9. Plaintiff's claims are barred by the doctrine of failure of consideration.

10. Plaintiff has waived any right to a trial by jury in accordance with its contractual agreement.

WHEREFORE, Defendant Swarovski North America Limited respectfully requests that the Court deny all relief to Plaintiff and enter judgment against Plaintiff on its claims, and that Swarovski North America Limited be awarded its attorney's fees, costs of court, and such other and further relief deemed just and proper.

CARPENTER, BENNETT & MORRISSEY
Attorneys for Defendant
Swarovski North America, Ltd.

By: ______________________
Stephen F. Payerle

Dated: July 16, 2003

Of Counsel:

Akin Gump Strauss Hauer & Feld LLP
Richard C. Levin (pro hac vice pending)
Jeffrey Goldfarb (pro hac vice pending)

RECEIVED

JUL 16 2003

AT 8:30 ____ M
WILLIAM T. WALSH
CLERK

Stephen F. Payerle (SP9780)
CARPENTER, BENNETT & MORRISSEY
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

Richard C. Levin
Jeffrey Goldfarb
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue
Suite 4100
Dallas, Texas 75201
(214) 969-2800

Attorneys for Defendant
Swarovski North America, Ltd.

FILED

JUL 16 2003

AT 8:30 ........ M
WILLIAM T. WALSH
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHARMACY SERVICES, et al, | |
| Plaintiffs, | CIVIL ACTION NO. 03-CV-1707 (WHW) |
| vs. | |
| SWAROVSKI NORTH AMERICA, LTD., | **NOTICE OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** |
| Defendant. | |

**PLEASE TAKE NOTICE** that, on September 8, 2003, at 9:30 a.m., or as soon thereafter as counsel may be heard, defendant, Swarovski North America, Ltd., will move to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(6), or, in the alternative, to

transfer venue of this case to the U.S. District Court for the District of Rhode Island, pursuant to 28 U.S.C. § 1404(a).

PLEASE TAKE FURTHER NOTICE that in support of this motion, defendant will rely on the brief, proposed form of Order, and Declaration of Michael Whitney served and filed herewith.

CARPENTER, BENNETT & MORRISSEY
Attorneys for Defendant
Swarovski North America, Ltd.

By:______________________________
Stephen F. Payerle

Dated: July 16, 2003

Of Counsel:

Akin Gump Strauss Hauer & Feld LLP
Richard C. Levin (pro hac vice pending)
Jeffrey Goldfarb (pro hac vice pending)

**CERTIFICATE OF SERVICE**

I certify that a copy of the within Notice of Motion, together with the supporting brief, propos

Gary L. Mason
Klafter, Mason, Record & Socher, LLC
Century Office Park
300 Craig Road
Manalapan, NJ 07726

this date, by United States mail, first class postage prepaid.

I certify under penalty of perjury that the foregoing is true and correct.

Stephen F. Payerle

Date: July 16, 2003

RECEIVED
JUL 16 2003
AT 8:30 ______ M
WILLIAM T. WALSH
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RECEIVED
JUL 16 2003
AT 8:30 4:30 M
WILLIAM T. WALSH
CLERK

CA 04 72

PHARMACY SERVICES, ET AL.,

Plaintiffs,

vs.

SWAROVSKI NORTH AMERICA LIMITED,

Defendant.

DECLARATION OF MICHAEL WHITNEY

CIVIL ACTION NO. 03-CV-1707(WHW)

My name is Michael Whitney. I am over the age of eighteen and I have personal knowledge of the facts stated below, which are true and correct. I offer this declaration pursuant to 28 U.S.C. § 1746 in support of the motion to dismiss or alternatively to transfer venue filed by Defendant Swarovski North America Limited ("Swarovski").

1. I hold the position of National Field Sales Manager with Swarovski. I have been an employee of Swarovski since 1997. I am familiar with the transactions between the Plaintiff in this case, Pharmacy Services, Inc. also known as Roselle Center Pharmacy ("Roselle Center Pharmacy") and Swarovski.

2. A true and correct copy of the Terms and Conditions of Sale ("Terms") and the Standards for Swarovski America Limited Retailers executed by Paul Schulman on behalf of Roselle Center Pharmacy, dated April 6, 1999, is attached hereto as Exhibit A.

3. Roselle Center Pharmacy entered into multiple Lease Agreements for display cases for Swarovski products.

4. A true and correct copy of the Display Case Lease Agreement for the Silver Crystal Wide Tower, signed by Paul Schulman for Roselle Center Pharmacy and commencing November 4, 1999, is attached as Exhibit B.

5. A true and correct copy of the Display Case Lease Agreement for the Signature Jewelry Tower signed by Paul Schulman for Roselle Center Pharmacy and commencing November 4, 1999, is attached as Exhibit C.

6. A true and correct copy of the Display Case Lease Agreement for the Outposting Gallery Unit, signed by Paul Schulman on behalf of Roselle Center Pharmacy and commencing on November 4, 1999, is attached as Exhibit D.

7. A true and correct copy of the Display Case Lease Agreement for two (2) Crystal Memories Towers, signed by Paul Schulman on behalf of Roselle Center Pharmacy and commencing on November 4, 1999, is attached as Exhibit E.

8. A true and correct copy of the Display Case Lease Agreement for five display cases, signed by Stuart Schulman on behalf of "Roselle Gifts & Coll." and commencing on January 1, 2000, is attached here to as Exhibit F.

9. Individuals who may be called to testify at any potential trial of this case live and work in Rhode Island. For example, in addition to myself, Swarovski anticipates that it may call Carol Aliskevicz, Kendra Nicholson, and Jim Rego at any potential trial to testify.

10. A substantial amount of documents and other potentially relevant evidence to this dispute is located in Rhode Island. These documents include sales records, contracts, and materials relating to the Swarovski internet website.

I declare under penalty of perjury that the foregoing is true and correct.

This concludes my declaration.

Michael Whitney

Dated this 15 day of July, 2003.

# Exhibit A

SWAROVSKI

## Terms and Conditions of Sale

SWAROVSKI CONSUMER GOODS LIMITED ("Seller") and Buyer agree that the following Terms and Conditions of Sale ("Terms") apply to all sales between Seller and Buyer. Buyer's submission of an order constitutes its agreement to be bound by these Terms.

### CUSTOMER AUTHORIZATION CATEGORIES

RETAILERS. Seller sells its products for resale only to authorized Retailer's at authorized locations, who are required to meet the Standards for Authorized SWAROVSKI CONSUMER GOODS LIMITED Retailer's ("Standards"). Authorized Retailer's may request annually to participate as an Authorized SWAROVSKI Collectors Society Retailer ® by completing a Request to Participate form. Continuing compliance with Standards is necessary to sustain Authorized SWAROVSKI Collectors Society Retailer status. Either Buyer or Seller may terminate the Retailer status, in keeping with which, Seller may refuse to sell Buyer at any time without notice for any or no reason. Termination of a SWAROVSKI Collectors Society Authorization will occur immediately upon termination of your status as a SWAROVSKI Authorized Retailer.

CORPORATE/PREMIUM INCENTIVE ACCOUNTS/CUSTOMERS. Seller sells its products to "Corporate" accounts for purposes of gifts and incentives.

---

PURCHASE ORDERS; PRICE. Offers to purchase must be submitted on Seller's Order Forms, Customer endorsed Purchase Order Forms or via EDI transmission and must be accepted by a SWAROVSKI Representative at its Cranston, Rhode Island Office, or by shipment of ordered goods, whichever is earlier. If Customer's Purchase Order is in non-compliance with SWAROVSKI'S Terms of Sale, SWAROVSKI'S Terms will govern and the customer's purchase order may be suspended from being processed pending correction. A SWAROVSKI Representative will contact the Customer to expedite clarification and compliance to SWAROVSKI'S Terms. Buyer shall pay the prices in effect on the date of acceptance of order. Reorders must exceed $100.00.

CANCELLATION. Buyer may cancel an order, once accepted, only upon Seller's written approval, which will not be unreasonably withheld. If Buyer defaults on any part of any order, fails to pay any invoice according to these Terms, Seller may, at its option, cancel any other order previously accepted, or any undelivered portion thereof, without further obligation to Buyer and without prejudice to Seller's other rights or remedies.

PAYMENT TERMS; CREDIT. Seller may elect, in its sole discretion, to sell on open account, C.O.D., Credit Card, Bank Wire Transfer or C.I.A. Sales on open account are Net 30 Day terms from date of invoice. No discount may be taken unless specified on Seller's invoice. Acceptance by Seller of less than full payment shall not waive any of Seller's rights. Past due accounts are subject to a service charge of 1.5% per month (18% per annum) on the balance due, or the maximum amount allowed per applicable law, whichever is less. Applications for Credit must be made on SWAROVSKI CONSUMER GOODS LIMITED Credit/Sales Application form. By submitting a Credit/Sales Application form, Buyer represents that: the information provided therein is true and accurate, Seller may rely on such information and all Credit purchases are for business purposes only. Refer to the SWAROVSKI Credit/Sales Application as a supplement to these Terms.

FREIGHT TERMS/SHIPMENT. All goods are shipped F.O.B. Seller's plant, Cranston, Rhode Island at Buyer's risk and risk of loss shall pass to Buyer upon delivery to carrier. Each shipment shall be a separate and independent transaction and may be individually invoiced. Seller is not liable for failure to meet any projected or promised delivery date. If shipment is delayed due to Buyer's action or inaction, Seller may store the good's at Buyer's risk and expense or, at Seller's discretion, return product back to inventory for re-sale. In the event SWAROVSKI stores order, full payment will be due according to these Terms. SWAROVSKI reserves the right of carrier selection. For your protection, please examine our shipment upon arrival to ascertain good condition. If any shortages of cartons or damages to cartons are found, write a full description on the carriers delivery receipt and have the driver acknowledge it; have the carrier make a written inspection of the loss or damage and file a claim with the carrier within 9 months. No deductions for loss or damage are allowed.

(continued)

**Terms and Conditions of Sale (continued)**

SHORTAGES AND RETURNS. No claims for variances from or shortages of product within cartons/packages will be considered unless presented in writing within 30 days after receipt of goods. Reminder: Claims for freight damage MUST be made directly with the Carrier. Merchandise may not be returned for credit unless the Seller has issued a Return Authorization for same merchandise, which will be accompanied by shipping instructions. Such goods must be returned at Buyer's risk in the same condition as when they were shipped by Seller. Transportation and insurance charges must be prepaid by Buyer. Returns are authorized in Seller's sole discretion, may be subject to a return handling charge of 15%. GOODS WHICH ARE DATED OR MADE TO SPECIAL ORDER ARE NOT RETURNABLE.

DISCLAIMER OF DELAY LIABILITIES. Seller is not liable for any claim, loss or damage arising from any delay in Seller's performance caused by force majeure, acts of God, floods, fires, strikes, labor disputes or shortages, accidents, embargoes, car shortages, delays of carriers, acts of governmental or military authorities, judicial action, sabotage, energy shortages, inability to obtain raw materials, supplies or equipment, Seller's suppliers' delays or from any cause which is unforeseen, unavoidable or beyond Seller's reasonable control including any, but not limited to, year 2000 computer problems/issues.

DISCLAIMER OF WARRANTIES AND LIABILITIES. Seller warrants that the goods sold will be free from any defects in material and workmanship under normal use and service. The warranty period for latent defects is six (6) months from the date of invoice. Seller may make warranties to the consumer which do not inure to Buyer's benefit. Seller is not liable for minor deviations in the size or weight of the goods. Buyer's sole and exclusive remedy against Seller for any claim, including without limitation breach of warranty or delivery of defective goods, shall be at Seller's option, credit for the purchase price or repair or replacement, at Seller's plant, of any goods returned at Buyer's risk, transportation and insurance prepaid, which, prove to Seller's satisfaction to be defective within the applicable warranty period. Seller's obligation to credit, repair or replace shall not apply to any goods which have been subject to abuse, modification, attempted repair, negligence, misuse or accident. THIS AGREEMENT TO CREDIT, REPAIR OR REPLACE DEFECTIVE GOODS IS EXPRESSLY IN LIEU OF, AND IS IN DISCLAIMER OF, ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, INCLUDING THE IMPLIED WARRANTIES OR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL SELLER BE LIABLE FOR ANY OTHER DAMAGES, INCLUDING WITHOUT LIMITATION, CONSEQUENTIAL, INCIDENTAL, OR SPECIAL DAMAGES, DAMAGES TO PERSONS, PROPERTY, EQUIPMENT, GOODS, MERCHANDISE, PROFITS, GOODWILL OR REPUTATION, ARISING FROM SELLER'S TRANSACTION WITH BUYER. ANY REPAIR SERVICE SELLER MAY OFFER IS NOT A WARRANTY. Seller does not authorize any person to assume for it any liability or obligation in connection with the sale of goods.

DUTIES AND TAXES. Buyer is responsible for all duties, taxes, customers charges or other governmental charges imposed by any federal, state or local authority.

SOLE TERMS. THESE TERMS ARE THE FINAL, COMPLETE AND EXCLUSIVE EXPRESSION OF THE AGREEMENT BETWEEN SELLER AND BUYER AND SHALL EXCLUSIVELY GOVERN THEIR RIGHTS. No supplementation, modification, amendment or alteration of these Terms shall be binding unless in writing and signed by one of Seller's authorized officers at Cranston, Rhode Island. No sales Representative in Cranston or elsewhere is authorized to supplement, modify, amend, or alter these Terms. These Terms and the supplemental Credit Terms located on SWAROVSKI'S Credit/Sales Application supersede all prior oral and written communications, representations and agreements between Seller and Buyer and supersede any course of dealing or usage of trade, and any inconsistent provisions on Buyer's purchase orders or other communications. These Terms supersede inconsistent or different terms on Buyer's Purchase Orders. Seller hereby notifies Buyer of its objection to any terms or conditions, whether or not material, in any communication from Buyer, which are additional to or otherwise different from those contained herein, Seller's forbearance, acceptance of partial performance, or failure to insist on performance of any term or condition herein shall not waive any of Seller's rights or remedies and shall not waive any other or subsequent breach or default of these Terms. Seller's failure to exercise any right or remedy contained herein on one or more occasions shall not bar the exercise of such right or remedy on any other occasion. SWAROVSKI at its sole discretion may limit Retailer/Customer to one (1) for more product lines.

