# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PHARMACY SERVICES, INC.,<br>Plaintiff<br><br>v.<br><br>SWAROVSKI NORTH AMERICA, LTD.,<br>Defendant | C.A. No. 04-72T |

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Now comes Defendant Swarovski North America Limited ("Swarovski") and, pursuant to Fed. R. Civ. P. 56(c) and Local Rule 12.1(a)(1), files its Statement of Undisputed Material Facts as to which there is no genuine issue necessary to be litigated.

### The Parties

1. Swarovski is a Rhode Island corporation with a principal place of business in Cranston, Rhode Island. Swarovski distributes certain products, *inter alia*, through a network of authorized independent retailers.

2. Pharmacy Services, Inc. is a New Jersey corporation also known as Roselle Pharmacy or Roselle Center Card, Gift and Collectibles ("Roselle"). See Plaintiff's Complaint; Deposition of Stuart Schulman ("Schulman Depo.") at page 8, lines 9 – 15 ("8:9-15").[1] Roselle carried more than forty (40) fine gift and collectible lines. Complaint at ¶ 8.

### Roselle Becomes an At-Will Authorized Retailer in 1999

3. In April of 1999, Roselle was presented with the "Swarovski Terms and Conditions of Sale" and "Swarovski Standards for Authorized Retailers." Schulman Depo. at

[1] Roselle sold its business in January of 2005.

31:23-32:11. These documents make up the contract between the parties, the latter being executed by Roselle and expressly incorporating by reference the former. See id.; Affidavit of Douglas Brown, attached hereto as Appendix 1.

4. The Swarovski Terms and Conditions of Sale states, *inter alia*, that "either Buyer or Seller may terminate the Retailer status, in keeping with which, Seller may refuse to sell Buyer at any time without notice for any or no reason." See Exhibit A to Affidavit of Douglas Brown.

5. The Swarovski Standards for Authorized Swarovski America Retailers states, *inter alia*, "General Standards and Policies: Termination of Authorized Status: Nothing in the Authorized Retailer's Standards, or in SAL's approval or disapproval of a retailer as an Authorized Retailer, creates a contract or any binding legal obligation on SAL or any Authorized Retailer. SAL reserves its right to terminate the Authorized Retailer and to sell to or refuse to sell to, any Authorized Retailer, at any time without notice for any reason." See Exhibit B to Affidavit of Douglas Brown.

6. There was no discussion by the parties about the termination provisions contained in the above-referenced documents at this or any other time. Schulman Depo. at 27:8-17; 29-31; 55:17-20.

7. In April of 1999 Roselle had commenced a planned expansion of its pharmacy store. The expansion was completed in October of 1999, at which time Swarovski representatives visited the store and gave final approval for Roselle to be accepted as an authorized retailer. Schulman Depo. at 34-35. There were also no conversations at this time concerning any of the provisions, including without limitation the termination provisions, contained in the above-referenced documents. Id. at 39:1-4.

**Swarovski's Closes Various Retailers**

8. Paul Morton was a Swarovski employee from 1994 until 2003, and from 1998 until 2003 was the Vice President of Sales. Morton Depo. at 12:2-10.

9. Swarovski is constantly reviewing its authorized retailer base. This evaluation process had various titles, including Distribution Improvement Program in the early 1990's, Strategic Distribution Improvement Program sometime thereafter and more recently evolving into something known by some employees as Mission 3000. Morton Depo. at 34:10-17; 36:6-27:1; Affidavit of Douglas Brown at ¶¶ 2-3.

10. These programs were fundamentally the same, and focused on improving Swarovski's retail distribution network Morton Depo. at 36; 88:1-14.

11. These programs do not have start or end dates, rather they are part of the ongoing process to improve the Swarovski distribution network. Affidavit of Douglas Brown at ¶ 3.

12. During the period from 2000 to 2002, Swarovski closed a large volume of independent retailers, for instance closing all stores with sales of less than $5,000, $10,000 or $15,000, or that sold single lines of products. This was done at various times and was a very fluid process. Affidavit of Douglas Brown at ¶ 4.

13. During this process, Swarovski undertook various efforts to "rate" their distribution network, and different door rating systems were developed. <u>See</u> Morton Depo. at 38-39 (discussing the rating systems being less than ideal), 91:6-11 (discussing the system tested in New Jersey), and 79:19-81:11 (discussing a different system used in Florida); <u>see</u> <u>also</u> Deposition of Paul Bono ("Bono Depo.") at 18:11-20:1.

14. Swarovski opened its first proprietary retail store in the Fall of 1997. Opening such stores has been a long-term strategy of the company and was under discussion at least early as 1994. Morton Depo. at 47:5-22. As of the end of 2002, there were less than 45 such stores. Affidavit of Douglas Brown at ¶ 5.

