UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PHARMACY SERVICES, INC., d/b/a
ROSELLE CENTER PHARMACY, a/k/a
ROSELLE CENTER CARD, GIFT &
COLLECTIBLES,

    Plaintiff,

v.                                          C.A. No. 04-72T

SWAROVSKI NORTH AMERICA LIMITED,
JOHN DOES 1-50, and ABC CORPS. 1-10,

    Defendants.

## MEMORANDUM AND ORDER

ERNEST C. TORRES, Chief Judge.

### Introduction

Pharmacy Services, Inc. ("Pharmacy Services") brought this action against Swarovski North America Limited ("Swarovski") alleging, essentially, that Swarovski improperly terminated an agreement making Pharmacy Services an authorized dealer for Swarovski's crystal gift and collectible products. The case is, now, before the Court for consideration of Swarovski's motion for summary judgment. For reasons hereinafter stated, that motion is granted.

1

## Background

The undisputed facts are as follows.

Pharmacy Services operates a retail pharmacy and gift shop in a suburban shopping center in Roselle, New Jersey and Swarovski is the exclusive North American wholesaler for Swarovski crystal jewelry and accessories. Until the mid-1990s, Swarovski's products were sold primarily through a network of approximately 18,000 authorized dealers. In the mid-1990s, Swarovski decided to reduce the number of authorized dealers and to begin opening its own retail outlets.

In April 1999, Swarovski agreed to make Pharmacy Services one of its authorized dealers. That agreement was formalized by the execution of two documents entitled "Swarovski Terms and Conditions of Sale" ("the Terms and Conditions") and "Swarovski Standards for Authorized Retailers" ("the Standards").

The Terms and Conditions expressly permitted either party to terminate the arrangement at will. Specifically, it provided that:

> Either Buyer [Pharmacy Services] or Seller [Swarovski] may terminate the Retailer status, in keeping with which, Seller may refuse to sell [sic] Buyer at any time without notice for any or no reason.

The Terms and Conditions also contained an integration clause making it clear that it constituted the entire agreement between the parties and could be modified only by a written document signed by an authorized representative of Swarovski. In addition, it

2

contained a choice of law and forum selection clause, which provided that the agreement should be construed under the laws of the State of Rhode Island and that the parties consented to the exercise of personal jurisdiction by the state and federal courts located in Rhode Island.

The Standards contained a termination clause similar to that contained in the Terms and Conditions. More specifically, it provided that:

> <u>General Standards and Policies</u>: <u>Termination of Authorized Status</u>: Nothing in the Authorized Retailers' Standards, or in [Swarovski]'s approval or disapproval of a retailer as an Authorized Retailer, creates a contract or any binding legal obligation on [Swarovski] or any Authorized Retailer. [Swarovski] reserves its rights to terminate the Authorized Retailer and to sell to or refuse to sell to, any Authorized Retailer, at any time without notice for any reason.

From 1999 until late in 2002, the relationship between Pharmacy Services and Swarovski continued without incident. In 2001, Pharmacy Services generated approximately $60,000 in revenue from sales of Swarovski products. In 2002, that figure increased to nearly $250,000. Pharmacy Services attributes some of that success to steps that it claims to have taken in order to ensure that Internet searches for Swarovski products directed potential purchasers, first, to Pharmacy Services' website at www.giftandcollectibles.com.

Pharmacy Services claims that, during this period, Swarovski "urged" it to encourage those buying Swarovski products from

Pharmacy Services to join the Swarovski Crystal Society ("SCS"), which would enable them to receive notice of special promotions and limited edition products directly from Swarovski. According to Pharmacy Services, approximately 95 of its customers joined the SCS, which required them to provide their names and contact information directly to Swarovski.

Pharmacy Services contends that, by November of 2002, Swarovski had become dissatisfied with the relationship between the parties because Pharmacy Services' Internet marketing was hampering Swarovski's efforts to sell its products directly to consumers through an Internet site at www.swarovski.com that Swarovski, itself, had established in 2001. Pharmacy Services alleges that this is why Swarovski terminated it as an authorized dealer in November 2002. Swarovski denies that allegation and states that it had become dissatisfied because the nature of Pharmacy Services' business was detracting from Swarovski's reputation and prestige.

In any event, on January 15, 2003, Swarovski sent a letter to Pharmacy Services terminating the relationship and Pharmacy Services subsequently brought this action in the United States District Court for the District of New Jersey. That court granted Swarovski's motion to transfer the case to this Court based, primarily, upon the forum selection clause contained in the Terms and Conditions. In granting the motion, Judge Walls rejected Pharmacy Services' argument that the Terms and Conditions was an

4

unenforceable contract of adhesion and ruled that the parties had possessed equal bargaining power and that Pharmacy Services "could simply have walked away from the deal" if it didn't like the terms. See Pharmacy Servs., Inc. v. Swarovski N. Am., Ltd., No. 03-1707, at 5 (D.N.J. Mar. 1, 2004) (letter order granting motion to transfer venue).