GENERAL PROVISIONS. These Terms shall be construed and governed by and under the laws of the State of Rhode Island. Buyer waives trial by jury in any litigation arising from or relating to these Terms and transactions between Buyer and Seller, consents to and confers personal jurisdiction on the state and federal courts located within the State of Rhode Island in such litigation, and federal courts located within the State of Rhode Island in such litigation, and agrees that any such litigation shall be brought only in a state or federal court within the State of Rhode Island. Buyer shall pay all costs and expenses, including reasonable attorney's fees, that Seller incurs in collecting amounts Buyer owes Seller, in enforcing Seller's rights against Buyer, or in defending against litigation brought by Buyer. These Terms shall inure to the benefit of and be binding upon Seller's and Buyer's respective successors and assigns. Buyer may offset claims or exercise a right of retention only if its claim is undisputed or has been established by a final judgement.

INTELLECTUAL PROPERTY. Buyer may use Seller's trademarks © which Seller applies to goods or packaging only to identify the goods in their original packaging and condition. Buyer will not use Seller's trademarks, names or logos in any other manner without prior written approval from an authorized officer of Seller in Cranston, Rhode Island. Sales representatives are not authorized to give such approval. The status of such marks as registered trademarks must be indicated by means of the © sign. Seller is not liable for any infringement of patents, copyrights, trademarks or other intellectual property rights resulting from compliance with Buyer's designs, specifications, or instructions, and Buyer agrees to defend Seller against and indemnify Seller for any such claims of infringement or violation of intellectual property rights. All materials, including without limitation, specifications, drawings or any other data supplied to Buyer are Seller's sole property, must be treated confidentially and may not be reviewed or copied by anyone other than Buyer. Buyer shall return all such materials on Seller's request or at the conclusion of the business relationship.

# SWAROVSKI

## STANDARDS FOR AUTHORIZED SWAROVSKI AMERICA LIMITED RETAILERS

Swarovski America Limited ("SAL") sells its products only to Authorized Retailers that meet the minimum standards set forth below. Meeting these standards; however, does not guarantee selection as a Swarovski America Limited Authorized Retailer.

The Swarovski America Limited Philosophy

Swarovski America Limited distributes the premier brand of faceted full-lead crystal products. Swarovski America Limited products incorporate superior design, excellence in materials and craftsmanship, and are regarded as an artistic product evolved from generations of thought and experience. Therefore, Swarovski America Limited products must be displayed in a manner consistent with the quality, workmanship and design expressed in the product, as well as the prestigious, premier position it enjoys in the marketplace. This philosophy of total excellence is a discipline that extends to the types and appearance of stores and displays through which Swarovski America Limited products are sold, the appearance, attitude and training of sales personnel, and the advertising and other methods used to market Swarovski America Limited products.

Swarovski America Limited Retailers. Authorized Retailers should offer prestige, supportive merchandising practices, have reputations for carrying fine gift and/or collectible products, and should otherwise be capable of promoting the Swarovski America Limited Philosophy. Authorized retailers typically include fine gift or fine collectible shops, and may include jewelry stores or other retailers if they offer a fine gift/collectible department. Integral to the Swarovski America Limited Philosophy is the intent that Authorized Retailers sell the product predominantly through traditional in-store marketing. Swarovski America Limited products should be sold only in finer stores capable of promoting the Swarovski America Limited Philosophy. Authorized Retailers must remain in good credit standing with SAL, must not be insolvent, and must be located in prestigious facilities.

Product Selection and Display: The Swarovski America Limited Philosophy requires a fully represented selection of Swarovski America Limited products displayed so as to promote, not impair, the Swarovski America Limited trademarks, prestige and image, and to prevent confusion of any other manufacturer's products with Swarovski America Limited products.

Authorized Retailers:

1. must display a substantial representation from each product category throughout the year;

2. must display Swarovski America Limited products separately from all other products, and in a prominent and attractive manner, using the Swarovski America Limited floor stand display if required by Swarovski America Limited and other display materials SAL supplies, unless these requirements are waived in writing by SAL's President;

3. must maintain all displayed Swarovski America Limited products in clean, uncluttered and undamaged condition, and in a condition that promotes the Swarovski America Limited Philosophy;

4. must train sales personnel to be informed and knowledgeable regarding Swarovski America Limited products, and attentive, helpful and courteous to customers at all times, and must employ only sales personnel that are otherwise capable of promoting the Swarovski America Limited Philosophy; and

5. must purchase a sufficient volume of Swarovski America Limited products to justify SAL's commitment and support of the Retailer. Sufficient volume may vary depending on the Retailer's location, credit history, purchasing practices, quality of business, and other circumstances SAL may in its sole discretion deem relevant, but generally is:

$2,000 for a Crystal Memories only account
$7,000 for a Silver Crystal only account
$10,000 for a multi-brand Swarovski account

These dollar amounts represent an average in Swarovski America Limited purchases, based on the prior two years."

Advertising and Other Marketing Methods: The Swarovski America Limited Philosophy requires that advertising and other marketing methods promote--not impair--the Swarovski America Limited products, trademarks, reputation and image. Authorized Retailers must market in a manner that enhances SAL's ability to review Authorized Retailers' practices, and must maintain accurate records concerning sales of Swarovski America Limited products to ensure their adherence to the Swarovski America Limited Philosophy. To promote these goals, Authorized Retailers:

1. must not advertise or market in a manner inconsistent with the Swarovski America Limited Philosophy, including advertising that emphasizes discount pricing (in-store or otherwise), compares to regular prices, refers to savings, communicates sensationalism or no-frills products, confuses or misleads customers, or promotes dumping of products or unfair prices;

2. must submit any print, audio or visual advertising efforts to Swarovski America Limited's Vice President of Marketing for approval.

3. must sell all Swarovski America Limited products at retail and only on the Authorized Retail Premises;

4. must not ship to any other retailer, except with written permission of Swarovski America Limited's President:

5. must not mislead customers concerning prices, services or any other aspect of Swarovski America Limited products and must not confuse any other manufacturer's product with Swarovski America Limited products; and

6. must charge prices adequate to cover the premier marketing services consistent with the Swarovski America Limited Philosophy.

Suggested Retail Price List: SAL provides a suggested Retail Price List to its Authorized Retailers.

Review of Authorized Retailer's Performance and Practices: SAL conducts periodic independent review of its Authorized Retailers' compliance with these standards and of their efforts to promote the Swarovski America Limited Philosophy. SAL's actions concerning its Authorized retailers are undertaken unilaterally, and not at the request of other Authorized Retailers. SAL therefore does not need, and requests that Authorized Retailers not provide, information concerning other Authorized Retailers' pricing, marketing or other trade practices.

Terms and Conditions of Sale: All sales of Swarovski America Limited products are subject to SAL's Terms and Conditions of Sale ("Terms"), as they may be supplemented or amended from time to time. A copy of the Terms was provided to you previously and is attached to these standards. Additional copies are available upon request to the Vice President of Marketing, 2 Slater Road, Cranston, Rhode Island 02920.

General Standards and Policies: Termination of Authorized Status: Nothing in the Authorized Retailers' Standards, or in SAL's approval or disapproval of a retailer as an Authorized Retailer, creates a contract or any binding legal obligation on SAL or any Authorized Retailer. SAL reserves its rights to terminate the Authorized Retailer and to sell to or refuse to sell to, any Authorized Retailer, at any time without notice for any reason. Failure to comply with any of these Standards may result in SAL's unilateral termination without notice of Authorized Retailer status, and cancellation of pending orders for all Swarovski America Limited products. All compliance, termination, selection and authorization decisions are in SAL's sole, complete and unilateral discretion, and must be made by SAL's President. Any failure to act or waiver by SAL of any right concerning any retailer, regardless of the duration of SAL's inaction or waiver and regardless of SAL's intent, shall not prevent or impair SAL's later exercise of its rights. Authorized Retailer status may not be sold, conveyed, assigned or otherwise transferred to anyone, including any new owner, new address or new business.

SWAROVSKI

✓ Guild Division

______ Specialty Division

The undersigned has:

(1.) received and read the Standards for Authorized Swarovski America Limited Retailers, and meets or exceeds those standards; and

(2.) received and read Swarovski America Limited's Terms and Conditions of Sale ("Terms") and agrees that all sales of products by Swarovski America Limited made pursuant to and governed by those Terms, as they may be supplemented or amended from time to time.

Approval as an Authorized Swarovski America Limited Retailer is in Swarovski America Limited's sole discretion. Authorized Swarovski America Limited *Guild* Retailers are eligible to participate as a Swarovski Collectors Society retailer, however to maintain eligibility the retailer must renew by submitting a "Request To Participate" form each calendar year. Swarovski's Terms and Conditions of Sale may be supplemented or amended at any time, and the undersigned agrees that Swarovski sales will also be made pursuant to and governed by such supplemental or amended Terms. Swarovski also may supplement or amend its Standards at any time without notice. The "Authorized" status of an Authorized Swarovski America Limited Retailer may automatically terminate without notice if Swarovski America Limited determines in its sole discretion either that the Retailer is no longer qualified to be a Swarovski America Limited Retailer, or that the Retailer fails to meet any of the Standards, as they may be supplemented or amended from time to time.

Business Name: ROSELLE CENTER PHARMACY

Address: 570 Raritan Rd.
Roselle, NJ 07203

Name of President/Owner: Paul Schelman
(PRINT)

Signature of President/Owner: [signature]
(SIGNATURE ONLY)

Date: 4/6/1999

(Please indicate on reverse if you request Authorized Swarovski America Limited Retailer approval for any branch locations)

# Exhibit B

SWAROVSKI

Roselle Center Pharmacy 620274

10/30/99

D2187

# SWAROVSKI AMERICA LIMITED

## DISPLAY CASE LEASE AGREEMENT

☑ Silver Crystal Wide Tower

This **LEASE** is made and entered into on the date set forth below between **SWAROVSKI AMERICA LIMITED**, a Rhode Island corporation, ("SAL") and the person, partnership, firm or corporation who has executed this Lease below as an Authorized Retailer ("Retailer").

SAL makes and distributes premier full-lead crystal products which incorporates superior design and excellence in materials and craftsmanship. Retailer is a "Swarovski America Limited Authorized Retailer" of certain of SAL's products, and Retailer wishes to display such products in a manner consistent with the quality, workmanship and designed expressed in the products, as well as the prestigious, premier position they enjoy in the marketplace. SAL is the owner of certain display case(s) which are specially designed for the display of SAL's products. Retailer wishes to lease such display case(s) to present SAL's products prominently and in the most favorable light possible to Retailer's customers.

SAL AND RETAILER, THEREFORE, AGREE AS FOLLOWS:

1. **Term.** Subject to the terms and conditions set forth herein, SAL leases to Retailer 1 display case(s) (the "display case(s)") for the lease term (the "lease term") commencing 11/04, 1999 and, unless earlier terminated pursuant to Section 8 hereof, ending ________________, 19___. The lease term, and this Lease, shall automatically renew from year to year for successive lease terms of one year each, unless either party gives the other party notice of termination at least sixty (60) days prior to the end of any particular lease term.

2. **Rental.** Retailer shall pay to SAL for the use of the display case(s) leased pursuant to this Lease, without further demand and without deduction or set-off, rental each lease term in the amount of $185.00. Rental payments shall be due in full within thirty (30) days of SAL's invoice date.

3. **SAL's Exclusive Property.** This instrument is a lease and not an installment sale contract or bill of sale. The display case(s) are, and shall remain, the sole and exclusive personal property of SAL. Retailer shall have no rights or property interest therein, except for the right to use the display case(s)in the normal operation of Retailer's business during the lease term, in accordance with the restrictions set forth herein, and as such restrictions may be changed from time to time by SAL in its sole discretion. The display case(s) are, and shall at all times be and remain, personal property. Retailer shall keep the display case(s) at all times free and clear of all claims, liens, and encumbrances.

4. **Trademark.** The swan figure trademark set forth hereinbelow is a registered trademark ("the Trademark"):

™

SWAROVSKI

SWAROVSKI

of SAL and it affiliates. The right, title and interest in and to the Trademark belongs exclusively to SAL. Retailer will not do any act at any time to impair or contest SAL's right, title, and interest in and to the Trademark, and will not in any manner represent that it has any ownership interest in the Trademark. SAL has placed the Trademark on the display case(s). The display case(s) may be used solely for the display of SAL's fine crystal products, presented in a dignified manner, consistent with SAL's philosophy of total excellence, and the quality, craftsmanship and design expressed in the products, and at the location set forth below. The display case(s) may not be used for the display or storage of any other merchandise or products. Any use or possession of the displays case(s) not expressly authorized by this Lease or any other breach of the terms and conditions of this Lease, including without limitation, retention of the display case(s) after the expiration or sooner termination of the Lease, will constitute infringement of the Trademark and other property rights of SAL, and will cause irreparable harm to SAL, the Trademark and other property rights, which cannot be adequately compensated for in damages by an action at law, and will entitle SAL to an injunction restraining Retailer from such breach. Nothing herein contained shall be construed to prohibit SAL from pursuing any and all other remedies available to it under this Lease and otherwise available under applicable law.

5. **Purpose.** Retailer shall use the display case(s) solely to display SAL's products, and for no other purpose whatsoever. Possession or use of the display case(s) for any other purpose shall constitute infringement of the Trademark and SAL's other property rights.

6. **Insurance.** During the lease term, Retailer, at its own cost and expense, shall obtain and maintain (i.) insurance on each display case in the amount of $1850.00 against fire, theft, and other casualty losses, and (ii.) in addition, public liability insurance and with such insurance companies, as shall be satisfactory to SAL. All insurance policies shall name both Retailer and SAL as insureds, and Retailer will furnish SAL copies of such policies or certificates of such insurance coverage from time to time at SAL's request.