**The Decision to Close Roselle**

15. Danielle Bednarski was the Swarovski Account Representative assigned to the Roselle account during all times pertinent to Swarovski's decision to close the account. During this same time, Cheryl McFarland was Ms. Bednarski's immediate supervisor and the Regional Manager responsible for the Roselle account. Affidavit of Cheryl McFarland, attached hereto as Appendix 2, at ¶ 2.

16. During all pertinent times, Michael Whitney was Swarovski's National Sales Manager and Paul Morton was the Swarovski Vice President of Sales. Messrs. Whitney and Morton were responsible for the ultimate decision to close particular accounts. Morton Depo. at 54:10-14.

17. In August of 2002, Ms. McFarland and Ms. Bednarski visited the Roselle store. There was no special agenda for this visit, rather it was just a regular visit that an Account Representative would make with a Regional Manager on occasion. Danielle Bednarski Deposition ("Bednarski Depo.") at 64:20-65:2; see Affidavit of Cheryl McFarland at ¶ 3.

18. After their visit, Ms. McFarland and Ms. Bednarski discussed the fact that Roselle did not enhance the Swarovski brand due to its appearance, location (in a strip mall next to a grocery store) and other factors such as Roselle selling magazines, lottery tickets, greeting cards and lower-end products. Ms. McFarland and Ms. Bednarski agreed that Roselle did not meet Swarovski's then-current criteria for opening a new retailer and that Roselle would not

have been a store that Swarovski would open at that time. Bednarski Depo. at 65:14-66:1; 81:1-16; 82:17-83:1; Affidavit of Cheryl McFarland at ¶ 3.

19. Ms. McFarland contacted Ms. Bednarski on a number of occasions in the Fall of 2002 suggesting that Roselle be closed. Affidavit of Cheryl McFarland at ¶ 4. Ms. Bednarski avoided the first few conversations because Roselle was doing a good volume and closing the account was against her personal financial interest as a commissioned salesperson. Bednarski Dep. at 70:6-20.

20. On November 26, 2002, Mr. Whitney was searching the internet as he did on occasion to determine if third parties were using the Swarovski domain name. In doing so, he came upon the Roselle website. Mr. Whitney was not comfortable with the website for various reasons, including the non-premium brands on the website and pricing strategies. Deposition of Michael Whitney ("Whitney Depo.") at 9:19-11:22. Mr. Whitney then called Ms. McFarland to ask about the account. Id. Mr. Whitney had instructed Regional Managers to look into particular accounts for the purposes of determining whether or not the account should be closed a few dozen times. Id. at 9:8-15. Mr. Whitney asked Ms. McFarland what she knew about the Roselle account. Ms. McFarland responded that she had been in the account, that it was a pharmacy, and that she had recommended that Ms. Bednarski close the account months ago. Id. at 10:2-12, 11:17-22; see also Affidavit of Cheryl McFarland at ¶¶ 5-6.

21. Mr. Whitney agreed that the account should be closed, and Ms. McFarland said she would follow-up with Ms. Bednarski to have the account closed. Affidavit of Cheryl McFarland at ¶¶ 5-6; Whitney Depo. at 11:17-22.

22. Ms. McFarland contacted Ms. Bednarski on November 26 to tell her that the Roselle account was being closed and instructed Ms. Bednarski to draft an email to Ms.

McFarland explaining the reasons for Roselle's closure. Ms. McFarland received the email that day, inserted her additional thoughts and promptly forwarded it to Mr. Whitney. Affidavit of Cheryl McFarland at ¶¶ 5-6.

23. Mr. Whitney and Mr. Morton formally decided to close the account within the next week. During the next six (6) weeks, the Swarovski credit department contacted Roselle, ensured that all invoices were being paid, and on January 14, 2003 authorized the sales department to send the official termination notice to Roselle. Affidavit of Cheryl McFarland at ¶¶ 7-8; Affidavit of Douglas Brown at ¶ 7.

24. Roselle was notified that they were being terminated as an Authorized Retailer by letter dated January 15, 2003. Id.; see Morton Depo. at 95:17-96:15.

25. Roselle did not have any further conversations with Swarovski regarding the closing. Roselle was never given the reasons for its termination. See Morton Depo. at 95-98; Whitney Depo. at 19:4-12; Affidavit of Cheryl McFarland at ¶ 7.

SWAROVSKI NORTH AMERICA LIMITED

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

Steven E. Snow (# 1774)
Michael A. Gamboli (# 4684)
Robert K. Taylor (# 6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July, 2005, I sent a copy of the within Defendant's Statement of Undisputed Material Facts to the following:

Via Federal Express

Gary L. Mason, Esq.
Klafter & Mason
Manalapan Corporate Plaza
195 Route 95 South, Suite 204
Manalapan, NJ 07726

Via First Class Mail

Carol A. Zangari, Esq.
42 Weybosset Street
Suite 402
Providence, RI 02903

Carol C. Levasseur

808819_1/3322-31

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

PHARMACY SERVICES, INC.,
Plaintiff

v.