By agreement of the parties, Pharmacy Services' claims for breach of the implied covenant of good faith and fair dealing (Count I), civil conspiracy (Count IV), and antitrust violations (Count VI) have been dismissed with prejudice. The remaining claims, that are the subject of the instant motion for summary judgment, are for misrepresentation (Count II), tortious interference with economic advantage (Count III), unfair competition (Count V), and punitive damages (Count VII).

### Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if it "could be resolved in favor of either party," and a fact is "material" if it "has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of

Justice, 355 F.3d 6, 19 (1st Cir. 2004) (citations omitted). In deciding whether or not to grant summary judgment, a court must draw all reasonable inferences in favor of the party opposing summary judgment. UPS v. Flores-Galarza, 318 F.3d 323, 330 (1st Cir. 2003) (citations omitted).

Once the movant has asserted that there is no genuine issue of material fact, a party opposing the motion must point to specific facts demonstrating the existence of a trialworthy issue. Calero-Cerezo, 355 F.3d at 19 (citation omitted). "Improbable inferences, conclusory allegations, or rank speculation" cannot alone defeat a motion for summary judgment. Francis v. Providence Sch. Bd., 2005 U.S. Dist. LEXIS 19594, at *7-8, 2005 WL 2179149, at *3 (D.R.I. Sept. 1, 2005) (citing Rathbun v. Autozone, Inc., 361 F.3d 62, 66 (1st Cir. 2004)).

## Analysis

I. The Misrepresentation Claim (Count II)

Pharmacy Services' misrepresentation claim is based on allegations that, in 1999 when the parties entered into their dealership agreement, Swarovski already had adopted a strategy of reducing the number of authorized dealers and increasing its direct sales to customers but fraudulently failed to disclose that fact. It appears to be undisputed that Swarovski had adopted such a strategy. What is disputed is whether the failure to disclose it

amounted to fraudulent misrepresentation.[1]

Under Rhode Island law, in order to prevail on a claim of fraudulent misrepresentation, a plaintiff must prove: (1) that the defendant made a false or misleading statement of fact or concealed a fact that it had a duty to disclose, (2) that the fact was material, (3) that the defendant acted with intent to deceive, (4) that the plaintiff justifiably relied upon the defendant's representations, and (5) that, as result, the plaintiff sustained some loss or damage. See Kooloian v. Suburban Land Co., 873 A.2d 95, 99 (R.I. 2005) (per curiam) ("It is well settled that to establish a prima facie damages claim in a fraud case, the plaintiff must prove that the defendant made a false representation intending thereby to induce plaintiff to rely thereon and that the plaintiff justifiably relied thereon to his or her damage.") (citations and internal quotation marks omitted); see Guilbeault v. R.J. Reynolds Tobacco Co., 84 F. Supp. 2d 263, 268 (D.R.I. 2000) ("To establish fraud in Rhode Island, a plaintiff must show: (1) a false or misleading statement of material fact that was (2) known by the defendant to be false and (3) made to deceive, (4) upon which the plaintiff relied to his detriment.") (citations omitted).

---

[1] Pharmacy Services also claims that Swarovski misrepresented its reasons for terminating the parties' relationship, but those reasons are irrelevant because the agreement between the parties gave Swarovski the right to terminate for any reason or no reason and because Pharmacy Services fails to explain how it relied to its detriment on the proffered reasons.

"'[A] party who has been induced by fraud to enter into a contract' may elect either to rescind the contract, or 'to affirm the contract and sue for damages in an action for intentional deceit or misrepresentation.'" Stebbins v. Wells, 766 A.2d 369, 372 (R.I. 2001) (per curiam) (quoting Travers v. Spidell, 682 A.2d 471, 472 (R.I. 1996) (per curiam)).

In determining whether Swarovski's marketing strategy was a material fact that it was obliged to disclose, a distinction must be drawn between a plan to eventually reduce the number of authorized Swarovski dealers, in general, and a plan to terminate Pharmacy Services, in particular. If, at the time the parties entered into their agreement, Swarovski did not intend to terminate Pharmacy Services or any specific category of dealers that, necessarily, would have included Pharmacy Services, Swarovski's failure to volunteer its long-term marketing strategy was not fraudulent.

Here, there is no evidence that, in 1999, Swarovski harbored any such intent. Indeed, Pharmacy Services does not even make that allegation. On the contrary, it alleges that Swarovski did not decide to terminate Pharmacy Services until late in 2002, when Swarovski's national sales manager learned of Pharmacy Services' success in making Internet sales. (See Pl.'s Mem. of Law 10.) In effect, Pharmacy Services is seeking to convert a contract terminable at will into a contract that was terminable only if

Swarovski disclosed every conceivable basis on which it might later have chosen to terminate.