7. **Liability.** Retailer shall be responsible for any damage to the display case(s) while in its possession. Retailer is responsible for performing ongoing inspections of the display case(s) to detect any damage or visible defects, such as chips, cracks, or breaks that could cause injury to Retailer's customers or employees, and Retailer must notify SAL immediately of any such damage or defects. Retailer is also responsible for the proper location and use of the display case(s) to avoid injury to persons, the display case(s), or to other personal property. Retailer assumes liability for and shall indemnify SAL from all losses, damages, claims, and other actions of any kind, direct or indirect, including legal expenses, imposed on, incurred by, or asserted against SAL, in any way relating to or arising from this Lease or the use or possession of the display case(s), including without limitation, any injury to persons or property.

8. **Termination.** Upon default in the payment of any rent installment, or upon a breach of any other agreement, covenant, obligation, or condition of this Lease to be performed or observed by Retailer, or if during the lease term, bankruptcy or insolvency proceedings are commenced by or against Retailer, or if a receiver is appointed for the business of Retailer, or if Retailer discontinues business at, or moves the display case(s) from the location set forth below, or if Retailer breaches any of the "Terms and Conditions of Sale to Swarovski America Limited Authorized Retailers" previously provided to Retailer, or otherwise established from time to time by SAL for its Authorized Retailers, or if Retailer is not an Authorized Retailer of SAL for any reason, or if SAL, in its sole discretion, ceases to sell to Retailer for any reason, or for no reason, whatsoever, then SAL shall have the right without notice or demand to terminate this Lease, but such termination shall not release Retailer from the payment of damages sustained by SAL, including without limitation, any fees, costs and expenses pursuant to Section 14. In the event of any such termination, any rental previously paid for the unexpired portion of the current lease term, subject to set-off for claims asserted against, or expenses incurred or damages sustained by, SAL will be returned to Retailer.

9. **Assignment.** Retailer shall not assign, sublease, transfer, pledge, or grant a security interest in, this Lease, the display case(s), or any interest therein for any reason, without the prior written approval of SAL.

SWAROVSKI

10. **Notice.** Any notice to either party shall be mailed via "Certified or Registered Mail, Return Receipt Requested," (i.) if to SAL, addressed to: Swarovski America Limited, 2 Slater Road, Cranston, Rhode Island 02920, and (ii.) if to Retailer, addressed as set forth below at the end of this Lease.

11. **Taxes.** Retailer shall pay any and all local property, excise, use or similar taxes or charges imposed, made or levied on or on account of the display cases(s)

12. **Transportation Charges.** Retailer shall be responsible for all shipping fees and storage charges associated with the transportation of the display case(s) to Retailer's premises, and shall pay SAL within Thirty (30) days of receipt of SAL's itemized invoice.

13. **Return of Display Case(s).** The display case(s) are at all times the exclusive personal property of SAL. At the end of the lease term, or upon termination of this Lease, Retailer shall forthwith return the display case(s) at its own risk and expense to SAL at SAL's address set forth above in as good condition as when received, reasonable wear and tear excepted. In the event that Retailer fails to return the display case(s) to SAL pursuant to the provisions of this Section 13, in addition to any other remedies available to SAL for breach of the terms and conditions of this Lease, Retailer shall pay to SAL rental each month equal to one-half the amount of rental otherwise due pursuant to the provisions of Section 2 for each lease term.

14. **Enforcement.** Retailer shall pay all reasonable attorneys' fees and the costs of SAL in connection with the enforcement of this Lease in the event of Retailer's breach, including without limitation, all costs and expenses of repossessing, storing, repairing, insuring, and reletting the display case(s).

15. **Choice of Law.** This Lease is a contract under the laws of the State of Rhode Island and, for all purposes, this Lease and its terms and conditions, shall be construed in accordance with, and governed by and under, the laws of the State of Rhode Island (excluding the laws applicable to conflicts or choice of law).

16. **Exclusive Jurisdiction.** Retailer consents to and confers personal jurisdiction on the state and federal courts located within the State of Rhode Island, and agrees that any action or proceeding for the enforcement of this Lease or any other litigation arising out of this Lease shall be brought only in a state or federal court within this State, and the service of process in any such action or proceeding may be made upon Retailer by mail at the address set forth on the Lease Data Exhibit. Retailer hereby waives (i.) any objection that it may now or hereafter have to this venue or that such action or proceeding is brought in an inconvenient court; and (ii.) its right to a jury trial for any such action or proceeding. Nothing contained herein, however, shall prevent SAL from bringing any such action or proceeding or exercising any rights against Retailer, and against any property of Retailer, in any other state.

17. **Integration.** This Lease expresses the entire understanding of SAL and Retailer with respect to the rental of the display case(s), and neither this Lease, nor any term or condition herein, may be changed, modified, waived, or terminated except by an instrument in writing signed by the party against whom enforcement of any such change, modification, waiver, or termination is sought.

SWAROVSKI™

STORE INVENTORY OF EXISTING SWAROVSKI AMERICA LIMITED FIXTURES

Please check all existing fixtures that are currently at this retail location:

- ☐ Silver Crystal new wide tower display with side lighting (pink base)
- ☐ Silver Crystal new wide tower display without side lighting (pink base)
- ☐ Silver Crystal old wide tower display (gray base)
- ☐ Silver Crystal old single tower display (gray base)
- ☐ Selection single tower
- ☐ Selection gallery unit
- ☐ Signature Jewelry single tower
- ☐ Signature Jewelry horizontal unit
- ☐ Crystal Memories old floorstand
- ☐ Crystal Memories new floorstand
- ☐ Crystal Memories single tower
- ☐ SCS gallery unit

Name of Retailer Roselle Center Pharmacy

Account Number 620274

District Manager's Signature [signature]

SWAROVSKI

**IN WITNESS WHEREOF**, SAL and Retailer have executed this Lease on the date set forth below.

**SWAROVSKI AMERICA LIMITED**
(*internal use only*)

By: Douglas P. Brown
(SAL Corporate Officier Signature only)

Date: ______________________

Roselle Center Pharmacy
Name of Authorized Retailer

By: PAUL Schulman

(Co-Owner)
Name and title of Signatory (please print)

Address: 570 Raritan ~~Ave~~ Rd.
(physical location-Street)

Roselle NJ 07203
(City/Town, State, Zip Code)

Phone: (908) 245-4600

**Guaranty**

The undersigned hereby absolutely and unconditionally guarantees the prompt payment and performance of this Lease and all the obligations of Retailer thereunder.

Name: PAUL Schulman
(print)

Signature: ______________________

Date: 8/26/99

Required Shipping Date: 10/30/99

Account Number: 620274

# Exhibit C

SWAROVSKI

# SWAROVSKI AMERICA LIMITED

## DISPLAY CASE LEASE AGREEMENT

☐ Crystal Memories Tower
☐ Selection Tower
☒ Signature Jewelry Tower
(please check one)

This **LEASE** is made and entered into on the date set forth below between **SWAROVSKI AMERICA LIMITED**, a Rhode Island corporation, ("SAL") and the person, partnership, firm or corporation who has executed this Lease below as an Authorized Retailer ("Retailer").

SAL makes and distributes premier full-lead crystal products which incorporates superior design and excellence in materials and craftsmanship. Retailer is a "Swarovski America Limited Authorized Retailer" of certain of SAL's products, and Retailer wishes to display such products in a manner consistent with the quality, workmanship and designed expressed in the products, as well as the prestigious, premier position they enjoy in the marketplace. SAL is the owner of certain display case(s) which are specially designed for the display of SAL's products. Retailer wishes to lease such display case(s) to present SAL's products prominently and in the most favorable light possible to Retailer's customers.

SAL AND RETAILER, THEREFORE, AGREE AS FOLLOWS:

**1. Term.** Subject to the terms and conditions set forth herein, SAL leases to Retailer 1 display case(s) (the "display case(s)") for the lease term (the "lease term") commencing 11/04, 1999 and, unless earlier terminated pursuant to Section 8 hereof, ending ________, 19___. The lease term, and this Lease, shall automatically renew from year to year for successive lease terms of one year each, unless either party gives the other party notice of termination at least sixty (60) days prior to the end of any particular lease term.

**2. Rental.** Retailer shall pay to SAL for the use of the display case(s) leased pursuant to this Lease, without further demand and without deduction or set-off, rental each lease term in the amount of $160.00. Rental payments shall be due in full within thirty (30) days of SAL's invoice date.

**3. SAL's Exclusive Property.** This instrument is a lease and not an installment sale contract or bill of sale. The display case(s) are, and shall remain, the sole and exclusive personal property of SAL. Retailer shall have no rights or property interest therein, except for the right to use the display case(s) in the normal operation of Retailer's business during the lease term, in accordance with the restrictions set forth herein, and as such restrictions may be changed from time to time by SAL in its sole discretion. The display case(s) are, and shall at all times be and remain, personal property. Retailer shall keep the display case(s) at all times free and clear of all claims, liens, and encumbrances.

**4. Trademark.** The swan figure trademark set forth hereinbelow is a registered trademark ("the Trademark"):

TM

SWAROVSKI
SWAROVSKI AMERICA LIMITED

SWAROVSKI

of SAL and it affiliates. The right. title and interest in and to the Trademark belongs exclusively to SAL. Retailer will not do any act at any time to impair or contest SAL's right. title, and interest in and to the Trademark. and will not in any manner represent that it has any ownership interest in the Trademark. SAL has placed the Trademark on the display case(s). The display case(s) may be used solely for the display of SAL's fine crystal products, presented in a dignified manner. consistent with SAL's philosophy of total excellence, and the quality. craftsmanship and design expressed in the products. and at the location set forth below. The display case(s) may not be used for the display or storage of any other merchandise or products. Any use or possession of the displays case(s) not expressly authorized by this Lease or any other breach of the terms and conditions of this Lease. including without limitation, retention of the display case(s) after the expiration or sooner termination of the Lease. will constitute infringement of the Trademark and other property rights of SAL, and will cause irreparable harm to SAL, the Trademark and other property rights, which cannot be adequately compensated for in damages by an action at law, and will entitle SAL to an injunction restraining Retailer from such breach. Nothing herein contained shall be construed to prohibit SAL from pursuing any and all other remedies available to it under this Lease and otherwise available under applicable law.

5. **Purpose.** Retailer shall use the display case(s) solely to display SAL's products, and for no other purpose whatsoever. Possession or use of the display case(s) for any other purpose shall constitute infringement of the Trademark and SAL's other property rights.

6. **Insurance.** During the lease term. Retailer, at its own cost and expense. shall obtain and maintain (i.) insurance on each display case in the amount of $1650.00 against fire. theft, and other casualty losses, and (ii.) in addition. public liability insurance, and with such insurance companies. as shall be satisfactory to SAL. All insurance policies shall name both Retailer and SAL as insureds, and Retailer will furnish SAL copies of such policies or certificates of such insurance coverage from time to time at SAL's request.

7. **Liability.** Retailer shall be responsible for any damage to the display case(s) while in its possession. Retailer is responsible for performing ongoing inspections of the display case(s) to detect any damage or visible defects. such as chips, cracks, or breaks that could cause injury to Retailer's customers or employees. and Retailer must notify SAL immediately of any such damage or defects. Retailer is also responsible for the proper location and use of the display case(s) to avoid injury to persons, the display case(s). or to other personal property. Retailer assumes liability for and shall indemnify SAL from all losses, damages. claims. and other actions of any kind, direct or indirect, including legal expenses: imposed on, incurred by, or asserted against SAL, in any way relating to or arising from this Lease or the use or possession of the display case(s). including without limitation. any injury to persons or property.

8. **Termination.** Upon default in the payment of any rent installment, or upon a breach of any other agreement. covenant. obligation. or condition of this Lease to be performed or observed by Retailer. or if during the lease term. bankruptcy or insolvency proceedings are commenced by or against Retailer. or if a receiver is appointed for the business of Retailer. or if Retailer discontinues business at. or moves the display case(s) from the location set forth below. or if Retailer breaches any of the "Terms and Conditions of Sale to Swarovski America Limited Authorized Retailers" previously provided to Retailer. or otherwise established from time to time by SAL for its Authorized Retailers. or if Retailer is not an Authorized Retailer of SAL for any reason. or if SAL. in its sole discretion. ceases to sell to Retailer for any reason. or for no reason. whatsoever. then SAL shall have the right without notice or demand to terminate this Lease. but such termination shall not release Retailer from the payment of damages sustained by SAL. including without limitation. any fees. costs and expenses pursuant to Section 14. In the event of any such termination. any rental previously paid for the unexpired portion of the current lease term. subject to set-off for claims asserted against. or expenses incurred or damages sustained by. SAL will be returned to Retailer.

9. **Assignment.** Retailer shall not assign. sublease. transfer. pledge. or grant a security interest in. this Lease. the display case(s). or any interest therein for any reason. without the prior written approval of SAL.

SWAROVSKI

10. **Notice.** Any notice to either party shall be mailed via "Certified or Registered Mail, Return Receipt Requested." (i.) if to SAL, addressed to: Swarovski America Limited, 2 Slater Road, Cranston, Rhode Island 02920, and (ii.) if to Retailer, addressed as set forth below at the end of this Lease.

11. **Taxes.** Retailer shall pay any and all local property, excise, use or similar taxes or charges imposed, made or levied on or on account of the display cases(s)

12. **Transportation Charges.** Retailer shall be responsible for all shipping fees and storage charges associated with the transportation of the display case(s) to Retailer's premises, and shall pay SAL within Thirty (30) days of receipt of SAL's itemized invoice.