SWAROVSKI NORTH AMERICA, LTD.,
Defendant

C.A. No. 04-72T

## AFFIDAVIT OF DOUGLAS BROWN

I, Douglas Brown, under oath do depose and state as follows:

1. I am an Executive Vice President at Swarovski North America Limited ("Swarovski") and have held this position at all pertinent times.

2. Swarovski has always had a program in place to review its authorized independent retailer network. This program has been known by various names, including the Distribution Improvement Program, the Strategic Distribution Improvement Program and Mission 3000.

3. The programs did not have start or end dates, rather they are part of the ongoing process to improve the Swarovski distribution network. They are also not known by any of the above names universally. For example, a majority of company employees would not know what the term Mission 3000 means.

4. During the first part of 2000, Swarovski started closing retailers with less than $5,000 of annual sales. Evaluation of the effect of closing on business was ongoing and over time retailers with different levels or types of business (at one point less than $10,000 and another less than $15,000, at another point related to different lines of product) were closed, although there was always exceptions to the general rule. During 2000 and 2001 there were also

"door ratings" done of stores to close retailers based on these evaluations. Swarovski closed many stores in Florida based on door ratings. Additional "appearance" related closings (like Roselle) were done only on a case-by-case basis. Closings were done at various times for various reasons and the entire process was very fluid.

5. Swarovski opened its first proprietary Swarovski retail store in 1997. As of the end of 2002, there were less than 45 such stores.

6. Attached at the following exhibit tabs are true and correct copies of the following documents, each of which is maintained in the ordinary course of business by Swarovski:

A. Swarovski Terms and Conditions of Sale.

B. Swarovski Standards for Authorized Swarovski American Limited Retailers (signed by Roselle).

7. The decision to close Roselle was made on or about November 26, 2002. Once the decision to close an account is made, notification is sent to the credit department. The credit department reviews the account and contacts the customer or otherwise attempts to ensure that all outstanding invoices have been paid in full. Credit authorized the closure on or about January 14 and the letter notifying Roselle that they were being closed was sent out on January 15, 2003.

Douglas Brown

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Cranston, signed before me on the 13 day of July, 2005.

Notary Public
My Commission Expires: 11.13.05

808978_1/3322-31

SWAROVSKI

## Terms and Conditions of Sale

SWAROVSKI CONSUMER GOODS LIMITED ("Seller") and Buyer agree that the following Terms and Conditions of Sale ("Terms") apply to all sales between Seller and Buyer. Buyer's submission of an order constitutes its agreement to be bound by these Terms.

### CUSTOMER AUTHORIZATION CATEGORIES

RETAILERS. Seller sells its products for resale only to authorized Retailer's at authorized locations, who are required to meet the Standards for Authorized SWAROVSKI CONSUMER GOODS LIMITED Retailer's ("Standards"). Authorized Retailer's may request annually to participate as an Authorized SWAROVSKI Collectors Society Retailer ® by completing a Request to Participate form. Continuing compliance with Standards is necessary to sustain Authorized SWAROVSKI Collectors Society Retailer status. Either Buyer or Seller may terminate the Retailer status, in keeping with which, Seller may refuse to sell Buyer at any time without notice for any or no reason. Termination of a SWAROVSKI Collectors Society Authorization will occur immediately upon termination of your status as a SWAROVSKI Authorized Retailer.

CORPORATE/PREMIUM INCENTIVE ACCOUNTS/CUSTOMERS. Seller sells its products to "Corporate" accounts for purposes of gifts and incentives.

---

PURCHASE ORDERS; PRICE. Offers to purchase must be submitted on Seller's Order Forms, Customer endorsed Purchase Order Forms or via EDI transmission and must be accepted by a SWAROVSKI Representative at its Cranston, Rhode Island Office, or by shipment of ordered goods, whichever is earlier. If Customer's Purchase Order is in non-compliance with SWAROVSKI'S Terms of Sale, SWAROVSKI'S Terms will govern and the customer's purchase order may be suspended from being processed pending correction. A SWAROVSKI Representative will contact the Customer to expedite clarification and compliance to SWAROVSKI'S Terms. Buyer shall pay the prices in effect on the date of acceptance of order. Reorders must exceed $100.00.

CANCELLATION. Buyer may cancel an order, once accepted, only upon Seller's written approval, which will not be unreasonably withheld. If Buyer defaults on any part of any order, fails to pay any invoice according to these Terms, Seller may, at its option, cancel any other order previously accepted, or any undelivered portion thereof, without further obligation to Buyer and without prejudice to Seller's other rights or remedies.