In addition, there is no evidence of any detrimental reliance on the part of Pharmacy Services. It is difficult to see how, in entering into the dealership agreement, Pharmacy Services could have had any reasonable expectation that the relationship would continue for any particular period of time. As already noted, the documents executed by the parties expressly provided that Swarovski could terminate the relationship "at any time without notice and for any reason." Nor is there any indication that Pharmacy Services sustained any damage or loss during the time that it was a Swarovski dealer. On the contrary, Pharmacy Services, itself, states that it realized significant profits from the sale of Swarovski products. (See, e.g., Compl. ¶¶ 46-47.)

While there is a factual dispute as to why Swarovski terminated the relationship between the parties, Swarovski's reasons for doing so are immaterial to Pharmacy Services' misrepresentation claim because the agreement between the parties entitled Swarovski to terminate at any time and for any reason.

9

II. <u>The Tortious Interference Claim (Count III)</u>

Under Rhode Island law, the elements of a claim for tortious interference with prospective contractual relations[2] are: (1) the existence of a business relationship or expectancy, (2) that the defendant knew of that relationship or expectancy, (3) that the defendant intentionally interfered with that relationship or expectancy, and (4) that the interference caused the plaintiff to sustain the loss or damages claimed. <u>See</u> <u>Mesolella</u>, 508 A.2d at 669 (citation omitted); <u>see also</u> <u>L.A. Ray Realty v. Town Council of Cumberland</u>, 698 A.2d 202, 207 (R.I. 1997) (quoting <u>Mesolella</u>).

However, a defendant may not be held liable for tortious interference unless the defendant's conduct was "improper" or unjustified. <u>See</u> Restatement (Second) of Torts § 766 (1979); <u>see</u> W. P. Keeton, et al., <u>Prosser and Keeton on Torts</u> 983 (5th ed. 1984). Otherwise, a defendant would be subject to liability for such lawful and benign activities as "competing with a plaintiff for business." <u>See</u> <u>Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.</u>, 239 F. Supp. 2d 180, 194 (D.R.I. 2003), <u>aff'd</u>, 373 F.3d 57, 69 (1st Cir. 2004).

The burden of establishing justification rests on the

---

[2] Relying on New Jersey law, Pharmacy Services titled Count III of its complaint, "Tortious Interference with Economic Advantage." (Compl. 15.) Tortious interference with prospective contractual relations is the Rhode Island equivalent. <u>See</u> <u>Mesolella v. City of Providence</u>, 508 A.2d 661, 669 n.9 (R.I. 1986) (citation omitted).

defendant. <u>Mesolella</u>, 508 A.2d at 670 ("The burden is on the defendant to show justification.") (citation omitted); <u>Smith Dev. Corp. v. Bilow Enters., Inc.</u>, 112 R.I. 203, 211, 308 A.2d 477, 482 (1973) ("The burden of proving sufficient justification for interference is upon the defendant.") (citations omitted). Accordingly, when the plaintiff establishes the elements of its prima facie case, "the burden of proving sufficient justification for the interference shifts to the defendant." <u>Belliveau Bldg. Corp. v. O'Coin</u>, 763 A.2d 622, 627 (R.I. 2000) (citations omitted).

In its memorandum, Swarovski cites seemingly inconsistent statements made in <u>Belliveau</u> regarding who has the burden of proof with respect to justification. (<u>See</u> Def.'s Mem. of Law 8.) However, <u>Belliveau</u> does not purport to overrule <u>Mesolella</u> and <u>Smith</u>, which unequivocally place on the defendant the burden of proving justification. <u>See</u> 763 A.2d at 627 (citing with approval <u>Mesolella</u>, 508 A.2d at 669-70 and <u>Smith</u>, 112 R.I. at 211, 308 A.2d at 482). The seemingly inconsistent statements in <u>Belliveau</u> can be explained by the fact that the alleged interference there consisted of the defendant's recording of a right of first refusal to purchase a lot owned by the plaintiffs and, while the court found that right to be inapplicable, it held that the defendants' good-faith belief that the right was applicable constituted sufficient justification for recording it in the absence of evidence that the defendants acted with actual malice. <u>See</u> 763 A.2d at 630-32.

11

In this case, the gist of Pharmacy Services' tortious interference claim is that, by terminating the relationship between the parties, Swarovski interfered with the financial benefits that Pharmacy Services would have realized from future sales of Swarovski's merchandise. (See Compl. ¶¶ 96, 98.) However, as already noted, under the terms of the agreement between the parties, Swarovski had a right to terminate the relationship "at any time without notice for any reason." Thus, this case is readily distinguishable from Belliveau, where the defendants erroneously believed that they had a lawful right to undertake the act constituting the alleged interference. See 763 A.2d at 630-32.