13. **Return of Display Case(s).** The display case(s) are at all times the exclusive personal property of SAL. At the end of the lease term, or upon termination of this Lease, Retailer shall forthwith return the display case(s) at its own risk and expense to SAL at SAL's address set forth above in as good condition as when received, reasonable wear and tear excepted. In the event that Retailer fails to return the display case(s) to SAL pursuant to the provisions of this Section 13, in addition to any other remedies available to SAL for breach of the terms and conditions of this Lease, Retailer shall pay to SAL rental each month equal to one-half the amount of rental otherwise due pursuant to the provisions of Section 2 for each lease term.

14. **Enforcement.** Retailer shall pay all reasonable attorneys' fees and the costs of SAL in connection with the enforcement of this Lease in the event of Retailer's breach, including without limitation, all costs and expenses of repossessing, storing, repairing, insuring, and reletting the display case(s).

15. **Choice of Law.** This Lease is a contract under the laws of the State of Rhode Island and, for all purposes, this Lease and its terms and conditions, shall be construed in accordance with, and governed by and under, the laws of the State of Rhode Island (excluding the laws applicable to conflicts or choice of law).

16. **Exclusive Jurisdiction.** Retailer consents to and confers personal jurisdiction on the state and federal courts located within the State of Rhode Island, and agrees that any action or proceeding for the enforcement of this Lease or any other litigation arising out of this Lease shall be brought only in a state or federal court within this State, and the service of process in any such action or proceeding may be made upon Retailer by mail at the address set forth on the Lease Data Exhibit. Retailer hereby waives (i.) any objection that it may now or hereafter have to this venue or that such action or proceeding is brought in an inconvenient court; and (ii.) its right to a jury trial for any such action or proceeding. Nothing contained herein, however, shall prevent SAL from bringing any such action or proceeding or exercising any rights against Retailer, and against any property of Retailer, in any other state.

17. **Integration.** This Lease expresses the entire understanding of SAL and Retailer with respect to the rental of the display case(s), and neither this Lease, nor any term or condition herein, may be changed, modified, waived, or terminated except by an instrument in writing signed by the party against whom enforcement of any such change, modification, waiver, or termination is sought.

SWAROVSKI

STORE INVENTORY OF EXISTING SWAROVSKI AMERICA LIMITED FIXTURES

Please check all existing fixtures that are currently at this retail location:

- ☐ Silver Crystal new wide tower display with side lighting (pink base)
- ☐ Silver Crystal new wide tower display without side lighting (pink base)
- ☐ Silver Crystal old wide tower display (gray base)
- ☐ Silver Crystal old single tower display (gray base)
- ☐ Selection single tower
- ☐ Selection gallery unit
- ☐ Signature Jewelry single tower
- ☐ Signature Jewelry horizontal unit
- ☐ Crystal Memories old floorstand
- ☐ Crystal Memories new floorstand
- ☐ Crystal Memories single tower
- ☐ SCS gallery unit

Name of Retailer Roselle Ctr. Pharmacy

Account Number 620274

District Manager's Signature [signature]

SWAROVSKI

**IN WITNESS WHEREOF**, SAL and Retailer have executed this Lease on the date set forth below.

**SWAROVSKI AMERICA LIMITED**
(*internal use only*)

By: ______________________
(SAL Corporate Officer Signature only)

Date: ______________________

Roselle Center Pharmacy
Name of Authorized Retailer

By: PAUL Schulman

______________________
Name and title of Signatory (please print)

Address: 570 Raritan Rd.
(physical location-Street)

Roselle, NJ 07203
(City/Town, State, Zip Code)

Phone: (908)245-4600

**Guaranty**

The undersigned hereby absolutely and unconditionally guarantees the prompt payment and performance of this Lease and all the obligations of Retailer thereunder.

Name: PAUL Schulman
(print)

Signature: ______________________

Date: 8/26/99

Required Shipping Date: 10/30/99

Account Number: 620274

# Exhibit D

SWAROVSKI

SWAROVSKI AMERICA LIMITED

# DISPLAY CASE LEASE AGREEMENT

☐ SCS Gallery Unit
☒ Outposting Gallery Unit
☐ Outposting Floorstand
(please check one)

This **LEASE** is made and entered into on the date set forth below between **SWAROVSKI AMERICA LIMITED**, a Rhode Island corporation, ("SAL") and the person, partnership, firm or corporation who has executed this Lease below as an Authorized Retailer ("Retailer").

SAL makes and distributes premier full-lead crystal products which incorporates superior design and excellence in materials and craftsmanship. Retailer is a "Swarovski America Limited Authorized Retailer" of certain of SAL's products, and Retailer wishes to display such products in a manner consistent with the quality, workmanship and designed expressed in the products, as well as the prestigious, premier position they enjoy in the marketplace. SAL is the owner of certain display case(s) which are specially designed for the display of SAL's products. Retailer wishes to lease such display case(s) to present SAL's products prominently and in the most favorable light possible to Retailer's customers.

SAL AND RETAILER, THEREFORE, AGREE AS FOLLOWS:

1. **Term.** Subject to the terms and conditions set forth herein, SAL leases to Retailer 1 display case(s) (the "display case(s)") for the lease term (the "lease term") commencing 11/04, 1999 and, unless earlier terminated pursuant to Section 8 hereof, ending ________________, 19___. The lease term, and this Lease, shall automatically renew from year to year for successive lease terms of one year each, unless either party gives the other party notice of termination at least sixty (60) days prior to the end of any particular lease term.

2. **Rental.** Retailer shall pay to SAL for the use of the display case(s) leased pursuant to this Lease, without further demand and without deduction or set-off, rental each lease term in the amount of $75.00. Rental payments shall be due in full within thirty (30) days of SAL's invoice date.

3. **SAL's Exclusive Property.** This instrument is a lease and not an installment sale contract or bill of sale. The display case(s) are, and shall remain, the sole and exclusive personal property of SAL. Retailer shall have no rights or property interest therein, except for the right to use the display case(s)in the normal operation of Retailer's business during the lease term, in accordance with the restrictions set forth herein, and as such restrictions may be changed from time to time by SAL in its sole discretion. The display case(s) are, and shall at all times be and remain, personal property. Retailer shall keep the display case(s) at all times free and clear of all claims, liens, and encumbrances.

4. **Trademark.** The swan figure trademark set forth hereinbelow is a registered trademark ("the Trademark"):

™

SWAROVSKI

SWAROVSKI AMERICA LIMITED
2 SLATER ROAD · CRANSTON · RHODE ISLAND 02920-4468 · (401) 463-3000 · (800) 556-6478 · FAX (401) 463-8459

SWAROVSKI

of SAL and it affiliates. The right, title and interest in and to the Trademark belongs exclusively to SAL. Retailer will not do any act at any time to impair or contest SAL's right, title, and interest in and to the Trademark, and will not in any manner represent that it has any ownership interest in the Trademark. SAL has placed the Trademark on the display case(s). The display case(s) may be used solely for the display of SAL's fine crystal products, presented in a dignified manner. consistent with SAL's philosophy of total excellence, and the quality, craftsmanship and design expressed in the products, and at the location set forth below. The display case(s) may not be used for the display or storage of any other merchandise or products. Any use or possession of the displays case(s) not expressly authorized by this Lease or any other breach of the terms and conditions of this Lease, including without limitation, retention of the display case(s) after the expiration or sooner termination of the Lease, will constitute infringement of the Trademark and other property rights of SAL, and will cause irreparable harm to SAL, the Trademark and other property rights, which cannot be adequately compensated for in damages by an action at law, and will entitle SAL to an injunction restraining Retailer from such breach. Nothing herein contained shall be construed to prohibit SAL from pursuing any and all other remedies available to it under this Lease and otherwise available under applicable law.

5. **Purpose.** Retailer shall use the display case(s) solely to display SAL's products, and for no other purpose whatsoever. Possession or use of the display case(s) for any other purpose shall constitute infringement of the Trademark and SAL's other property rights.

6. **Insurance.** During the lease term, Retailer, at its own cost and expense, shall obtain and maintain (i.) insurance on each display case in the amount of $600.00 against fire, theft, and other casualty losses, and (ii.) in addition, public liability insurance and with such insurance companies, as shall be satisfactory to SAL. All insurance policies shall name both Retailer and SAL as insureds, and Retailer will furnish SAL copies of such policies or certificates of such insurance coverage from time to time at SAL's request.

7. **Liability.** Retailer shall be responsible for any damage to the display case(s) while in its possession. Retailer is responsible for performing ongoing inspections of the display case(s) to detect any damage or visible defects, such as chips, cracks, or breaks that could cause injury to Retailer's customers or employees, and Retailer must notify SAL immediately of any such damage or defects. Retailer is also responsible for the proper location and use of the display case(s) to avoid injury to persons, the display case(s), or to other personal property, Retailer assumes liability for and shall indemnify SAL from all losses, damages, claims, and other actions of any kind, direct or indirect, including legal expenses, imposed on, incurred by, or asserted against SAL, in any way relating to or arising from this Lease or the use or possession of the display case(s), including without limitation, any injury to persons or property.

8. **Termination.** Upon default in the payment of any rent installment, or upon a breach of any other agreement, covenant, obligation, or condition of this Lease to be performed or observed by Retailer, or if during the lease term, bankruptcy or insolvency proceedings are commenced by or against Retailer, or if a receiver is appointed for the business of Retailer, or if Retailer discontinues business at, or moves the display case(s) from the location set forth below, or if Retailer breaches any of the "Terms and Conditions of Sale to Swarovski America Limited Authorized Retailers" previously provided to Retailer, or otherwise established from time to time by SAL for its Authorized Retailers, or if Retailer is not an Authorized Retailer of SAL for any reason, or if SAL, in its sole discretion, ceases to sell to Retailer for any reason, or for no reason, whatsoever, then SAL shall have the right without notice or demand to terminate this Lease, but such termination shall not release Retailer from the payment of damages sustained by SAL, including without limitation, any fees, costs and expenses pursuant to Section 14. In the event of any such termination, any rental previously paid for the unexpired portion of the current lease term, subject to set-off for claims asserted against, or expenses incurred or damages sustained by, SAL will be returned to Retailer.

9. **Assignment.** Retailer shall not assign, sublease, transfer, pledge, or grant a security interest in, this Lease, the display case(s), or any interest therein for any reason, without the prior written approval of SAL.

SWAROVSKI™

10. **Notice.** Any notice to either party shall be mailed via "Certified or Registered Mail, Return Receipt Requested," (i.) if to SAL, addressed to: Swarovski America Limited, 2 Slater Road, Cranston, Rhode Island 02920, and (ii.) if to Retailer, addressed as set forth below at the end of this Lease.

11. **Taxes.** Retailer shall pay any and all local property, excise, use or similar taxes or charges imposed, made or levied on or on account of the display cases(s)

12. **Transportation Charges.** Retailer shall be responsible for all shipping fees and storage charges associated with the transportation of the display case(s) to Retailer's premises, and shall pay SAL within Thirty (30) days of receipt of SAL's itemized invoice.

13. **Return of Display Case(s).** The display case(s) are at all times the exclusive personal property of SAL. At the end of the lease term, or upon termination of this Lease, Retailer shall forthwith return the display case(s) at its own risk and expense to SAL at SAL's address set forth above in as good condition as when received, reasonable wear and tear excepted. In the event that Retailer fails to return the display case(s) to SAL pursuant to the provisions of this Section 13, in addition to any other remedies available to SAL for breach of the terms and conditions of this Lease, Retailer shall pay to SAL rental each month equal to one-half the amount of rental otherwise due pursuant to the provisions of Section 2 for each lease term.

14. **Enforcement.** Retailer shall pay all reasonable attorneys' fees and the costs of SAL in connection with the enforcement of this Lease in the event of Retailer's breach, including without limitation, all costs and expenses of repossessing, storing, repairing, insuring, and reletting the display case(s).

15. **Choice of Law.** This Lease is a contract under the laws of the State of Rhode Island and, for all purposes, this Lease and its terms and conditions, shall be construed in accordance with, and governed by and under, the laws of the State of Rhode Island (excluding the laws applicable to conflicts or choice of law).

16. **Exclusive Jurisdiction.** Retailer consents to and confers personal jurisdiction on the state and federal courts located within the State of Rhode Island, and agrees that any action or proceeding for the enforcement of this Lease or any other litigation arising out of this Lease shall be brought only in a state or federal court within this State, and the service of process in any such action or proceeding may be made upon Retailer by mail at the address set forth on the Lease Data Exhibit. Retailer hereby waives (i.) any objection that it may now or hereafter have to this venue or that such action or proceeding is brought in an inconvenient court; and (ii.) its right to a jury trial for any such action or proceeding. Nothing contained herein, however, shall prevent SAL from bringing any such action or proceeding or exercising any rights against Retailer, and against any property of Retailer, in any other state.

17. **Integration.** This Lease expresses the entire understanding of SAL and Retailer with respect to the rental of the display case(s), and neither this Lease, nor any term or condition herein, may be changed, modified, waived, or terminated except by an instrument in writing signed by the party against whom enforcement of any such change, modification, waiver, or termination is sought.

SWAROVSKI

**IN WITNESS WHEREOF**, SAL and Retailer have executed this Lease on the date set forth below.

**SWAROVSKI AMERICA LIMITED**

By: [signature] (title)

Date: ____________

Roselle Center Pharmacy
Name of Authorized Retailer

By: PAUL Schulman (co-owner)

[signature]
Name and title of Signatory (please print)

Address: 570 Raritan Rd.
(physical location-Street)

Roselle, NJ 07203
(City/Town, State, Zip Code)

Phone: (908) 245-4600

**Guaranty**

The undersigned hereby absolutely and unconditionally guarantees the prompt payment and performance of this Lease and all the obligations of Retailer thereunder.