PAYMENT TERMS; CREDIT. Seller may elect, in its sole discretion, to sell on open account, C.O.D., Credit Card, Bank Wire Transfer or C.I.A. Sales on open account are Net 30 Day terms from date of invoice. No discount may be taken unless specified on Seller's invoice. Acceptance by Seller of less than full payment shall not waive any of Seller's rights. Past due accounts are subject to a service charge of 1.5% per month (18% per annum) on the balance due, or the maximum amount allowed per applicable law, whichever is less. Applications for Credit must be made on SWAROVSKI CONSUMER GOODS LIMITED Credit/Sales Application form. By submitting a Credit/Sales Application form, Buyer represents that: the information provided therein is true and accurate, Seller may rely on such information and all Credit purchases are for business purposes only. Refer to the SWAROVSKI Credit/Sales Application as a supplement to these Terms.

FREIGHT TERMS/SHIPMENT. All goods are shipped F.O.B. Seller's plant, Cranston, Rhode Island at Buyer's risk and risk of loss shall pass to Buyer upon delivery to carrier. Each shipment shall be a separate and independent transaction and may be individually invoiced. Seller is not liable for failure to meet any projected or promised delivery date. If shipment is delayed due to Buyer's action or inaction, Seller may store the good's at Buyer's risk and expense or, at Seller's discretion, return product back to inventory for re-sale. In the event SWAROVSKI stores order, full payment will be due according to these Terms. SWAROVSKI reserves the right of carrier selection. For your protection, please examine our shipment upon arrival to ascertain good condition. If any shortages of cartons or damages to cartons are found, write a full description on the carriers delivery receipt and have the driver acknowledge it; have the carrier make a written inspection of the loss or damage and file a claim with the carrier within 9 months. No deductions for loss or damage are allowed.

(continued)



SWAROVSKI CONSUMER GOODS LIMITED
ONE KENNEY DRIVE · CRANSTON · RHODE ISLAND · 02920-4400 · (401) 463-6400 · (800) 289-4900 · FAX (401) 463-5257

SHORTAGES AND RETUR... No claims for variances from or shortages of product within cartons/packages will be considered unless presented in writing within 30 days after receipt of goods. Reminder: Claims for freight damage MUST be made directly with the Carrier. Merchandise may not be returned for credit unless the Seller has issued a Return Authorization for same merchandise, which will be accompanied by shipping instructions. Such goods must be returned at Buyer's risk in the same condition as when they were shipped by Seller. Transportation and insurance charges must be prepaid by Buyer. Returns are authorized in Seller's sole discretion, may be subject to a return handling charge of 15%. GOODS WHICH ARE DATED OR MADE TO SPECIAL ORDER ARE NOT RETURNABLE.

DISCLAIMER OF DELAY LIABILITIES. Seller is not liable for any claim, loss or damage arising from any delay in Seller's performance caused by force majeure, acts of God, floods, fires, strikes, labor disputes or shortages, accidents, embargoes, car shortages, delays of carriers, acts of governmental or military authorities, judicial action, sabotage, energy shortages, inability to obtain raw materials, supplies or equipment, Seller's suppliers' delays or from any cause which is unforeseen, unavoidable or beyond Seller's reasonable control including any, but not limited to, year 2000 computer problems/issues.

DISCLAIMER OF WARRANTIES AND LIABILITIES. Seller warrants that the goods sold will be free from any defects in material and workmanship under normal use and service. The warranty period for latent defects is six (6) months from the date of invoice. Seller may make warranties to the consumer which do not inure to Buyer's benefit. Seller is not liable for minor deviations in the size or weight of the goods. Buyer's sole and exclusive remedy against Seller for any claim, including without limitation breach of warranty or delivery of defective goods, shall be at Seller's option, credit for the purchase price or repair or replacement, at Seller's plant, of any goods returned at Buyer's risk, transportation and insurance prepaid, which, prove to Seller's satisfaction to be defective within the applicable warranty period. Seller's obligation to credit, repair or replace shall not apply to any goods which have been subject to abuse, modification, attempted repair, negligence, misuse or accident. THIS AGREEMENT TO CREDIT, REPAIR OR REPLACE DEFECTIVE GOODS IS EXPRESSLY IN LIEU OF, AND IS IN DISCLAIMER OF, ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, INCLUDING THE IMPLIED WARRANTIES OR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL SELLER BE LIABLE FOR ANY OTHER DAMAGES, INCLUDING WITHOUT LIMITATION, CONSEQUENTIAL, INCIDENTAL, OR SPECIAL DAMAGES, DAMAGES TO PERSONS, PROPERTY, EQUIPMENT, GOODS, MERCHANDISE, PROFITS, GOODWILL OR REPUTATION, ARISING FROM SELLER'S TRANSACTION WITH BUYER. ANY REPAIR SERVICE SELLER MAY OFFER IS NOT A WARRANTY. Seller does not authorize any person to assume for it any liability or obligation in connection with the sale of goods.