Even if proof of "malice" would render Swarovski liable for exercising its lawful right to terminate, Pharmacy Services has failed to present any evidence of malice. Under Rhode Island law, there are two forms of malice that may be relevant in determining whether interference is justified. See Belliveau, 763 A.2d at 627 (citations omitted); see Mesolella, 508 A.2d at 670. The first is "actual malice," which involves "spite or ill will." See Belliveau, 763 A.2d at 627 (citations omitted); see Mesolella, 508 A.2d at 670. The second is "legal malice," which involves "an intent to do harm without justification." See Belliveau, 763 A.2d at 627 (citations omitted); see Mesolella, 508 A.2d at 670. Both forms of malice require a showing that the defendant acted not with the intent to benefit itself but rather with an intent to harm the

12

plaintiff. Accord Macauley v. Tierney, 19 R.I. 255, 258-59, 33 A. 1, 2 (1895) (competitive actions intended by a defendant to enrich itself, rather than to harm another, are generally not tortious even if such harm was foreseeable and does in fact result); accord Ne. Airlines, Inc. v. World Airways, Inc., 262 F. Supp. 316, 320 (D. Mass. 1966) (same rule under Massachusetts law) (citing Walker v. Cronin, 107 Mass. 555 (1871)); see also James O. Pearson, Jr., Annotation, Liability for Interference with At Will Business Relationship, 5 A.L.R.4th 9, 8b, 9b (2006) (collecting cases). Here, Pharmacy Services alleges that Swarovski terminated the relationship in order to increase its own Internet sales and not simply to harm Pharmacy Services. (See, e.g., Compl. ¶¶ 65, 68, 89, 101-02, 109.)

III. The Unfair Competition Claim (Count V)

Pharmacy Services' unfair competition claim requires little discussion. It appears to be based on a fundamental misunderstanding of what constitutes "unfair competition" under Rhode Island law.

The Rhode Island Supreme Court has held that:

> [A] finding of unfair competition must be predicated upon conduct on the part of the [defendant] that reasonably tended to confuse and mislead the general public into purchasing his product when the actual intent of the purchaser was to buy the product of the [plaintiff].

ERI Max Entm't, Inc. v. Streisand, 690 A.2d 1351, 1353-54 (R.I. 1997) (quoting George v. George F. Berkander, Inc., 92 R.I. 426,

13

429, 169 A.2d 370, 371 (1961)); see Nat'l Lumber & Bldg. Materials Co. v. Langevin, 798 A.2d 429, 433 (R.I. 2002) (per curiam) ("Unfair competition occurs when the device or means employed would be likely to confuse and mislead the public generally to purchase the product or patronize the shop of one person when the actual intention was to purchase the product or patronize the shop of another.") (citations and internal quotation marks omitted). A plaintiff need not show actual confusion; he need only show that confusion "is likely to occur." Nat'l Lumber, 798 A.2d at 434 (citations omitted).

The gist of Pharmacy Services' argument appears to be that, by inviting customers who had previously purchased Swarovski products from Pharmacy Services to visit its own website, Swarovski confused them as to the source of the goods they were purchasing. However, it is difficult to see how a customer purchasing a Swarovski product through Swarovski's website, which had a URL of www.swarovski.com, could believe that the item was being purchased from Pharmacy Services, which did business on a website having a URL of www.giftandcollectibles.com.

IV. Punitive Damages (Count VII)

As a threshold matter, it should be noted that Rhode Island does not recognize a separate cause of action for punitive damages, *per se*. Punitive damages are recoverable only where the plaintiff has proven the elements of a recognized cause of action.

14

Moreover, under Rhode Island law, "[a] party seeking punitive damages must produce "evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amounts to criminality that should be punished." <u>Fenwick v. Oberman</u>, 847 A.2d 852, 854-55 (R.I. 2004) (per curiam) (quoting <u>Bourque v. Stop & Shop Cos.</u>, 814 A.2d 320, 326 (R.I. 2003) (per curiam)) (additional citations and internal quotation marks omitted). Here, Pharmacy Services has failed to present any evidence that would support such a finding.

In any event, no award of punitive damages could be made in this case because, as previously stated, Pharmacy Services cannot prevail on any of the causes of action remaining in its complaint.

## Conclusion

For all of the foregoing reasons, Swarovski's motion for summary judgment is hereby GRANTED with respect to Count II, Count III, Count V, and Count VII. Judgment may enter in Swarovski's favor.

IT IS SO ORDERED,

*/s/ Ernest C. Torres*
Ernest C. Torres,
Chief Judge

Date: 3/21/06