Name: PAUL Schulman
(print)

Signature: [signature]

Date: 8/26/99

Required Shipping Date: 10/30/99

Account Number: 620274

SWAROVSKI™

# STORE INVENTORY OF EXISTING SWAROVSKI AMERICA LIMITED FIXTURES

Please check all existing fixtures that are currently at this retail location:

- ☐ Silver Crystal new wide tower display with side lighting (pink base)
- ☐ Silver Crystal new wide tower display without side lighting (pink base)
- ☐ Silver Crystal old wide tower display (gray base)
- ☐ Silver Crystal old single tower display (gray base)
- ☐ Selection single tower
- ☐ Selection gallery unit
- ☐ Signature Jewelry single tower
- ☐ Signature Jewelry horizontal unit
- ☐ Crystal Memories old floorstand
- ☐ Crystal Memories new floorstand
- ☐ Crystal Memories single tower
- ☐ SCS gallery unit

Name of Retailer Roselle Center Pharmacy

Account Number 620274

District Manager's Signature [signature]

# Exhibit E

Roselle Center Pharmacy
620274 D2128
~~7/1/99~~
~~8/1/99 per Monika~~
~~9/1/99 " "~~
620274 ~~10/15/99~~ per Monika
~~10/30/99~~
12/5/99

SWAROVSKI

SWAROVSKI AMERICA LIMITED

DISPLAY CASE LEASE AGREEMENT

(2) ☒ Crystal Memories Tower
☐ Selection Tower
☐ Signature Jewelry Tower
(please check one)

1/2 Freight

This **LEASE** is made and entered into on the date set forth below between **SWAROVSKI AMERICA LIMITED**. a Rhode Island corporation. ("SAL") and the person. partnership. firm or corporation who has executed this Lease below as an Authorized Retailer ("Retailer").

SAL makes and distributes premier full-lead crystal products which incorporates superior design and excellence in materials and craftsmanship. Retailer is a "Swarovski America Limited Authorized Retailer" of certain of SAL's products. and Retailer wishes to display such products in a manner consistent with the quality. workmanship and designed expressed in the products. as well as the prestigious. premier position they enjoy in the marketplace. SAL is the owner of certain display case(s) which are specially designed for the display of SAL's products. Retailer wishes to lease such display case(s) to present SAL's products prominently and in the most favorable light possible to Retailer's customers.

SAL AND RETAILER. THEREFORE. AGREE AS FOLLOWS:

1. **Term.** Subject to the terms and conditions set forth herein. SAL leases to Retailer 2 display case(s) (the "display case(s)") for the lease term (the "lease term") commencing 10/21/, 1999 and. unless earlier terminated pursuant to Section 8 hereof. ending ______________, 19___. The lease term. and this Lease. shall automatically renew from year to year for successive lease terms of one year each. unless either party gives the other party notice of termination at least sixty (60) days prior to the end of any particular lease term.

2. **Rental.** Retailer shall pay to SAL for the use of the display case(s) leased pursuant to this Lease. without further demand and without deduction or set-off. rental each lease term in the amount of $160.00. Rental payments shall be due in full within thirty (30) days of SAL's invoice date.

3. **SAL's Exclusive Property.** This instrument is a lease and not an installment sale contract or bill of sale. The display case(s) are. and shall remain. the sole and exclusive personal property of SAL. Retailer shall have no rights or property interest therein. except for the right to use the display case(s)in the normal operation of Retailer's business during the lease term. in accordance with the restrictions set forth herein. and as such restrictions may be changed from time to time by SAL in its sole discretion. The display case(s) are. and shall at all times be and remain. personal property. Retailer shall keep the display case(s) at all times free and clear of all claims. liens. and encumbrances.

4. **Trademark.** The swan figure trademark set forth hereinbelow is a registered trademark ("the Trademark"):

TM

SWAROVSKI

SWAROVSKI AMERICA LIMITED

SWAROVSKI™

of SAL and it affiliates. The right, title and interest in and to the Trademark belongs exclusively to SAL. Retailer will not do any act at any time to impair or contest SAL's right, title, and interest in and to the Trademark, and will not in any manner represent that it has any ownership interest in the Trademark. SAL has placed the Trademark on the display case(s). The display case(s) may be used solely for the display of SAL's fine crystal products, presented in a dignified manner, consistent with SAL's philosophy of total excellence, and the quality, craftsmanship and design expressed in the products, and at the location set forth below. The display case(s) may not be used for the display or storage of any other merchandise or products. Any use or possession of the displays case(s) not expressly authorized by this Lease or any other breach of the terms and conditions of this Lease, including without limitation, retention of the display case(s) after the expiration or sooner termination of the Lease, will constitute infringement of the Trademark and other property rights of SAL, and will cause irreparable harm to SAL, the Trademark and other property rights, which cannot be adequately compensated for in damages by an action at law, and will entitle SAL to an injunction restraining Retailer from such breach. Nothing herein contained shall be construed to prohibit SAL from pursuing any and all other remedies available to it under this Lease and otherwise available under applicable law.

5. **Purpose.** Retailer shall use the display case(s) solely to display SAL's products, and for no other purpose whatsoever. Possession or use of the display case(s) for any other purpose shall constitute infringement of the Trademark and SAL's other property rights.

6. **Insurance.** During the lease term, Retailer, at its own cost and expense, shall obtain and maintain (i.) insurance on each display case in the amount of $1650.00 against fire, theft, and other casualty losses, and (ii.) in addition, public liability insurance, and with such insurance companies, as shall be satisfactory to SAL. All insurance policies shall name both Retailer and SAL as insureds, and Retailer will furnish SAL copies of such policies or certificates of such insurance coverage from time to time at SAL's request.

7. **Liability.** Retailer shall be responsible for any damage to the display case(s) while in its possession. Retailer is responsible for performing ongoing inspections of the display case(s) to detect any damage or visible defects, such as chips, cracks, or breaks that could cause injury to Retailer's customers or employees, and Retailer must notify SAL immediately of any such damage or defects. Retailer is also responsible for the proper location and use of the display case(s) to avoid injury to persons, the display case(s), or to other personal property. Retailer assumes liability for and shall indemnify SAL from all losses, damages, claims, and other actions of any kind, direct or indirect, including legal expenses, imposed on, incurred by, or asserted against SAL, in any way relating to or arising from this Lease or the use or possession of the display case(s), including without limitation, any injury to persons or property.

8. **Termination.** Upon default in the payment of any rent installment, or upon a breach of any other agreement, covenant, obligation, or condition of this Lease to be performed or observed by Retailer, or if during the lease term, bankruptcy or insolvency proceedings are commenced by or against Retailer, or if a receiver is appointed for the business of Retailer, or if Retailer discontinues business at, or moves the display case(s) from the location set forth below, or if Retailer breaches any of the "Terms and Conditions of Sale to Swarovski America Limited Authorized Retailers" previously provided to Retailer, or otherwise established from time to time by SAL for its Authorized Retailers, or if Retailer is not an Authorized Retailer of SAL for any reason, or if SAL, in its sole discretion, ceases to sell to Retailer for any reason, or for no reason, whatsoever, then SAL shall have the right without notice or demand to terminate this Lease, but such termination shall not release Retailer from the payment of damages sustained by SAL, including without limitation, any fees, costs and expenses pursuant to Section 14. In the event of any such termination, any rental previously paid for the unexpired portion of the current lease term, subject to set-off for claims asserted against, or expenses incurred or damages sustained by, SAL will be returned to Retailer.

9. **Assignment.** Retailer shall not assign, sublease, transfer, pledge, or grant a security interest in, this Lease, the display case(s), or any interest therein for any reason, without the prior written approval of SAL.

SWAROVSKI

10. **Notice.** Any notice to either party shall be mailed via "Certified or Registered Mail. Return Receipt Requested." (i.) if to SAL, addressed to: Swarovski America Limited. 2 Slater Road. Cranston. Rhode Island 02920. and (ii.) if to Retailer, addressed as set forth below at the end of this Lease.

11. **Taxes.** Retailer shall pay any and all local property, excise, use or similar taxes or charges imposed. made or levied on or on account of the display cases(s)

12. **Transportation Charges.** Retailer shall be responsible for all shipping fees and storage charges associated with the transportation of the display case(s) to Retailer's premises, and shall pay SAL within Thirty (30) days of receipt of SAL's itemized invoice.

13. **Return of Display Case(s).** The display case(s) are at all times the exclusive personal property of SAL. At the end of the lease term, or upon termination of this Lease. Retailer shall forthwith return the display case(s) at its own risk and expense to SAL at SAL"s address set forth above in as good condition as when received, reasonable wear and tear excepted. In the event that Retailer fails to return the display case(s) to SAL pursuant to the provisions of this Section 13, in addition to any other remedies available to SAL for breach of the terms and conditions of this Lease, Retailer shall pay to SAL rental each month equal to one-half the amount of rental otherwise due pursuant to the provisions of Section 2 for each lease term.

14. **Enforcement.** Retailer shall pay all reasonable attorneys' fees and the costs of SAL in connection with the enforcement of this Lease in the event of Retailer's breach, including without limitation, all costs and expenses of repossessing, storing, repairing, insuring, and reletting the display case(s).

15. **Choice of Law.** This Lease is a contract under the laws of the State of Rhode Island and. for all purposes, this Lease and its terms and conditions, shall be construed in accordance with. and governed by and under. the laws of the State of Rhode Island (excluding the laws applicable to conflicts or choice of law).

16. **Exclusive Jurisdiction.** Retailer consents to and confers personal jurisdiction on the state and federal courts located within the State of Rhode Island. and agrees that any action or proceeding for the enforcement of this Lease or any other litigation arising out of this Lease shall be brought only in a state or federal court within this State. and the service of process in any such action or proceeding may be made upon Retailer by mail at the address set forth on the Lease Data Exhibit. Retailer hereby waives (i.) any objection that it may now or hereafter have to this venue or that such action or proceeding is brought in an inconvenient court; and (ii.) its right to a jury trial for any such action or proceeding. Nothing contained herein, however, shall prevent SAL from bringing any such action or proceeding or exercising any rights against Retailer, and against any property of Retailer, in any other state.

17. **Integration.** This Lease expresses the entire understanding of SAL and Retailer with respect to the rental of the display case(s), and neither this Lease, nor any term or condition herein. may be changed. modified. waived. or terminated except by an instrument in writing signed by the party against whom enforcement of any such change. modification, waiver, or termination is sought.

SWAROVSKI

**IN WITNESS WHEREOF**, SAL and Retailer have executed this Lease on the date set forth below.

**SWAROVSKI AMERICA LIMITED**
(*internal use only*)

By: [signature]
(SAL Corporate Officier Signature only)

Date: ____________

Roselle Center Pharmacy
Name of Authorized Retailer

By: [signature]

Stuart Schulman (Owner)
Name and title of Signatory (please print)

Address: 570 Raritan Rd.
(physical location-Street)

Roselle NJ 07203
(City/Town, State, Zip Code)

Phone (908) 245-4600

**Guaranty**

The undersigned hereby absolutely and unconditionally guarantees the prompt payment and performance of this Lease and all the obligations of Retailer thereunder.

Name: Stuart Schulman
(print)

Signature: [signature]

Date: 4/6/1999

Required Shipping Date: [illegible] July 1/ Pls call – new architecture design –

Account Number: New

SWAROVSKI™

STORE INVENTORY OF EXISTING SWAROVSKI AMERICA LIMITED FIXTURES

Please check all existing fixtures that are currently at this retail location:

- ☐ Silver Crystal new wide tower display with side lighting (pink base)
- ☐ Silver Crystal new wide tower display without side lighting (pink base)
- ☐ Silver Crystal old wide tower display (gray base)
- ☐ Silver Crystal old single tower display (gray base)
- ☐ Selection single tower
- ☐ Selection gallery unit
- ☐ Signature Jewelry single tower
- ☐ Signature Jewelry horizontal unit
- ☐ Crystal Memories old floorstand
- ☐ Crystal Memories new floorstand
- ☐ Crystal Memories single tower
- ☐ SCS gallery unit

NEW

NEED (2) CRYSTAL MEMORY TOWERS

Name of Retailer Roselle Center Pharmacy

Account Number New

District Manager's Signature [signature]

# Exhibit F

620274
Roselle Center Pharmacy

SWAROVSKI

# DISPLAY LEASE AGREEMENT

~~(5)~~ Silver Crystal Wide Tower
__ Crystal Memories Tower
__ Paradise Tower
__ Swarovski Jewelry Tower
__ Selection Tower
__ SCS Gallery/Outposting Gallery

**(Please enter quantities being ordered)**

**This LEASE** is made and entered into on the date set forth below between **SWAROVSKI CONSUMER GOODS LIMITED**, a Rhode Island corporation, ("SCGL") and the person, partnership, firm or corporation who has executed this Lease below as an Authorized Retailer ("Retailer").

SCGL makes and distributes premier full-lead crystal products which incorporate superior design and excellence in materials and craftsmanship. Retailer is a "Swarovski Authorized Retailer" of certain of SCGL's products, and Retailer wishes to display such products in a manner consistent with the quality, workmanship and design expressed in the products, as well as the prestigious, premier position they enjoy in the marketplace. SCGL is the owner of certain display case(s) which are specially designed for the display of SCGL's products. Retailer agrees that as a condition of its status as a Swarovski Authorized Retailer, all full-lead crystal products of Swarovski must be displayed in these specially designed cases. Retailer therefore wishes to lease such display case(s) to present SCGL's products prominently and in the most favorable light possible to Retailer's customers.

SCGL AND RETAILER, THEREFORE, AGREE AS FOLLOWS:

1. **Term.** Subject to the terms and conditions set forth herein, SCGL leases to Retailer 5 display case(s) numbered DG1391, DS1466, DS1467, DS1505, DW3254, (or see attached list) (the "display case(s)") for the lease term of one year each (the "lease term") commencing Jan 1, 20 00 and, the lease term, and this Lease, shall automatically renew from year to year for successive lease terms of one year each, unless either party gives the other party notice of termination at least sixty (60) days prior to the end of any particular lease term. This lease shall terminate immediately if retailer is terminated as a Swarovski Authorized Retailer.

2. **Rental.** Retailer shall pay to SCGL for the use of the display case(s) leased pursuant to this Lease, without further demand and without deduction or set-off, rental each lease term in the amount of $740. Rental payments shall be due in full within thirty (30) days of SCGL's invoice date.