DUTIES AND TAXES. Buyer is responsible for all duties, taxes, customers charges or other governmental charges imposed by any federal, state or local authority.

SOLE TERMS. THESE TERMS ARE THE FINAL, COMPLETE AND EXCLUSIVE EXPRESSION OF THE AGREEMENT BETWEEN SELLER AND BUYER AND SHALL EXCLUSIVELY GOVERN THEIR RIGHTS. No supplementation, modification, amendment or alteration of these Terms shall be binding unless in writing and signed by one of Seller's authorized officers at Cranston, Rhode Island. No sales Representative in Cranston or elsewhere is authorized to supplement, modify, amend, or alter these Terms. These Terms and the supplemental Credit Terms located on SWAROVSKI'S Credit/Sales Application supersede all prior oral and written communications, representations and agreements between Seller and Buyer and supersede any course of dealing or usage of trade, and any inconsistent provisions on Buyer's purchase orders or other communications. These Terms supersede inconsistent or different terms on Buyer's Purchase Orders. Seller hereby notifies Buyer of its objection to any terms or conditions, whether or not material, in any communication from Buyer, which are additional to or otherwise different from those contained herein, Seller's forbearance, acceptance of partial performance, or failure to insist on performance of any term or condition herein shall not waive any of Seller's rights or remedies and shall not waive any other or subsequent breach or default of these Terms. Seller's failure to exercise any right or remedy contained herein on one or more occasions shall not bar the exercise of such right or remedy on any other occasion. SWAROVSKI at its sole discretion may limit Retailer/Customer to one (1) for more product lines.

GENERAL PROVISIONS. These Terms shall be construed and governed by and under the laws of the State of Rhode Island. Buyer waives trial by jury in any litigation arising from or relating to these Terms and transactions between Buyer and Seller, consents to and confers personal jurisdiction on the state and federal courts located within the State of Rhode Island in such litigation, and federal courts located within the State of Rhode Island in such litigation, and agrees that any such litigation shall be brought only in a state or federal court within the State of Rhode Island. Buyer shall pay all costs and expenses, including reasonable attorney's fees, that Seller incurs in collecting amounts Buyer owes Seller, in enforcing Seller's rights against Buyer, or in defending against litigation brought by Buyer. These Terms shall inure to the benefit of and be binding upon Seller's and Buyer's respective successors and assigns. Buyer may offset claims or exercise a right of retention only if its claim is undisputed or has been established by a final judgement.

INTELLECTUAL PROPERTY. Buyer may use Seller's trademarks © which Seller applies to goods or packaging only to identify the goods in their original packaging and condition. Buyer will not use Seller's trademarks, names or logos in any other manner without prior written approval from an authorized officer of Seller in Cranston, Rhode Island. Sales representatives are not authorized to give such approval. The status of such marks as registered trademarks must be indicated by means of the © sign. Seller is not liable for any infringement of patents, copyrights, trademarks or other intellectual property rights resulting from compliance with Buyer's designs, specifications, or instructions, and Buyer agrees to defend Seller against and indemnify Seller for any such claims of infringement or violation of intellectual property rights. All materials, including without limitation, specifications, drawings or any other data supplied to Buyer are Seller's sole property, must be treated confidentially and may not be reviewed or copied by anyone other than Buyer. Buyer shall return all such materials on Seller's request or at the conclusion of the business relationship.

# SWAROVSKI

## STANDARDS FOR AUTHORIZED SWAROVSKI AMERICA LIMITED RETAILERS

Swarovski America Limited ("SAL") sells its products only to Authorized Retailers that meet the minimum standards set forth below. Meeting these standards; however, does not guarantee selection as a Swarovski America Limited Authorized Retailer.

<u>The Swarovski America Limited Philosophy</u>

Swarovski America Limited distributes the premier brand of faceted full-lead crystal products. Swarovski America Limited products incorporate superior design, excellence in materials and craftsmanship, and are regarded as an artistic product evolved from generations of thought and experience. Therefore, Swarovski America Limited products must be displayed in a manner consistent with the quality, workmanship and design expressed in the product, as well as the prestigious, premier position it enjoys in the marketplace. This philosophy of total excellence is a discipline that extends to the types and appearance of stores and displays through which Swarovski America Limited products are sold, the appearance, attitude and training of sales personnel, and the advertising and other methods used to market Swarovski America Limited products.