3. **SCGL's Exclusive Property.** This instrument is a lease. The display case(s) are, and shall remain, the sole and exclusive personal property of SCGL. Retailer shall have no rights or property interest therein, except for the right to use the display case(s) in the normal operation of Retailer's business during the lease term, in accordance with the restrictions set forth herein, and as such restrictions may be changed from time to time by SCGL in its sole discretion. The display case(s) are, and shall at all times be and remain, personal property. Retailer shall keep the display case(s) at all times free and clear of all claims, liens, and encumbrances.

4. **Trademark.** The swan figure trademark set forth hereinbelow is a registered trademark

SWAROVSKI

SWAROVSKI

licensed to SCGL and its affiliates ("Trademark"). The right, title and interest in and to the Trademark belongs exclusively to SCGL and its affiliates. SCGL has placed the Trademark on the display case(s). Retailer will not at any time impair or contest SCGL's right, title, and interest in and to the Trademark or cases, and will not in any manner represent that it has any ownership interest in the Trademark or cases. The display case(s) shall be used solely for the display of SCGL's fine crystal products, presented in a dignified manner, consistent with SCGL's philosophy of total excellence, and the quality, craftsmanship and design expressed in the products, and only at the location set forth below. The display case(s) shall not be used for the display or storage of any other merchandise or products. The parties agree that any use or possession of the displays case(s) not expressly authorized by this Lease or any other breach of the terms and conditions of this Lease, including without limitation, retention of the display case(s) after the expiration or sooner termination of the Lease, will constitute infringement of the Trademark and other property rights of SCGL, and will cause irreparable harm to SCGL, the Trademark and other property rights, which cannot be adequately compensated for in damages by an action at law, and will entitle SCGL to an injunction restraining Retailer from such breach. Nothing herein contained shall be construed to prohibit SCGL from pursuing any and all other remedies available to it under this Lease and otherwise available under applicable law for damages.

5. **Purpose.** Retailer shall use the display case(s) solely to display SCGL's products, and for no other purpose whatsoever. Possession or use of the display case(s) for any other purpose shall constitute infringement of the Trademark and SCGL's other property rights.

6. **Insurance.** During the lease term, Retailer, at its own cost and expense, shall obtain and maintain (i.) insurance on each display case in the amount of $1500.00 against fire, theft, and other casualty losses, and (ii.) in addition, public liability insurance and with such insurance companies, as shall be satisfactory to SCGL. All insurance policies shall name both Retailer and SCGL as insureds, and Retailer will furnish SCGL copies of such policies or certificates of such insurance coverage from time to time at SCGL's request.

7. **Liability.** Retailer shall be responsible for any damage to the display case(s) while in its possession. Retailer is responsible for performing ongoing inspections of the display case(s) to detect any damage or visible defects, such as chips, cracks, or breaks that could cause injury to Retailer's customers or employees, and Retailer must notify SCGL immediately of any such damage or defects. Retailer is also responsible for the proper location and use of the display case(s) to avoid injury to persons, the display case(s), or to other personal property. Retailer assumes liability for and shall indemnify SCGL from all losses, damages, claims, and other actions of any kind, direct or indirect, including legal expenses, imposed on, incurred by, or asserted against SCGL, in any way relating to or arising from this Lease or the use or possession of the display case(s), including without limitation, any injury to persons or property. SCGL shall not be liable for any unauthorized use or alteration of the cases(s).

8. **Maintenance.** Retailer shall be responsible for the maintenance of the cases(s) and shall at its own expense keep said case(s) in good order, repair, and working condition. If repairs are needed, retailer shall notify SCGL and such repair shall be performed by SCGL or at its direction. Retailer shall not repair or replace any major electrical or other components of the case(s) without authorization from SCGL, and SCGL hereby disclaims any liability for such unauthorized use, repair or replacement.

9. **Termination.** Upon default in the payment of any rent installment, or upon a breach of any other agreement, covenant, obligation, or condition of this Lease to be performed or observed by Retailer, or if during the lease term, bankruptcy or insolvency proceedings are commenced by or against Retailer, or if a receiver is appointed for the business of Retailer, or if Retailer discontinues business at, or moves the display case(s) from the location set forth below, or if Retailer breaches any of the "Terms and Conditions of SCGL to Swarovski Consumer Goods Limited Authorized Retailers" previously provided to Retailer, or otherwise established from time to time by SCGL for its Authorized Retailers, or if Retailer ceases to be an Authorized Retailer of SCGL for any reason, or if SCGL, in its sole discretion, ceases to sell to Retailer for any reason, or for no reason, whatsoever, then SCGL shall have the right without notice or demand to terminate this Lease, but such termination shall not release Retailer from the payment of damages sustained by SCGL, including without limitation, any fees, costs and expenses pursuant to Section 14. In the event of any such termination, any rental previously paid for the unexpired portion of the current lease term, subject to set off for claims asserted against, or expenses

SWAROVSKI

10. **Assignment.** Retailer shall not assign, sublease, transfer, pledge, or grant a security interest in, this Lease, the display case(s), or any interest therein for any reason, without the prior written approval of SCGL.

11. **Notice.** Any notice to either party shall be mailed via "Certified or Registered Mail, Return Receipt Requested," (i.) if to SCGL, addressed to: Swarovski Consumer Goods Limited, One Kenney Drive, Cranston, Rhode Island 02920, and (ii.) if to Retailer, to the address set forth at the end of this Lease.

12. **Taxes.** Retailer shall pay any and all local property, excise, use or similar taxes or charges imposed, made or levied on or on account of the display cases(s)

13. **Transportation Charges.** Retailer shall be responsible for all shipping fees and storage charges associated with the transportation of the display case(s) to Retailer's premises, and shall pay SCGL within Thirty (30) days of receipt of SCGL's itemized invoice.

14. **Return of Display Case(s).** The display case(s) shall at all times remain the exclusive personal property of SCGL. At the end of the lease term, or upon termination of this Lease, Retailer shall forthwith return the display case(s) at its own risk and expense to SCGL at SCGL's address set forth above in as good condition as when received, reasonable wear and tear excepted. In the event that Retailer fails to return the display case(s) to SCGL pursuant to the provisions of this Section 14, in addition to any other remedies available to SCGL for breach of the terms and conditions of this Lease, Retailer shall pay to SCGL rental each month equal to the amount of rental otherwise due pursuant to the provisions of Section 2 for each lease term.

15. **Enforcement.** Retailer shall pay all reasonable attorneys' fees and the costs of SCGL in connection with the enforcement of this Lease in the event of Retailer's breach, including without limitation, all costs and expenses of repossessing, storing, repairing, insuring, and reletting the display case(s).

16. **Choice of Law.** This Lease is a contract under the laws of the State of Rhode Island and, for all purposes, this Lease and its terms and conditions, shall be construed in accordance with, and governed by and under, the laws of the State of Rhode Island.

17. **Exclusive Jurisdiction.** Retailer consents to and confers personal jurisdiction on the state and federal courts located within the State of Rhode Island, and agrees that any action or proceeding for the enforcement of this Lease or any other litigation arising out of this Lease shall be brought only in a state or federal court within Rhode Island, and the service of process in any such action or proceeding may be made upon Retailer by mail at the address set forth below. Retailer hereby waives (i.) any objection that it may now or hereafter have to this venue or that such action or proceeding is brought in an inconvenient court; and (ii.) its right to a jury trial for any such action or proceeding. Nothing contained herein, however, shall prevent SCGL from bringing any such action or proceeding or exercising any rights against Retailer, and against any property of Retailer, in any other state.

18. **Integration.** This Lease expresses the entire understanding of SCGL and Retailer with respect to the rental of the display case(s), and neither this Lease, nor any term or condition herein, may be changed, modified, waived, or terminated except by an instrument in writing signed by the party against whom enforcement of any such change, modification, waiver, or termination is sought.

SWAROVSKI

**IN WITNESS WHEREOF**, SCGL and Retailer have executed this Lease on the date set forth below.

**SWAROVSKI CONSUMER GOODS LIMITED**
**(*internal use only*)**

By:________________________
**(SCGL Corporate Officer signature only)**

Date:____________________

ROSELLE
Roselle Gifts & Coll.
Name of Authorized Retailer

By: [signature]
(signature)

Stuart Schulman
Name and title of Signatory (please print)

Address: 570 Raritan Rd.
(physical location-Street)

Roselle, NJ 07203
(City/Town, State, Zip Code)

Phone: (908) 245-4600

**Guaranty**

The undersigned hereby absolutely and unconditionally guarantees the prompt payment and performance of this Lease and all the obligations of Retailer thereunder.

Name: Stuart Schulman
(print)

Signature: [signature]

Date: 6/13/00

Required **Shipping** Date: ________________

Required **Arrival** Date: ________________

Account Number: 620274

District Manager's Signature: Monika Petersen

SWAROVSKI

STORE INVENTORY OF EXISTING SWAROVSKI CONSUMER GOODS LIMITED FIXTURES

Please check all existing fixtures that are currently at this retail location:

1 Silver Crystal wide tower with side lighting (pink base) DLS 3254
__ Silver Crystal wide tower display without side lighting (pink base)
__ Silver Crystal old wide tower display (gray base)
__ Silver Crystal old single tower display (gray base)
__ Selection single tower
2 Swarovski Jewelry single tower DS 1505 DS1467
__ Swarovski Jewelry horizontal unit
__ Crystal Memories floorstand (no lock in storage base, uses one large lightbulb)
__ Crystal Memories floorstand (has lock in storage base, uses one small lightbulb)
1 Crystal Memories single tower DS 1466
__ Paradise single tower
1 SCS/Outposting gallery unit - NO# OG B a\

740.00

150.00 - Pro Ant.

9

**KLAFTER & MASON, L.L.C.**
**Century Office Park**
**300 Craig Road**
**Manalapan, New Jersey 07726**
**(732) 358-2028**
**Attorneys for Plaintiff**
**GLM/4835**

FILED SEP 8 2003 AT 8:30 WILLIAM T. WALSH CLERK

RECEIVED SEP - 8 2003 AT 8:30 M WILLIAM T. WALSH CLERK

KLAFTER & MASON, L.L.C.
*Century Office Park • 300 Craig Road • Manalapan, N.J. 07726*
*(732) 358-2028 • Fax: (732) 358-2029*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PHARMACY SERVICES, INC., t/a ROSELLE CENTER PHARMACY, a/k/a Roselle Center Card, Gift & Collectibles,** **Plaintiff,** **vs.** **SWAROVSKI NORTH AMERICA, LTD., JOHN DOES 1-50 and ABC CORPS. 1-10,** **Defendants.** | **Case No. 03-cv-1707 (WHW)** **Civil Action** |

**CERTIFICATION OF STUART SCHULMAN IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE**

**STUART SCHULMAN**, of full age, being duly sworn according to law, upon his oath, certifies as follows:

1. I am the General Manager of Pharmacy Services, Inc., the plaintiff in the above-captioned matter ("Plaintiff"). I have personal knowledge of the facts set forth herein.

2. This certification is submitted in opposition to defendant's notice of motion to dismiss or, in the alternative, transfer venue. For the reasons set forth

KLAFTER & MASON, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

below, together with the accompanying brief, plaintiff respectfully submits that this Court has jurisdiction over this matter and, therefore, defendant's motion must be denied in its entirety.

**BACKGROUND AND THE BEGINNING OF PLAINTIFF'S BUSINESS RELATIONSHIP WITH DEFENDANT**

3. Plaintiff is a family owned business serving the public for more than thirteen (13) years.

4. Plaintiff's pharmacy has operated since 1989 and, in 1999, Plaintiff expanded and launched its card, gift and collectibles business.

5. Plaintiff carries more than forty (40) fine gift and collectible lines.

6. Having operated primarily as a pharmacy for more than ten (10) years, with a small gift department, Plaintiff recognized the importance of competing with the large pharmacy chains.

7. Plaintiff could not compete as a pharmacy dollar-for-dollar with the large chains and, therefore, decided to expand its gift department and spent nearly $500,000.00 in connection with this expansion.

8. In the absence of any real competition in the area, Plaintiff recognized the larger profit margins and increased customer traffic that an expanded gift department could generate.

9. In an effort to gain market share in what is an increasingly competitive industry, in or about 1999, Plaintiff expanded its gift department to include top of the line product.

KLAFTER & MASON, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

10. Over the last four (4) years, Plaintiff has managed to assemble an impressive line of product, including high-end gifts and collectibles, the quality of which surpasses that of any gift items found in the pharmacy chain stores or, for that matter, any local gift stores.

11. Defendant operates out of Rhode Island and is the North American "arm" for Swarovski International Trading Corp., A.G., D. Swarovski & Co. and Swarovski Aktiengelsellschaft, corporations of Switzerland, Austria and Liechtenstein, respectively.

12. Under the umbrella of the "Swarovski" name, Defendant is part of a corporate conglomerate leading the global market in the manufacturing and sale of crystal jewelry, objects and accessories.

13. In or about 1999, Plaintiff became an authorized Swarovski retailer.

14. Only authorized Swarovski retailers are permitted to market, purchase wholesale and sell Swarovski product.

15. In or about July 1999, Plaintiff and Defendant entered into a certain authorized retailer agreement (the "Agreement") pursuant to which Plaintiff was authorized to market and sell Swarovski product. *A copy of the Agreement is annexed as Exhibit A to the Certification of Michael Whitney ("Whitney Cert.").*

16. At the same time, Plaintiff entered into a Display Lease Agreement (the "Lease") with Swarovski Consumer Goods, Ltd. ("SCG"), pursuant to which SCG supplied Plaintiff with display cases for the purpose of showcasing Defendant's product. *A copy of the Lease is annexed as Exhibit B to the Whitney*

KLAFTER & MASON, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

*Cert.*

17. The Agreement also authorized Plaintiff to use the Swarovski name in the marketing of its business and for the purpose of, among other things, attracting customers and enhancing its market presence.