<u>Swarovski America Limited Retailers.</u> Authorized Retailers should offer prestige, supportive merchandising practices, have reputations for carrying fine gift and/or collectible products, and should otherwise be capable of promoting the Swarovski America Limited Philosophy. Authorized retailers typically include fine gift or fine collectible shops, and may include jewelry stores or other retailers if they offer a fine gift/collectible department. Integral to the Swarovski America Limited Philosophy is the intent that Authorized Retailers sell the product predominantly through traditional in-store marketing. Swarovski America Limited products should be sold only in finer stores capable of promoting the Swarovski America Limited Philosophy. Authorized Retailers must remain in good credit standing with SAL, must not be insolvent, and must be located in prestigious facilities.

Product Selection and Display: The Swarovski America Limited Philosophy requires a fully represented selection of Swarovski America Limited products displayed so as to promote, not impair, the Swarovski America Limited trademarks, prestige and image, and to prevent confusion of any other manufacturer's products with Swarovski America Limited products.

Authorized Retailers:

1. must display a substantial representation from each product category throughout the year;

2. must display Swarovski America Limited products separately from all other products, and in a prominent and attractive manner, using the Swarovski America Limited floor stand display if required by Swarovski America Limited and other display materials SAL supplies, unless these requirements are waived in writing by SAL's President;

3. must maintain all displayed Swarovski America Limited products in clean, uncluttered and undamaged condition, and in a condition that promotes the Swarovski America Limited Philosophy;

4. must train sales personnel to be informed and knowledgeable regarding Swarovski America Limited products, and attentive, helpful and courteous to customers at all times, and must employ only sales personnel that are otherwise capable of promoting the Swarovski America Limited Philosophy; and

5. must purchase a sufficient volume of Swarovski America Limited products to justify SAL's commitment and support of the Retailer. Sufficient volume may vary depending on the Retailer's location, credit history, purchasing practices, quality of business, and other circumstances SAL may in its sole discretion deem relevant, but generally is:

$2,000 for a Crystal Memories only account
$7,000 for a Silver Crystal only account
$10,000 for a multi-brand Swarovski account

These dollar amounts represent an average in Swarovski America Limited purchases, based on the prior two years."

Advertising and Other Marketing Methods: The Swarovski America Limited Philosophy requires that advertising and other marketing methods promote--not impair--the Swarovski America Limited products, trademarks, reputation and image. Authorized Retailers must market in a manner that enhances SAL's ability to review Authorized Retailers' practices, and must maintain accurate records concerning sales of Swarovski America Limited products to ensure their adherence to the Swarovski America Limited Philosophy. To promote these goals, Authorized Retailers:

1. must not advertise or market in a manner inconsistent with the Swarovski America Limited Philosophy, including advertising that emphasizes discount pricing (in-store or otherwise), compares to regular prices, refers to savings, communicates sensationalism or no-frills products, confuses or misleads customers, or promotes dumping of products or unfair prices;

2. must submit any print, audio or visual advertising efforts to Swarovski America Limited's Vice President of Marketing for approval.

3. must sell all Swarovski America Limited products at retail and only on the Authorized Retail Premises;

4. must not ship to any other retailer, except with written permission of Swarovski America Limited's President:

5. must not mislead customers concerning prices, services or any other aspect of Swarovski America Limited products and must not confuse any other manufacturer's product with Swarovski America Limited products; and

6. must charge prices adequate to cover the premier marketing services consistent with the Swarovski America Limited Philosophy.

<u>Suggested Retail Price List:</u> SAL provides a suggested Retail Price List to its Authorized Retailers.

<u>Review of Authorized Retailer's Performance and Practices:</u> SAL conducts periodic independent review of its Authorized Retailers' compliance with these standards and of their efforts to promote the Swarovski America Limited Philosophy. SAL's actions concerning its Authorized retailers are undertaken unilaterally, and not at the request of other Authorized Retailers. SAL therefore does not need, and requests that Authorized Retailers not provide, information concerning other Authorized Retailers' pricing, marketing or other trade practices.

<u>Terms and Conditions of Sale:</u> All sales of Swarovski America Limited products are subject to SAL's Terms and Conditions of Sale ("Terms"), as they may be supplemented or amended from time to time. A copy of the Terms was provided to you previously and is attached to these standards. Additional copies are available upon request to the Vice President of Marketing, 2 Slater Road, Cranston, Rhode Island 02920.

<u>General Standards and Policies:</u> <u>Termination of Authorized Status:</u> Nothing in the Authorized Retailers' Standards, or in SAL's approval or disapproval of a retailer as an Authorized Retailer, creates a contract or any binding legal obligation on SAL or any Authorized Retailer. SAL reserves its rights to terminate the Authorized Retailer and to sell to or refuse to sell to, any Authorized Retailer, at any time without notice for any reason. <u>Failure to comply with any of these Standards may result in SAL's unilateral termination without notice of Authorized Retailer status, and cancellation of pending orders for all Swarovski America Limited products.</u> All compliance, termination, selection and authorization decisions are in SAL's sole, complete and unilateral discretion, and must be made by SAL's President. Any failure to act or waiver by SAL of any right concerning any retailer, regardless of the duration of SAL's inaction or waiver and regardless of SAL's intent, shall not prevent or impair SAL's later exercise of its rights. Authorized Retailer status may not be sold, conveyed, assigned or otherwise transferred to anyone, including any new owner, new address or new business.