18. Plaintiff's ability to sell Swarovski product resulted in an increased customer base. Specifically, Plaintiff observed that many Swarovski afficionados regularly collect Swarovski product and, as a result, when Plaintiff became an authorized retailer, these customers became Swarovski purchasers and, consequently, potential regular customers of Plaintiff's gift and collectible business.

19. During 2000, Plaintiff launched its own website, www.giftandcollectibles.com, which advertised much of Plaintiff's full line of product, including Swarovski.

20. Plaintiff's website triggered a dramatic increase in sales from $60,000.00 in 2001, to over $250,000.00 in 2002 **in just Swarovski product**.

21. In October 2002, Plaintiff's representatives attended a Swarovski training session designed to assist Swarovski authorized retailers in the marketing and sale of Swarovski product.

22. At no time prior to or after the October 2002 training session, did Defendant advise Plaintiff that Defendant intended to begin selling direct to consumers.

23. Subsequent to the October 2002 training session, Plaintiff

KLAFTER & MASON, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

noticed a complete breakdown in communications with Defendant's sales division, specifically with the Swarovski representative with whom Plaintiff dealt.

24. Plaintiff typically spoke with its representative at least once a month; yet, November 2002 came and went without hearing from the representative.

25. The representative did not respond to Plaintiff's telephone calls and made no effort to communicate with Plaintiff.

26. Plaintiff did, however, have an opportunity to speak with Jan Wallace ("Wallace"), Defendant's credit representative for Plaintiff. Prior to Plaintiff's receipt of the Termination Letter, as defined below, Wallace revealed to Plaintiff that Wallace's supervisor had suggested to her that Plaintiff's authorized retailer agreement was going to be terminated because Plaintiff was doing too much business and was competing with Defendant.

27. By letter dated January 15, 2003 (the "Termination Letter"), Defendant, without any prior notice, terminated Plaintiff's status as an authorized retailer.

28. The Termination Letter made several factual representations, including:

a. the termination resulted from a review of Defendant's business relationship with Plaintiff;

b. Defendant made the decision to terminate Plaintiff's authorized retailer status only after an extensive review of the business relationship by all levels of sales

management;

c. if Plaintiff had any concerns regarding the termination of the business relationship not addressed in the Termination Letter, Plaintiff could contact Defendant's offices and would receive a written response within ten (10) business days.

*A copy of the Termination is annexed hereto as Exhibit A.*

29. Subsequent to receiving the Termination Letter, Plaintiff asked Defendant to any and all information or material that comprised the "extensive review" of the parties' relationship and which ultimately led to the termination of Plaintiff authorized retailer status. To date, Defendant has failed to respond to Plaintiff's requests.

30. To date, Plaintiff has never received any written response to its concerns and questions. In fact, during one (1) conversation with a representative of Defendant, Plaintiff was told that the "you will receive a written response within 10 business days" language contained in the Termination Letter was simply boilerplate nonsense, and that, to the best of the representative's knowledge, Defendant never responded to any inquiries, either orally or in writing.

31. By terminating Plaintiff as an authorized Swarovski retailer, Defendant eliminated Plaintiff as a competitor.

32. Prior to Plaintiff's receipt of the Termination Letter, Defendant never advised Plaintiff that it either intended to terminate Plaintiff's authorized retailer status or that it was reviewing the parties' business relationship for the

KLAFTER & MASON, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

purpose of determining whether or not to continue Plaintiff's authorized retailer status.

**THE EXECUTION OF THE AUTHORIZED RETAILER AGREEMENT**

33. In April 1999, Defendant's sales representative for Plaintiff's territory visited Plaintiff's business for the purpose of completing what Plaintiff now understands is the Agreement. At that time, Plaintiff considered the document to be nothing more than an application to become an authorized retailer. At the time, Plaintiff was attempting to secure major collectible and gift lines. One of Plaintiff's goals was to fill its store with identifiable brands. Swarovski, because of its name, was a major focus.

34. The sales representative placed various documents in front of Plaintiff's representative and told him to sign the documents on the premise that the documents represented **the application** by which Plaintiff could become a Swarovski retailer. All of the handwritten information and dates set forth on the Agreement are in either the sales representative or her assistant's handwriting. At no time was Plaintiff's representative advised that, if Plaintiff was approved as an authorized retailer, the documents he had just signed would control Plaintiff's contractual relationship with Defendant. Moreover, at no time did defendants' representative advise Plaintiff that, by signing the Agreement, Plaintiff was consenting to jurisdiction in Rhode Island for any litigated dispute that may arise between Plaintiff and defendant.

35. Significantly, Plaintiff was not approved as an authorized

KLAFTER & MASON, L.L.C.
*Century Office Park • 300 Craig Road • Manalapan, N.J. 07726*
*(732) 358-2028 • Fax: (732) 358-2029*

KLAFTER & MASON, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

Swarovski retailer until **approximately six (6) months later**, and the sales representative neither left copies of the documents with Plaintiff, nor ever provided Plaintiff with fully executed copies of the same. That day in April 1999 was the first and last time that Plaintiff ever saw the documents, including but not limited to the Agreement. In fact, on several occasions, most recently after Plaintiff's authorized retailer status was terminated, Plaintiff requested, both verbally and in writing, a copy of the Agreement. Defendant never responded to those requests. The very first time I saw either the Agreement or the Lease, after they were executed in April 1999, was after this litigation was commenced and my attorney requested copies from Defendant's counsel.

36. Interestingly, the forum selection language in the Agreement is buried in a paragraph entitled "General Provisions," yet, in the Lease, paragraph 16 is specifically entitled "Exclusive Jurisdiction."

37. Defendant suggests that the "convenience of the witnesses weighs in favor of a transfer to Rhode Island. Swarovski anticipates calling several individuals who live and work in Rhode Island to support its defenses in the event this case proceeds to trial. *See Defendant's Brief at page 7.*

38. Plaintiff can make the same representations. Plaintiff expects to call many witnesses who live in New Jersey, including but not limited to current and former Swarovski sales representatives.

39. Defendant boldly suggests on the same page of its brief that traveling 200 miles to Providence Rhode Island will not be burdensome to Plaintiff.

KLAFTER & MASON, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, NJ 07726
(732) 358-2028 • Fax: (732) 358-2029

Defendant's conclusion is simply absurd. How can Defendant unilaterally determine what is and is not burdensome for me? Plaintiff is a family owned and operated business. Traveling 200 miles to litigate this case will, undoubtedly, put a significant strain on Plaintiff's ability to manage its business and will, unequivocally, harm the business. It would seem to me, that a worldwide business such as Swarovski, selling close to two billion dollars (USD) in merchandise and employing in excess of 14,000 people worldwide,[1] with virtually unlimited resources, is in a much better position to travel to New Jersey than Plaintiff is to travel to Rhode Island, especially when Plaintiff's principals are vital to the day-to-day operation of Plaintiff's business. Defendant's employees routinely travel the nation, and perhaps the world, to operate their business. They can certainly make the trip from Rhode Island to New Jersey.

40. For all of these reasons, Plaintiff respectfully submits that venue of this matter should remain in New Jersey and that Defendant's motion should be denied, in its entirety.

I certify that the foregoing statements made by me are true to the best of my information, knowledge and belief. I am aware that if any of the foregoing statements made by me are wilfully false, I may be subject to punishment.

Stuart Schulman

Dated: September 5, 2003

---

1/ *See Swarovski 2002 Fact Sheet on www.swarovski.com.*

# EXHIBIT A

January 15, 2003

SWAROVSKI

**VIA CERTIFIED MAIL**
**RETURN SERVICE REQUESTED**

ROSELLE CENTER CARD, GIFT & COLLECT
570 RARITAN RD
ROSELLE, NJ 07203-2446

Account Number: 3001784

Dear Owner/Retailer:

Swarovski North America Limited reviews its business relationship with its retailers periodically. As a result of such an internal review, the business relationship between our two companies is regretfully ended. Your status as an Authorized Retailer is terminated with this letter.

This change of status will not prevent us from shipping any orders you may have placed. We will ship all of your unshipped orders for Swarovski North America Limited merchandise on a cash-in-advance or credit card basis. We will, however, not accept future orders from you, including SCS orders. Should you wish to receive your pending orders, please contact our Credit Department at (800) 289-4900 *6500 to arrange for payment. If such arrangements are not made within ten (10) days of the date of this letter, we will assume you are no longer interested in those unshipped orders and will cancel them.

By this letter, we are also notifying you that your company's lease(s) for Swarovski display case(s)

DW3254 DS1505 DS1467 DS1466 DG1391

are also terminated effective the date of this letter. To provide time for sell-down of existing stock, our Visual Merchandising Department will contact you approximately ninety (90) days from the date of this letter to schedule a date for retrieval of the case(s). After this period, you must cease use of all Swarovski merchandising materials (including but not limited to point of purchase displays, signage, stands, brochures and printed advertising), as well as all use of the "Swarovski" mark, the Swarovski swan logo, any other marks owned by Swarovski (such as "Crystal Memories" and "Silver Crystal"), and permanently refrain from using any marks or names confusingly similar and those owned by Swarovski. If you would like your cases picked up at an earlier date, please contact the Visual Merchandising Department.

Swarovski North America Limited made the decision to terminate your Authorized Retailer status only after an extensive review of your business relationship by all levels of sales management. This decision is conclusive. Should you have concerns regarding the termination of our business relationship that are not addressed in this letter, you may contact our inquiry line here in our Cranston offices by leaving a message at (401) 463-2638. You will receive a written response within 10 business days.

We wish you the best in your enterprise.

Sincerely,

SWAROVSKI NORTH AMERICA LIMITED

Paul W. Morton
Vice President of Sales

PWM/lab

10

KLAFTER & MASON, L.L.C.
Century Office Park
300 Craig Road
Manalapan, New Jersey 07726
(732) 358-2028
Attorneys for Plaintiff
GLM/4835

FILED
SEP 8 2003
AT 8:30
WILLIAM T. WALSH
CLERK

KLAFTER & MASON, L.L.C.
*Century Office Park • 300 Craig Road • Manalapan, N.J. 07726*
*(732) 358-2028 • Fax: (732) 358-2029*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PHARMACY SERVICES, INC., t/a ROSELLE CENTER PHARMACY, a/k/a Roselle Center Card, Gift & Collectibles,** **Plaintiff,** vs. **SWAROVSKI NORTH AMERICA, LTD., JOHN DOES 1-50 and ABC CORPS. 1-10,** **Defendants.** | **Case No. 03-cv-1707 (WHW)** **Civil Action** |

**CERTIFICATION OF SERVICE**

**GARY L. MASON, ESQ.**, of full age, being duly sworn according to law, certifies as follows:

1. I am an attorney at law of the State of New Jersey and duly admitted to practice before this Court. I am a member with the law firm of Klafter & Mason, L.L.C., counsel to plaintiff in the above-captioned matter. I have personal knowledge of the facts set forth herein.

2. On September 5, 2003, I forwarded, via overnight mail,

KLAFTER & MASON, L.L.C.
Century Office Park • 300 Craig Road • Manalapan, N.J. 07726
(732) 358-2028 • Fax: (732) 358-2029

plaintiff's certification and brief in opposition to defendant's notice of motion to dismiss, or alternatively, transfer venue, together with this Certification of Service to:

**William T. Walsh, Clerk**
**United States District Court**
**50 Walnut Street**
**Newark, NJ 07101**

**Stephen F. Payerle, Esq.**
**Carpenter, Bennett & Morrissey**
**Three Gateway Center**
**100 Mulberry Street**
**Newark, NJ 07102-4079**

**Richard C. Levin, Esq.**
**Akin Gump Strauss Hauer & Feld**
**1700 Pacific Avenue - Suite 4100**
**Dallas, Texas 75201**

I certify that the foregoing statements made by me are true to the best of my information, knowledge and belief. I am aware that if any of the foregoing statements made by me are wilfully false, I may be subject to punishment.

Gary L. Mason

Dated: September 5, 2003

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

RECEIVED
WILLIAM T. WALSH, CLERK

2003 SEP 12 P 12: 34

PHARMACY SERVICES

Plaintiff,

v.

SWAROVSKI NORTH AMERICA , LTD.

Defendant.

Civil Action No. 03-1707(WHW)

UNITED STATES DISTRICT COURT

**SCHEDULING ORDER**

FILED

SEP 1 2 2003

AT 8:30 ............
WILLIAM T. WALSH
CLERK

**TO:** **GARY L. MASON, ESQ.**
**STEPHEN F. PAYERLE, ESQ.**

**It is on this 12 day of SEPTEMBER, 2003**

**ORDERED THAT:**

(1) A scheduling conference shall be conducted before the undersigned at **12:00a.m./p.m. on November 05, 2003** in Courtroom 2D, 2nd floor of the Martin Luther King, Jr. Federal Bldg. & U. S. Courthouse, 50 Walnut Street, Newark, New Jersey. See Fed. R. Civ. P. 16 and L. Civ. R. 16.1.

(2) Early disclosure requirements of Fed .R. Civ. P. 26 will be enforced. Thus, the parties shall immediately exchange the information described in Fed. R. Civ. P. 26(a)(1)(A) - (D) without awaiting a discovery request.[1] Such information includes:

(A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or

[1] Certain categories of cases are exempt from early disclosure requirements. See Fed.R.Civ.P 26(a)(1)(F).

defenses, unless solely for impeachment, identifying the subjects of the information.

(B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;

(C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and

(D) for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or indemnify or reimburse for payments made to satisfy the judgment.

(3) At the conference, the Court will establish a discovery schedule. Counsel are hereby advised that discovery will close within 180 days of the conference, and a date for a final pretrial conference, required by Fed. R. Civ. P. 16(d), will be set approximately 30 days from the close of discovery. This schedule contemplates setting a trial date within 9 months of the initial conference. This schedule will not be expanded absent a showing of good cause.

(4) At least 21 days prior to the conference scheduled herein, the parties shall confer pursuant to Fed. R. Civ P. 26 (f). Within 14 days after the parties confer, they shall submit a discovery plan to the undersigned not later than 24 hours prior to the initial conference with the Court. The discovery plan may include a summary of the status of settlement negotiations.