SWAROVSKI

✓ Guild Division

______ Specialty Division

The undersigned has:

(1.) received and read the Standards for Authorized Swarovski America Limited Retailers, and meets or exceeds those standards; and

(2.) received and read Swarovski America Limited's Terms and Conditions of Sale ("Terms") and agrees that all sales of products by Swarovski America Limited made pursuant to and governed by those Terms, as they may be supplemented or amended from time to time.

Approval as an Authorized Swarovski America Limited Retailer is in Swarovski America Limited's sole discretion. Authorized Swarovski America Limited *Guild* Retailers are eligible to participate as a Swarovski Collectors Society retailer, however to maintain eligibility the retailer must renew by submitting a "Request To Participate" form each calendar year. Swarovski's Terms and Conditions of Sale may be supplemented or amended at any time, and the undersigned agrees that Swarovski sales will also be made pursuant to and governed by such supplemental or amended Terms. Swarovski also may supplement or amend its Standards at any time without notice. The "Authorized" status of an Authorized Swarovski America Limited Retailer may automatically terminate without notice if Swarovski America Limited determines in its sole discretion either that the Retailer is no longer qualified to be a Swarovski America Limited Retailer, or that the Retailer fails to meet any of the Standards, as they may be supplemented or amended from time to time.

Business Name: ROSELLE CENTER PHARMACY

Address: 570 Raritan Rd.
Roselle, NJ 07203

Name of President/Owner: Paul Schulman
(PRINT)

Signature of President/Owner: [signature]
(SIGNATURE ONLY)

Date: 4/6/1999

(Please indicate on reverse if you request Authorized Swarovski America Limited Retailer approval for any branch locations)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PHARMACY SERVICES, INC.,<br>Plaintiff<br><br>v.<br><br>SWAROVSKI NORTH AMERICA, LTD.,<br>Defendant | C.A. No. 04-72T |

## AFFIDAVIT OF CHERYL MCFARLAND

I, Cheryl McFarland, under oath do depose and state as follows:

1. I am employed by Swarovski North America Limited ("Swarovski") as a Regional Manager.

2. During the year 2002, part of my region including responsibility for Pharmacy Services, Inc., also known as Roselle Pharmacy ("Roselle"). The Account Representative assigned to the account at this time was Danielle Bednarski.

3. I visited the Roselle location with Ms. Bednarski in August of 2002. Roselle was located in a strip mall, next to a grocery store and other businesses which I would not consider high-end. Roselle was in part a gift store and in part a pharmacy. Roselle, in addition to Swarovski products, sold some similar brands such as Hummel figurines, but also had a large greeting card area, and sold various lower-end products like magazines and lottery tickets. Overall, I felt the appearance and product mix of this store was unacceptable. It is not the type of store that I viewed in August of 2002 as enhancing the Swarovski brand and it is not a store that Swarovski would have opened in August of 2002. I discussed these issues with Danielle after our visit and she agreed. I was attuned to appearance issues at this time because I

had already been on a trip with management in August of 2000 to discuss the type of appearance Swarovski wanted its retailers to project and also was aware that many closings had taken place in Florida based upon appearance factors.

4. On a few occasions during the Fall of 2002, I reminded Danielle that I thought the Roselle store should be closed. I understand that Danielle did not close Roselle during that time.

5. In November of 2002, I received a telephone call from Michael Whitney, my supervisor and the Swarovski National Sales Manager. Mike asked me what I knew, if anything, about the Roselle store. I explained to him what I knew about Roselle, including the fact that I visited the store, did not think it enhanced the Swarovski brand and had discussed closing it with Danielle. Mike indicated to me that he had looked at information concerning the store on their website and was not comfortable that they were a brand-enhancing retailer. He and I agreed that they should be closed. He asked me to put together the paperwork to close the store. I told him I would follow-up with Danielle.

6. I telephoned Danielle and instructed her that Roselle had to be closed and added that Mike Whitney was also aware of Roselle and wanted them closed. I asked Danielle to send me an email or note that explained the reasons we did not think Roselle was a brand-enhancing retailer. Danielle did so (I believe on the same day we spoke) and I forwarded the email long with my comments to Mr. Whitney. Copies of Danielle's and my emails recommending closure are attached.