(5) The parties shall disclose the identity of any person who may be used at trial to present evidence under Fed. R. Evid. 702,703 or 705. Reports of expert witnesses will be held to the standards of Fed. R. Civ. P. 26(a)(2)(B) and shall be served in accordance with the schedule to be set by the Court at the initial conference.

(6) Unless the parties stipulate otherwise,

(A) no formal discovery demands may issue pending the conference with the Court; and

(B) the parties are limited to 25 interrogatories and 10 depositions. See Fed. R. Civ. P. 26.

(7) Plaintiff(s) shall notify any party who hereafter enters an appearance of the above conference and forward to that party a copy hereof.

(8) The parties shall advise the Court immediately if this action has been settled or terminated.

(9) Failure to comply with the terms hereof may result in the imposition of sanctions.

(10) The Court does not accept communications by facsimile. All communications to the Court shall be in writing or by telephone conference with prior approval.

**Note: There will be a mandatory settlement conference held before the Hon. William H. Walls. Counsel for the plaintiff is directed to contact Eric Underwood, Deputy Clerk by e-mail:** Eric_Underwood@njd.uscourts.gov. **Please attempt to communicate by e-mail first, then by calling, 973-645-4563 or 973-645-2546. Judge Walls requires the appearance of trial counsel. All conferences will be held in chambers.**

**Please be advised that any adjournment of the settlement conference with Judge Walls in no way effects the Rule 16 conference date with Judge Wigenton.**

**SUSAN D. WIGENTON**
UNITED STATES MAGISTRATE JUDGE

Orig: Clerk
cc: HON. William H. Walls, USDCJ
All Parties
File

12

Stephen F. Payerle (SP9780)
CARPENTER, BENNETT & MORRISSEY
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

Richard C. Levin
Jeffrey Goldfarb
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue
Suite 4100
Dallas, Texas 75201
(214) 969-2800

Attorneys for Defendant
Swarovski North America, Ltd.

RECEIVED
SEP 15 2003
AT 8:30 4:30 P.M.
WILLIAM T. WALSH
CLERK

FILED
SEP 15 2003
AT 8:30 M
WILLIAM T. WALSH
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHARMACY SERVICES, et al,<br><br>Plaintiffs,<br><br>vs.<br><br>SWAROVSKI NORTH AMERICA, LTD.,<br><br>Defendant. | CIVIL ACTION NO. 03-CV-1707 (WHW)<br><br>**CERTIFICATE OF SERVICE** |

I certify that a true and correct copy of Defendant's Reply Brief in Support of Motion to Dismiss or, in the Alternative, to Transfer Venue being filed today is being served by mail on:

Gary L. Mason
Klafter, Mason, Record & Socher, LLC
Century Office Park
300 Craig Road
Manalapan, NJ 07726

this date, by United States mail, first class postage prepaid.

I certify under penalty of perjury that the foregoing is true and correct.

Stephen F. Payerle

Dated: September 15, 2003

13

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Minutes of Proceedings

Office: Newark

Judge : Walls

Court Reporter: None
Other (s) :

Proceeding Date: 10/20/03

Returnable Date: 09/08/03

Motion Filed : 07/16/03

Title of Case:

Docket # 2-03-cv-01707
Arbitration--Yes_X_ No__

PHARMACY SERVICES, Et al v. SWAROVSKI NORTH, Et al

Appearances:

(pla) PHARMACY SERVICES,
-atty(s) GARY L. MASON
of KLAFTER, MASON, RECORD & SOCHER, LLC

(dft) SWAROVSKI NORTH
-atty(s) STEPHEN F. PAYERLE
of CARPENTER, BENNETT & MORRISSEY

Nature of Proceedings: At Call for

Notice of MOTION |to dismiss complaint| or in the alternative |to transfer case to the USDC for District of Rhode Island| by SWAROVSKI NORTH, |Motion set for 9/8/03 on [7-1] motion, set for 9/8/03 on [7-2] motion| w/cert of service (Brief/PO Subm)

Adjourned To: 9/22 10/20/03 Time Commenced: ________ Time Adjourned: ________

Deputy Clerk

Disposition: COURT INDICATED MOTION TO BE DECIDED PUR. TO R.78

FILED

OCT 2 0 2003

AT 8:30
WI... WALSH

K79

14

RECEIVED
WILLIAM T. WALSH, CLERK

2003 NOV 18 P 12:45

UNITED STATES
DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

PHARMACY SERVICES, ET AL.,

Plaintiffs,

v.

SWAROVSKI NORTH AMERICA, LTD.,

Defendant.

Civil Action No. 03-1707(WHW)

**SCHEDULING ORDER**

November 17, 2003

The parties shall appear for a scheduling conference on March 4, 2004 at 11:00 a.m.

**SUSAN D. WIGENTON**
UNITED STATES MAGISTRATE JUDGE

Original: Clerk of the Court
cc: District Judge
File
Parties

FILED
NOV 18 2003
AT 8:30 ..........
WILLIAM T. WALSH
CLERK

ENTERED
ON
THE DOCKET
NOV 18 2003
WILLIAM T. WALSH, CLERK
By______________
(Deputy Clerk)

SCANNED

CLOSED

# UNITED STATES DISTRICT COURT

District of New Jersey

Chambers of
**William H. Walls**
District Judge

(973) 645-2564
(973) 645-3436 Fax

Martin Luther King Jr.
Federal Courthouse
50 Walnut Street
Newark, New Jersey 07102

NOT FOR PUBLICATION

LETTER ORDER

ORIGINAL ON FILE WITH CLERK OF COURT

March 1, 2004

**Appearances:**

Gary L. Mason
Klafter, Mason, Record & Socher, LLC
Century Office Park
300 Craig Road
Manalapan, NJ 07726

FILED

MAR 1 - 20[illegible]

AT 8:30 ..........
WILLIAM T. WALSH
CLERK

Stephen F. Payerle
Carpenter, Bennett & Morrissey
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102-4082

Re: Pharmacy Services, Inc. v. Swarovski North America, Ltd.; No. 03-1707 (WHW)
Motion to Dismiss or Transfer Venue

Dear Litigants:

Defendant Swarovski North America, Ltd.("Swarovski") brings this Motion to Dismiss or, in the Alternative, to Transfer Venue. The Motion to Transfer Venue is granted, and the action is transferred to the United States District Court for the District of Rhode Island.

## FACTS AND PROCEDURAL BACKGROUND

Swarovski manufactures and sells fine crystal products, including gifts, collectibles, and jewelry. In 1999, Plaintiff Pharmacy Services, Inc., t/a Roselle Center Pharmacy ("Pharmacy Services") became an authorized retailer of Swarovski products pursuant to the Terms and Conditions of Sale and the Standards for Authorized Swarovski America Limited Retailers ("Terms" and "Standards," collectively the "Agreement"). The Terms included a mandatory forum selection clause in which Pharmacy Services agreed that any litigation arising from or relating to the Terms and transactions between the parties would "be brought only in a state or federal court within the State of Rhode Island." In addition to the Agreement, the parties entered into several other contracts (the "Leases") in which Plaintiff leased special display cases to showcase Swarovski products. The Leases also contained mandatory forum selection clauses designating Rhode Island as the forum.

Plaintiff's representative signed the Agreement in April 1999. Plaintiff claims that at the time it was signed, Plaintiff understood the Agreement to be part of the application process for becoming an authorized Swarovski retailer that would have no bearing on the parties' ultimate contractual relationship. Plaintiff notes in support of its argument that Plaintiff was not approved as an authorized dealer until six months after the Agreement was signed and that Defendant's representative never provided Plaintiff with copies of the documents. The Terms do provide, however, that they are "the final, complete and exclusive expression of the agreement between [the parties]." The Terms also give either party the right to terminate Pharmacy Services' status as an authorized Swarovski retailer at any time. This litigation arises from Swarovski's termination of that status.

## LEGAL STANDARDS

### Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). See also 5A Wright & Miller, Federal Practice & Procedure § 1357 at 299 (2d ed. 1990).

"A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). "Plaintiffs cannot

prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." Id.

**28 U.S.C. § 1404(a) Motion to Transfer Venue**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The burden of establishing the need for transfer . . . rests with the movant." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

**DISCUSSION**

Defendant brings a Motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to transfer venue to the District of Rhode Island pursuant to 28 U.S.C. § 1404(a). Plaintiff argues that the Motion should be denied because the forum selection clause in the Agreement was invalid. Plaintiff claims that the Agreement was an adhesion contract, that Plaintiff did not understand it to be a final contract, that the forum selection clause was not sufficiently prominent to provide Plaintiff reasonable notice, and that Defendant never provided Plaintiff a copy of the Agreement. Plaintiff's arguments are unavailing.

The Agreement was not an adhesion contract. An adhesion contract is one that is "presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity of the 'adhering' party to negotiate except perhaps on a few particulars." Martindale v. Sandvik, Inc., 173 N.J. 76, 89 (2002) (citation omitted). A contract can be adhesionary "only if there is an unequal amount of bargaining power . . . and only if the thing acquired is something of

necessity." J.H. Renarde, Inc. v. Sims, 312 N.J. Super. 195, 203 (N.J. Super. Ct. Ch. Div. 1998) (citing, inter alia, Rudbart v. North Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992)). There is no evidence that the parties had unequal bargaining power, as both parties were sophisticated businesses. Moreover, the Agreement was not for something of necessity. Pharmacy Services could simply have walked away from the deal.

That Plaintiff may have understood the Agreement to be an "application" rather than a final contract is irrelevant. "A party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect." Rudbart v. North Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992). See F. D. McKendall Lumber Co. v. Kalian, 425 A.2d 515, 518 (R.I. 1981). Plaintiff has not shown fraud on the part of Defendant aside from an allusion to Defendant's alleged representations that the document was only an "application." Such statements alone would not be sufficient to constitute fraud, especially in light of the integration clause in the Agreement which put Plaintiff on notice that the Terms were "the final, complete and exclusive expression of the agreement between [the parties]." Plaintiff's argument is further undercut by the fact that Plaintiff referred to the Agreement as an "authorized retailer agreement" in its own Complaint. (Compl. para. 21.) Plaintiff cannot now be heard to complain that there was no such agreement.

Plaintiff's argument that the forum selection clause was not sufficiently prominent is similarly unavailing. The clause is written in the same type as the rest of the Terms. The Terms are only two pages long and the Standards an additional five. Any reasonable inspection of the Agreement would have discovered the forum selection clause, and other courts have enforced clauses less conspicuous than the one at issue. See, e.g., Shore Slurry Seal, Inc. v. CMI Corp.,

964 F. Supp. 152, 156 (D.N.J. 1997) (enforcing clause written in fine print on the back of each page of the contract).

Finally, it is of no moment that Defendant may never have provided Plaintiff a copy of the Agreement. Plaintiff is still bound by its representative's signature on the Agreement and is presumed to have assented to its terms. Rudbart, 127 N.J. 344 at 353; F. D. McKendall Lumber Co., 425 A.2d at 518 . Plaintiff cites no law to the contrary.

The forum selection clause is valid. The question then becomes one of the proper form of relief. Defendant requests either dismissal or transfer. "[A]s a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss." Salovaara v. Jackson Nat. Life Ins. Co., 246 F.3d 289, 299 (3d Cir. 2001). The propriety of transfer on the basis of a valid forum selection clause is governed by 28 U.S.C. § 1404(a).[1] Id. at 297-98.

This action might have been brought in the District of Rhode Island, as jurisdiction is based on diversity of citizenship and Defendant has its principal place of business in Rhode Island. The Court must determine whether transfer to the District of Rhode Island would be in the "interest of justice." 28 U.S.C. § 1404(a). To do so,

> the Court must consider both the private and public interests affected by the transfer. The private interest factors to be considered in determining whether to transfer venue include: (1) the convenience and preference of the parties, including the plaintiff's choice of forum; (2) the convenience of witnesses; and (3) access to books and records. In addition, the public interest factors that the Court should consider include: (1) practical considerations that would make the trial easy, expeditious, or inexpensive; (2) court congestion in each forum; (3) the

[1]"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

> location where the events at issue took place and the interest of the respective courts in deciding local controversies; (4) enforceability of any judgment; and (5) the judge's familiarity with the applicable law. However, the appellate court in Jumara noted "there is no definitive formula or list of the factors to consider."

Clark v. Burger King Corp., 255 F. Supp. 2d 334, 337-38 (D.N.J. 2003) (emphasis added) (citations omitted) (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)).

"Within this framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." Jumara, 55 F.3d at 880. "Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." Id. "Where the forum selection clause is valid . . . the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." Id.

The convenience of the witnesses is not a significant factor, as this distance from this Court to the potential transferee court is only about 200 miles. Moreover, only Defendant identifies specific witnesses that may be affected. The location of documents is also not significant. Each side has relevant documents, and there is no evidence that an unusually large number of documents will be involved. Court congestion weighs in favor of transfer, as the District of New Jersey has 385 pending cases per judgeship while the District of Rhode Island has 269 pending cases per judgeship. (Def.'s Br. at 7.) That Plaintiff is a New Jersey business does not in itself make this controversy one of heightened interest to this Court. Enforceability of any judgment does not appear to pose an issue. Finally, the Terms and Leases contain choice of law provisions designating Rhode Island law. Should those provisions be held valid, the Rhode Island court would be able to apply its greater familiarity with Rhode Island law.

Plaintiff has not met its burden of demonstrating why it should not be bound by its contractual choice of forum. None of the other factors indicates that New Jersey would be the preferable venue. The most powerful indicator–the forum selection clause–points to Rhode Island. The action is transferred to the United States District Court for the District of Rhode Island.

**CONCLUSION**

It is on this 1st day of March, 2004,

ORDERED that Defendant's Motion to Transfer Venue is GRANTED; and

ORDERED that this action is hereby TRANSFERRED to the United States District Court for the District of Rhode Island.

**s/William H. Walls**
United States District Judge