7. Mr. Whitney got back to me within the next week indicating that the formal decision had been made by him and Mr. Morton to close Roselle and that we should have no further communications with them while the corporate office went through the normal closing

process, which would involve having the credit department manage the receivables before an official closing notice was sent to the account. I spoke with Danielle and instructed her not to have any discussions with Roselle representatives from that time forward. I spoke with our credit department (Jim Rego) in early January 2003 and was informed that the remaining account balance of $14,000 was being sent by Roselle. To the best of my knowledge, the Roselle closure letter was sent on or about January 15, 2003.

8. I did not have any subsequent conversations with anyone regarding Roselle until after this lawsuit was brought.

Cheryl McFarland CM 7/12/05

Cheryl McFarland

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF Alleghen

In Pittsburgh signed before me on the 12 day of July, 2005.

Patricia M Plaisted

Notary Public
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Patricia M. Plaisted, Notary Public
Bellevue Boro, Allegheny County
My Commission Expires Apr. 24, 2008
Member, Pennsylvania Association Of Notaries

808807_1/3322-31

-----Original Message-----
**From:** **Bednarski Danielle**
**Sent:** Tuesday, November 26, 2002 2:00 PM
**To:** McFarland Cheryl
**Subject:** Roselle Center Card, Gift & CO

Dear Cheryl,

One of my accounts is Roselle Center Card ,Gift & Co. account number 3001784. I am recommending this account be closed due to the environment of the store. This store dosn't enhance our product image. A little history about the account: they are located in a strip mall along with a Foodtown grocery store and a pizza restaurant. When you walk in the door of the store to your left is a full Pharmacy and to your right is a card, gift and collectible store. There is not a separate entrance to both. The rear of the store also carries Lotto and magazines. They currently carry SC, SJ, and two towers of CM. The atmosphere of the account and the lines carried don't enhance are product. They carry inexpensive gift items and the Pharmacy doesn't help either. The store information is:

Roselle Center Card, Gift & Collectibles
570 Raritan Road
Roselle, NJ 07203
www.giftlandcollectibles.com
Stuart Schulman (OWNER)
If you need information let me know.
Thanks

**Danielle Bednarski**
**Key Market Manager**
**Swarovski North America, LTD.**
**18 Garden Place**
**Pompton Plains, NJ 07444**
**Voice Mail 1-800-289-4900 x6633**
**Phone:973-616-9533**
**Fax: 973-831-8914**
**Danielle.Bednarski@Swarovski.com**

**Whitney Mike**

**From:** McFarland Cheryl
**Sent:** Tuesday, November 26, 2002 2:35 PM
**To:** Whitney Mike
**Cc:** Bednarski Danielle
**Subject:** FW: Roselle Center Card, Gift & CO

**Importance:** High

Mike,

I concur with Danielle's assessment of this account. Based on our visual standards, we would not open them today. This store does not meet our philosophy of "total excellence" as outlined in the Standards for Authorized...Retailers. This account does not offer prestige merchandise. It is an active pharmacy that has grown to include a card and gift business. There is a direct line of sight from our product to cards and giftwrap. The mix of product includes low end to lower moderate gifts and collectibles. In addition, the pharmacy and card/gift stores share a common entrance. The entry vestibule is glass, with doors on either end, the left leading into the pharmacy, and the right leading into the card store. There is no physical barrier between the divergent businesses. When I visited this store with Danielle earlier this year, I was concerned by the worn appearance of the shopping plaza and the store itself.

The owner is interested in opening an upscale giftware store in Freehold in 2003. I advised that he would have to submit the usual materials to be considered for approval (i.e., architectural renderings, photographs, list of approved lines they'll be carrying, etc.).

I am recommending that we close this account.

Sincerely,
Cheryl

**Cheryl McFarland**
**Regional Sales Manager**
**Swarovski North America, Ltd.**
**405 Orchard Avenue**
**Pittsburgh, PA 15202**
**Voice Mail: 800-289-4900 X6636**
**Phone: 412-761-7698**
**Fax: 412-761-7699**
**Cheryl.McFarland@Swarovski.com**

-----Original Message-----
**From:** Bednarski Danielle
**Sent:** Tuesday, November 26, 2002 2:00 PM
**To:** McFarland Cheryl
**Subject:** Roselle Center Card, Gift & CO

Dear Cheryl,

One of my accounts is Roselle Center Card ,Gift & Co. account number 3001784. I am recommending this account be closed due to the environment of the store. This store dosn't enhance our product image. A little history about the account: they are located in a strip mall along with a Foodtown grocery store and a pizza restaurant. When you walk in the door of the store to your left is a full Pharmacy and to your right is a card, gift and collectible store. There is not a separate entrance to both. The rear of the store also carries Lotto and magazines. They currently carry SC, SJ, and two towers of CM. The atmosphere of the account and the lines carried don't enhance are product. They carry inexpensive gift items and the Pharmacy doesn't help either. The store information is:

Roselle Center Card, Gift & Collectibles
570 Raritan Road
Roselle, NJ 07203



SNA 0035